**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**ASHLEIGH MASON, et al.,**

                        **Plaintiffs,**

       **-against-**

**LUMBER LIQUIDATORS, INC.,**

                        **Defendant.**
-------------------------------------------------------x

                                       **MEMORANDUM**
                                       **AND ORDER**

                                       **17-CV-4780 (MKB)**

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

      Plaintiffs Ashleigh Mason, Dan Morse, Ryan Carroll, Osagie Ehigie, and Travis Streeter ("plaintiffs") bring this putative collective action against defendant Lumber Liquidators, Inc. ("Lumber Liquidators" or "defendant"), asserting claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), for unpaid overtime wages owed to store managers and managers in training, who are alleged to have been misclassified as exempt from overtime requirements. Currently pending before this Court is plaintiffs' motion for court-supervised notice to putative collective action members, pursuant to 29 U.S.C. § 216(b), and for disclosure of identifying information of potential collective action members. See Motion to Certify FLSA Collective Action (Nov. 2, 2018) ("Pl. Motion"), Electronic Case Filing Docket Entry ("DE") #41. For the reasons set forth below, the Court grants the application for court-supervised notice, authorizing notice to Store Managers ("SMs") nationwide who, during the notice period, worked in a Lumber Liquidators store that generated less than $5,000,000 in annual revenue, on average over the

notice period, and to Store Managers in Training ("SMITs") nationwide who, during the period noted herein, were classified as exempt from overtime.

## BACKGROUND

The five named plaintiffs allege, on behalf of themselves and a putative collective, that they worked for defendant as either SMs or SMITs, but performed the same duties as non-exempt employees. See Amended Complaint (Dec. 4, 2017) ¶¶ 1-3, DE #16.[1] Plaintiffs further allege that defendant failed to pay them an overtime premium for any hours in excess of 40 that they worked in a workweek. See id.

Lumber Liquidators is a specialty retailer of hardwood flooring in North America, with 406 stores in the United States as of June 30, 2018. See Lumber Liquidators Holdings, Inc., Form 10-Q (Nov. 2, 2018) at 7, DE #42-6. It is undisputed that each retail store has one SM, which currently is the only exempt position in the store. See Declaration of John Dixon (Nov. 2, 2018) ("Dixon Decl.") ¶ 5, DE #42-8; Declaration of Consuela Richard (Nov. 2, 2018) ("Richard Decl.") ¶ 5, DE #42-10; Declaration of Christopher Portis (Nov. 2, 2018) ("Portis Decl.") ¶¶ 9-10, DE #42-13; Declaration of Lazaro Becerra (Nov. 2, 2018) ("Becerra Decl.") ¶¶ 4-5, DE #42-18; Declaration of Vince Harmon (Nov. 2, 2018) ("Harmon Decl.") ¶¶ 4-5, DE #42-24; Declaration of Jim Dyer (Nov. 30, 2018) ("Dyer Decl.") ¶ 7, DE #56. In addition, although each store generally has no more than two non-exempt employees, see, e.g., Declaration of Ashleigh Mason (Nov. 2. 2018) ("Mason Decl.") ¶¶ 4-5, DE #42-9; Richard Decl. ¶¶ 4-5; Declaration of Nick Flores (Nov. 2, 2018) ("Flores Decl.") ¶¶ 4-5, DE #42-12;

---

[1] It is undisputed that defendant classifies all SMs as exempt from the overtime requirements of the FLSA, and that all SMITs were classified as exempt prior to sometime in 2018.

Declaration of Nick Kapsidelis (Nov. 2, 2018) ("Kapsidelis Decl.") ¶¶ 4-5, DE #42-14;

Declaration of Michael Flood (Nov. 2, 2018) ("Flood Decl.") ¶¶ 4-5, DE #42-16, some stores

might have a third or fourth non-exempt employee, depending on the revenue of that store.

See, e.g., Dixon Decl. ¶¶ 4-5; Declaration of Steven Lane (Nov. 2, 2018) ("Lane Decl.")

¶¶ 4, 6, DE #42-11; Portis Decl. ¶¶ 8-10; Declaration of Travis Streeter (Nov. 2, 2018)

("Streeter Decl.") ¶¶ 11-12, DE #42-15.  On the other hand, there have been times when a

store had only one non-exempt employee or no non-exempt employees.  See Declaration of

Linda Chilcote (Nov. 2, 2018) ("Chilcote Decl.") ¶ 4, DE #42-19 ("In some instances, there

was only one non-exempt employee and in other instances, there were no non-exempt

employees at the store."); Mason Decl. ¶ 5 ("there were weeks when the store only had one

non-exempt employee"); Declaration of Jefferson Van Vorhis (Nov. 2, 2018) ("Van Vorhis

Decl.") ¶ 6, DE #42-23 (declarant references "one hourly employee for several months" in

California store); Kapsidelis Decl. ¶ 3 (for approximately one month, "there were no non-

exempt employees employed by the Irving[, Texas] store available to work"); Harmon Decl.

¶ 4 (only one non-exempt employee in a particular store while second employee was on

maternity leave); Declaration of Daniel Schlueter (Nov. 2, 2018) ("Schlueter Decl.") ¶ 12, DE

#42-7 ("For at least three months, [SM] Mike Schott worked alone without any non-exempt

employees.").  Each SM and SMIT reports to a Regional Manager, who makes all personnel

decisions.  See Dixon Decl. ¶¶ 5, 11; Mason Decl. ¶¶ 5, 11; Richard Decl. ¶¶ 5, 10; Portis

Decl. ¶¶ 1, 16; Declaration of Dan Morse (Nov. 2, 2018) ("Morse Decl.") ¶¶ 5, 7-8, 12, DE

#42-17.

Defendant has one common job description for SMs nationwide, which provides that SMs are required to work 50 or more hours per week.  See Memorandum of Law in Support of Plaintiffs' Motion For Court Authorized Notice (Nov. 2, 2018) ("Pl. Mem.") at 9, DE #41-1; Store Manager Job Description (Nov. 2, 2017) ("SM Job Description") at p. 3, DE #43-2. The job description further instructs that SMs "may find it necessary to arrange their schedule to fill store staffing gaps due to associate absences, scheduled Paid Time-Off . . . ."  SM Job Description at p. 3.  The description further states that SMs must be able to frequently lift at least 20 pounds, and occasionally up to 80 pounds.  See id. at p. 2.  According to plaintiffs, upon hiring, SMs are required to attend a training course, which provides specific guidelines that SMs are required to follow, effectively eliminating the exercise of discretion by the SM. See Dixon Decl. ¶ 7; Mason Decl. ¶ 7; Flood Decl. ¶ 7; Harmon Decl. ¶ 7.

Each of the five named plaintiffs and thirteen of the fourteen opt-in plaintiffs,[2] who, collectively, have worked at 37 of defendant's stores across thirteen states,[3] submitted consistent declarations in support of the instant motion.  For example, plaintiff Ashleigh Mason worked as an SM in Staten Island, New York, from May 2016 through August 29,

_____

[2] The newest opt-in plaintiff, David Cheek, entered the case after the filing of the instant motion, see Consent to Become Party in Collective Action (Dec. 7, 2018), DE #58, and plaintiffs' moving papers therefore do not include a declaration from him.  Although both sides appear to agree that there are thirteen opt-in plaintiffs who submitted declarations, see Pl. Mem. at 1, 3, 6, 9, 22; Memorandum in Opposition (Nov. 30, 2018) ("Def. Opp.") at 1, 17 n.16, DE #57, consent forms for only seven of the declarants have been filed with the Court, see DE #2, DE #6, DE #7, DE #8, DE #9, DE #13, DE #31.  Plaintiffs' counsel must promptly file the remaining consent forms.

[3] Those states are: Arkansas; California; Colorado; Kansas; Louisiana; Maryland; Nevada; New Jersey; New York; Ohio; Pennsylvania; Texas; and Utah.

2017.[4]  See Mason Decl. ¶ 1.  The Staten Island store generated approximately $100,000 per

month in revenue.  See id. ¶ 4.  Mason worked, on average, 50 to 60 hours per week, until

June 2017,[5] but was not paid overtime for those hours worked in excess of 40 hours per week.

See id. ¶ 3.  At most, there were two non-exempt employees working at the Staten Island store

during the relevant time period.  See id. ¶ 4.  Mason's primary duties were to perform

associate-level tasks, which amounted to approximately 90 to 95 percent of her time.  See id.

¶ 9.  These duties included: moving products; making signs; routine customer service;

cleaning the store and bathroom; working the cash register; unloading freight; and collecting

garbage.  See id.  When a non-exempt employee was absent, Mason was required to perform

that employee's job duties.  See id. ¶ 12.  Personnel decisions, such as hiring, firing or

promoting employees or setting rates of pay were made independently by the Regional

Manager.  See id. ¶ 11.  Based on her conversations with SMs at six other stores in the New

York City area, Mason alleges that those SMs similarly spent a significant amount of their time

---

[4] The remaining named plaintiffs worked in the following stores: Plaintiff Dan Morse worked as an SMIT in the Long Island City store from October 2013 until he became an SM from March 2014 until August 2016.  See Morse Decl. ¶ 1.  Morse also was the SM of the Brooklyn store from August 2016 through April 2017.  See id.  Plaintiff Osagie Ehigie worked as an SM in the Yonkers, New York store from December 2011 until March 2016.  See Declaration of Osagie Ehigie (Nov. 2, 2018) ("Ehigie Decl.") ¶ 1, DE 42-21.  Plaintiff Ryan Carroll worked as an SM in Staten Island, New York from March 2015 through November 2015, and as the SM in the Brooklyn store from December 2015 through August 2016.  See Declaration of Ryan Carroll (Nov. 2, 2018) ("Carroll Decl.") ¶ 1, DE #42-22.  Finally, plaintiff Travis Streeter became an SMIT in the Denver, Colorado store in March 2015 and transferred to the Lone Tree, Colorado store a few months later.  See Streeter Decl. ¶ 1. Eventually, Streeter was promoted to an SM in October 2016 and remained in that position until April 2017.  See id.¶ 2.

[5] After June 2017, Mason was permitted to work fewer hours pursuant to a requested accommodation under the Americans with Disabilities Act.  See Mason Decl. ¶ 3.

performing non-exempt, associate-level tasks and spent very little time on managerial functions. See id. ¶ 13.

Each declaration submitted by the four other named plaintiffs, and twelve opt-in plaintiffs who worked as SMs,[6] is consistent with Mason's. They primarily performed the same job duties as the non-exempt associates who were eligible to receive overtime pay. See, e.g., Schlueter Decl. ¶ 8; Dixon Decl. ¶¶ 9-11; Richard Decl. ¶¶ 8-9; Lane Decl. ¶¶ 9-10; Flores Decl. ¶ 9. When those non-exempt employees were absent from work, the SMs were required to work their shifts. See, e.g., Schlueter Decl. ¶ 11; Dixon Decl. ¶ 12; Richard Decl. ¶ 11; Lane Decl. ¶ 12; Flores Decl. ¶ 11. The named and opt-in plaintiffs identified 37 other SMs from around the country with whom they spoke, and who had similar experiences performing primarily associate-level tasks. See Declaration of Justin R. Marino (Nov. 2, 2018) ("Marino Decl.") ¶ 39, DE #42; see, e.g., Schlueter Decl. ¶¶ 12-13; Dixon Decl. ¶ 13; Mason Decl. ¶ 13; Richard Decl. ¶¶ 12-13.[7]

The named and opt-in plaintiffs assert that SMs did not have any true managerial responsibilities. See, e.g., Schlueter Decl. ¶¶ 9-10; Dixon Decl. ¶¶ 10-11; Richard Decl. ¶ 10; Lane Decl. ¶ 11; Flores Decl. ¶ 10. Defendant's corporate headquarters has set each

---

[6] Opt-in plaintiff Nereda Bodnar was an SMIT when she resigned from her position with defendant. See Declaration of Nereda Bodnar (Nov. 2, 2018) ("Bodnar Decl.") ¶ 1, DE #42-20.

[7] Plaintiffs do not seek to include in the collective those SMs who worked at defendant's stores that had an annual gross revenue in excess of $5,000,000 per year, on average, over the notice period (which plaintiffs characterize as defendant's "largest stores"). See Pl. Mem. at 23 & n.25. Plaintiffs explain that they and the current opt-ins did not work at defendant's "largest stores," and that those stores "typically have many more employees, for which the same concerns identified by plaintiffs and the opt-ins are less likely to be as extreme." Id. at 23 n.25.

store's layout, pricing and labor budgets. See, e.g., Flores Decl. ¶ 5; Portis Decl. ¶¶ 9, 12; Flood Decl. ¶ 7; Morse Decl. ¶ 5. To the extent that SMs have been permitted to interview job candidates, they are required to follow an interview guide that lists permissible questions to ask. See, e.g., Dixon Decl. ¶ 11; Mason Decl. ¶ 11; Lane Decl. ¶ 11; Portis Decl. ¶ 16. Moreover, the Regional Managers have reportedly ignored the SMs' recommendations about hiring and firing associates. See, e.g., Schlueter Decl. ¶ 10; Dixon Decl. ¶ 11; Richard Decl. ¶ 10; Lane Decl. ¶ 11.

Defendant also uniformly classified the SMITs as exempt from overtime requirements, until sometime in 2018, when they were reclassified and defendant began paying them an overtime premium for hours worked in excess of 40 per workweek. See Marino Decl. ¶ 36; Streeter Decl. ¶ 14; compare Store Manager in Training Job Description (revised July 2015) ("SMIT Job Description"), DE #43-1, with Store Manager in Training Job Postings (posted between Sept. 24, 2018 and Oct. 26, 2018 on lumberliquidators.com) ("2018 SMIT Job Postings"), DE #42-3. The SMITs were subject to one common job description nationwide. See SMIT Job Description; 2018 SMIT Job Postings. Like the SMs, the SMITs reported to the Regional Manager, were required to work at least 50 hours per week, and were expected to work the shifts of absent non-exempt associates. See SMIT Job Description at 3; Portis Decl. ¶¶ 1-2; Morse Decl. ¶ 7; Bodnar Decl. ¶¶ 5, 8; Streeter Decl. ¶¶ 10, 19; Flores Decl. ¶ 3. SMITs performed the same job duties as hourly associate employees, who were paid overtime and had no management duties. See Bodnar Decl. ¶¶ 4, 6 (after promotion from assistant store manager - a non-exempt associate position - to SMIT, there were "zero changes [to] the

7

physical, associate-level tasks I had to perform. The principle [sic] change was that I had to spend significantly longer hours working at the store without getting overtime."); Flores Decl. ¶¶ 3, 12; Portis Decl. ¶ 18; Streeter Decl. ¶ 20. For example, plaintiff Streeter worked as an SMIT at defendant's Denver and Lone Tree, Colorado stores, from March 2015 until February 2016. See Streeter Decl. ¶¶ 1-2. Streeter worked in excess of 50 hours per week, but was not paid overtime wages. See id. ¶¶ 3, 4, 10. Streeter had no managerial responsibilities as an SMIT; instead, he spent 100 percent of his time performing non-exempt, associate-level functions. See id. ¶ 20. The other named plaintiff and three opt-in plaintiffs who worked as SMITs at six of defendant's stores across five states describe similar experiences. See Portis Decl. ¶ 18; Morse Decl. ¶¶ 3, 14; Bodnar Decl. ¶¶ 4, 6; Flores Decl. ¶ 12.

In opposition to plaintiffs' motion, defendant disputes that all SMs nationwide have been performing the same duties,[8] and submits the declarations of eighteen employees who are or were SMs at various Lumber Liquidator stores.[9] According to defendant, an SM's primary responsibility is to manage the daily operations of his or her store. See Dyer Decl. ¶ 11. Defendant's declarants largely deny that they performed the same duties as their non-exempt associates. See, e.g., Declaration of Glenn Angenent (Nov. 30, 2018) ¶ 9, DE #55-1; Declaration of Andrew Blehn (Nov. 30, 2018) ("Blehn Decl.") ¶ 9, DE #55-2; Declaration of Justin White (Nov. 30, 2018) ¶ 8, DE #55-3. However, some of defendant's declarants

---

[8] Defendant has largely ignored plaintiffs' request to conditionally certify a collective of SMITs.

[9] Defendant withdrew the declarations of four of its employees. See Letter Withdrawing Declarations (Jan. 7, 2019), DE #59.

8

discuss doing the same work as the non-exempt employees. Although Scott Dimos (who worked as an SM at two Ohio stores) states that he "believe[s] [his] primary duties are managerial in nature," Declaration of Scott Dimos (Nov. 30, 2018) ¶ 10, DE #55-6, he describes the role of the employees he supervises as "assist[ing] [him] with cleaning the store, operating cash registers, stocking displays, tables, racks and shelves, building displays, unpacking boxes, unloading freight, organizing the stores, providing customer service, collecting garbage and follow up on sample tracker calls," id. ¶ 6. Likewise, Alan Rudkowski, the SM for the Cleveland, Ohio store, states that the employees he supervises "assist [him] with changing pricing information on products, putting up and taking down signs, loading and unloading freight, contacting customers to notify them of shipments, and other related tasks." Declaration of Alan Rudkowski (Nov. 30, 2018) ("Rudkowski Decl.") ¶ 6, DE #55-20; see also Declaration of Curtis Shank (Nov. 30, 2018) ("Shank Decl.") ¶ 7, DE #55-21 (according to SM at Roanoke, Virginia store, hourly employees "assist me with unloading trucks, working on updating flooring displays, store maintenance and upkeep, inventory and the like"). Other defense declarants likewise concede that they "sometimes worked alongside [their] subordinate employees." Declaration of Geoffrey Franson (Nov. 30, 2018) ¶ 9, DE #55-9 (former SM at Iowa store and two stores in Arizona); see Declaration of Joshua Lammers (Nov. 30, 2018) ¶ 9, DE #55-15 (as per SM at South Dakota store and former SM at Minnesota store, "I sometimes work alongside my subordinate employees").

According to Lumber Liquidators, it expects its SMs to: recruit, hire and develop employees to meet operating and sales goals; supervise, train and discipline employees when

appropriate; review and analyze sales and other financial reports; and implement store policies and procedures. See Dyer Decl. ¶ 12. However, defendant allows that the duties SMs actually perform, and the time devoted to such activities, vary widely among SMs. See id. ¶ 13. Defendant explains that a store with larger sales volume will have more non-exempt employees reporting to the SM. See id. ¶¶ 22, 27; Def. Opp. at 7-8. Sales volume also affects the frequency of customer interactions, the number of deliveries, and the amount of inventory that requires managing. See Dyer Decl. ¶ 23. Finally, according to defendant, the supervision and management styles of individual Regional Managers also have an impact on a particular SM's duties and independence. See id. ¶¶ 28-29.

In their reply, plaintiffs submit defendant's responses to requests to admit from thirteen of the SMs who submitted declarations on behalf of defendant. Defendant admitted that each of these SMs had worked more than 55 hours in a workweek and engaged in non-exempt tasks, such as cleaning the store, operating the cash register, stocking displays, unloading freight, providing customer service and taking out the garbage. See Defendant's Objections and Responses to Plaintiff's First Set of Requests for Admissions (Jan. 14, 2019) ("Responses to Requests for Admissions"), DE #63-1 to #63-13. Defendant further admitted that nine of the thirteen SMs had worked a workweek in which they had fewer than two full-time employees. See id., DE #63-1 to #63-9. Plaintiffs complain that defendant's declarants fail to differentiate their experiences as SMs in defendant's largest stores, which grossed in excess of $5,000,000 in revenue and would be excluded from the proposed collective. See Reply Memorandum of Law in Support (Jan. 14, 2019) ("Pl. Reply") at 9 & n. 16, DE #62; supra p. 6 n.7.

## DISCUSSION

### I.  Personal Jurisdiction Over Opt-in Plaintiffs' Claims

As a preliminary matter, defendant argues that this Court lacks personal jurisdiction over putative collective action members who did not work in New York.  See Def. Opp. at 14-17.  A personal jurisdiction defense is, however, deemed to be forfeited where the defendant failed to timely raise it in its answer or pre-answer motion to dismiss.  See Brown v. Lockheed Martin Corp., 814 F.3d 619, 625 (2d Cir. 2016); Fed. R. Civ. P. 12(h)(1).  Even where the defense has been asserted in a timely answer, a "'delay in challenging personal jurisdiction by motion to dismiss' may result in waiver" or, more accurately, a forfeiture of the defense. Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 60 (2d Cir. 1999) (internal citation omitted); see id. at 61.  Here, defendant failed to raise the affirmative defense of lack of personal jurisdiction in its original answer or in its two subsequent amended answers.  Nor has defendant filed a motion to dismiss asserting that defense, despite having participated in pretrial proceedings for more than one year.  Therefore, defendant has forfeited its defense to the Court's exercise of personal jurisdiction.

In any event, even apart from forfeiture, defendant's personal jurisdiction defense does not warrant denial of plaintiffs' motion for conditional certification.  "Under New York law, '[f]or a plaintiff to demonstrate personal jurisdiction over a defendant . . . the plaintiff must show either that the defendant was present and doing business in New York within the meaning of C.P.L.R. § 301,' known as general jurisdiction, 'or that the defendant committed acts within the scope of New York's long-arm statute, C.P.L.R. § 302,' known as specific

jurisdiction." Stroud v. Tyson Foods, Inc., 91 F.Supp.3d 381, 385 (E.D.N.Y. 2015) (alteration omitted).

Defendant correctly argues that the Court lacks general jurisdiction over the claims of out-of-state putative opt-in plaintiffs because New York is neither defendant's principal place of business nor state of incorporation. See Def. Opp. at 15. Thus, defendant is not "at home" in New York so as to invoke either of those two bases for establishing general jurisdiction. See Daimler AG v. Bauman, 571 U.S. 117, 137-39 (2014); Brown, 814 F.3d at 627 (finding defendant's activities in forum state, "while not insubstantial, constitute[] only a very small part of its portfolio").

Defendant further contends that the Supreme Court's decision in Bristol-Myers Squibb v. Superior Court of California, 137 S.Ct. 1773 (2017), compels the conclusion that the Court lacks specific jurisdiction over the claims of out-of-state putative collective action members. In Bristol-Myers, 600 individual plaintiffs, only some of whom were California residents, brought a mass-tort action in California state court. See id. at 1781-82. The Supreme Court concluded that the state courts lacked personal jurisdiction over claims brought by out-of-state plaintiffs against an out-of-state defendant, since neither the conduct nor injuries alleged had occurred in California. The Court specifically noted that its decision "concerns the due process limits of the exercise of specific jurisdiction by a State," leaving "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." Id. at 1783-84. In her dissent, Justice Sotomayor noted that the majority failed to address whether its opinion applied to federal class actions "in which a plaintiff injured in the

forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." Id. at 1789 n.4 (Sotomayor, J., dissenting).

In the wake of the Bristol-Myers decision, lower federal courts have split on whether its rationale applies to federal nationwide class actions under Rule 23 of the Federal Rules of Civil Procedure. See, e.g., Gazzillo v. Ply Gem Indus., Inc., 1:17-CV-1077 (MAD/CFH), 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018) (applying Bristol-Myers and dismissing non-resident plaintiffs' claims for lack of specific personal jurisdiction); Molock v. Wholefoods Mkt., Inc., 297 F.Supp.3d 114, 126-27 (D.D.C. 2018) (concluding that Bristol-Myers did not preclude personal jurisdiction over claims of out-of-state putative class members); Sloan v. General Motors LLC, 287 F.Supp.3d 840, 861 (N.D. Cal. 2018) (holding that Bristol-Myers does not preclude jurisdiction over out-of-state plaintiffs in class action); see also 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 6.26 (5th ed. 2018) (noting split in federal courts). Fewer courts have addressed the question whether Bristol-Myers applies to the FLSA claims of out-of-state opt-in plaintiffs, but they too have reached varying conclusions. Compare Seiffert v. Qwest Corp., CV-18-70-GF-BMM, 2018 WL 6590836, at *2-4 (D. Mont. Dec. 14, 2018) (denying motion to dismiss claims of out-of-state putative collective action members; "[t]he Supreme Court's analysis in *Bristol-Myers* did not intend to restrict the Court's exercise of personal jurisdiction in FLSA collective action cases"); Swamy v. Title Source, Inc., No. C 17-01175 WHA, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017) (on motion for conditional certification, rejecting defendant's argument that the court lacks personal jurisdiction over the claims of out-of-state putative collective action members), and

<u>Thomas v. Kellogg Co.</u>, CASE NO. C13-5136RBL, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017) (denying motion to dismiss out-of-state opt-in plaintiffs' claims), <u>with</u> <u>Roy v. FedEx Ground Package Sys., Inc.</u>, 353 F.Supp.3d 43, 54-61 (D. Mass. 2018) (denying motion to send notice to out-of-state putative collective action members because of lack of personal jurisdiction), <u>and</u> <u>Maclin v. Reliable Reports of Texas, Inc.</u>, 314 F.Supp.3d 845, 850-51 (N.D. Ohio 2018) (granting motion to dismiss for lack of personal jurisdiction over claims of out-of-state opt-in plaintiffs); <u>see also</u> <u>Garcia v. Peterson</u>, 319 F.Supp.3d 863, 880 (S.D. Tex. 2018) (denying motion to dismiss, for lack of personal jurisdiction, FLSA claims of out-of-state named plaintiffs).[10]

This Court finds more persuasive the reasoning of those courts that have declined to apply the Supreme Court's reasoning in <u>Bristol-Myers</u> to FLSA collective actions.  Unlike the mass-tort state law claims at issue in <u>Bristol-Myers</u>, the collective action allegations here arise under a federal statute intended to address wage-and-hour practices nationwide.  <u>See</u> <u>Seiffert</u>, 2018 WL 6590836, at *2; <u>Swamy</u>, 2017 WL 5196780, at *2.  Applying <u>Bristol-Myers</u> to FLSA collective actions "would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights."  <u>Swamy</u>, 2017 WL 5196780, at *2.  Therefore, even if defendant had not forfeited its jurisdictional defense, plaintiffs' motion for conditional

---

[10] One of the cases cited by defendant, <u>America's Health & Resource Center, Ltd. v. Promologics, Inc.</u>, Case No. 16 C 9281, 2018 WL 3474444 (N.D. Ill. July 19, 2018), involved a Rule 23 class action brought under the Telephone Consumer Protection Act, and does not address FLSA claims of putative collective action members.

14

certification would not be denied on that ground.

## II.    STANDARDS FOR CONDITIONAL CERTIFICATION

FLSA claims may be pursued collectively pursuant to 29 U.S.C. § 216(b), which

provides that an action to recover unpaid wages:

> may be maintained against any employer . . . by any one or more
> employees for and in behalf of himself or themselves and other
> employees similarly situated.  No employee shall be a party
> plaintiff to any such action unless he gives his consent in writing
> to become such a party and such consent is filed in the court in
> which such action is brought.

29 U.S.C. § 216(b).  Courts have discretion under this provision to direct a defendant

employer to disclose the names and addresses of similarly situated potential plaintiffs and to

authorize the sending of notice to those individuals, so that they may opt in to the collective

action.  See Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) (citing Hoffmann-La

Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)).  Once a plaintiff opts in to a collective

action by filing notice with the court, the statute of limitations on that plaintiff's FLSA claim is

tolled.  See Robles v. Liberty Rest. Supply, Corp., No. 12-CV-5021 (FB)(VMS), 2013 WL

6684954, at *10 (E.D.N.Y. Dec. 18, 2013); 29 U.S.C. § 256(b).

In determining whether to authorize the sending of notice to potential plaintiffs of the

pendency of a collective action, courts employ a two-step process.  See Myers, 624 F.3d at

554–55.  At the first stage, the court makes an initial determination of whether, based on the

pleadings and affidavits, the plaintiffs have demonstrated that the potential opt-in plaintiffs are

"similarly situated" to the named plaintiffs.  See id. at 555; Amhaz v. Booking.com (USA),

Inc., 17 Civ. 2120 (GBD)(HBP), 2018 WL 4279468, at *4 (S.D.N.Y. Aug. 23, 2018),

adopted, 2018 WL 4360791 (S.D.N.Y. Sept. 5, 2018).  If the "plaintiffs make a 'modest

factual showing' that they and potential opt-in plaintiffs 'together were victims of a common

plan or policy that violated the law,'" the court may authorize that notice be sent.  See Myers,

624 F.3d at 555 (citation omitted).  After discovery, the defendants may move for

decertification, at which point the court will determine on a fuller record whether the plaintiffs

who have opted in are, in fact, "similarly situated" to the named plaintiffs.  See id.  If the

record reveals that they are not, the action may be decertified and the opt-in plaintiffs' claims

dismissed without prejudice.  Id.

    At the initial stage, "the court will look at the pleadings and affidavits" to analyze

whether the plaintiffs and putative members of the collective are similarly situated.  See

Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007); Flores v.

Osaka Health Spa, Inc., No. 05 CIV. 962VMKNF, 2006 WL 695675, at *2 (S.D.N.Y. Mar.

16, 2006); Morales v. Plantworks, Inc., No. 05 Civ. 2349(DC), 2006 WL 278154, at *1

(S.D.N.Y. Feb. 2, 2006).  The "modest factual showing" that plaintiffs must make at the

conditional certification stage "cannot be satisfied simply by 'unsupported assertions,' but it

should remain a low standard of proof because the purpose of this first stage is merely to

determine whether 'similarly situated' plaintiffs do in fact exist."  Myers, 624 F.3d at 555

(internal citations omitted).  Although the plaintiffs' burden is not onerous, they must proffer

actual evidence of a factual nexus between their situation and those that they claim are

similarly situated, rather than mere conclusory allegations.  See Flores, 2006 WL 695675, at

16

*3; Morales, 2006 WL 278154, at *3; Levinson v. Primedia Inc., No. 02 Civ. 2222 (CBM), 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003).

At this first step, evidence proffered in opposing conditional certification should not be taken to rebut the plaintiffs' "modest factual showing." See Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 67 (E.D.N.Y. 2016). Courts ought not determine facts or make findings as to credibility at the notice stage. See id. (collecting cases); Fonseca v. Dircksen & Talleyrand Inc., No. 13 Civ. 5124(AT), 2014 WL 1487279, at *3 (S.D.N.Y. Apr. 11, 2014); Chhab v. Darden Rests., Inc., No. 11 Civ. 8345(NRB), 2013 WL 5308004, at *9 (S.D.N.Y. Sept. 20, 2013); Amador v. Morgan Stanley & Co. LLC, No. 11 Civ. 4326(RJS), 2013 WL 494020, at *3 (S.D.N.Y. Feb. 7, 2013); Rosario v. Valentine Ave. Disc. Store, Co., Inc., 828 F.Supp.2d 508, 514 (E.D.N.Y. 2011).

## III.    PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

The FLSA requires employers to pay their employees overtime wages at a rate of "one-and one-half times the regular rate" for each hour worked in excess of 40 hours per week. See 29 U.S.C. § 207(a)(1). However, "[t]he FLSA provides an exemption for 'any employee employed in a bona fide executive, administrative, or professional capacity.'" Costello v. Kohl's Illinois, Inc., No. 1:13-CV-1359-GHW, 2014 WL 4377931, at *3 (S.D.N.Y. Sept. 4, 2014) (quoting 29 U.S.C. § 213(a)(1)). "[A]n 'employee employed in a bona fide administrative capacity' is defined as a person '(1) [c]ompensated on a salary fee basis at a rate not less than $455 per week . . . (2) [w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer

or the employer's customers; and (3) [w]hose primary duty includes the exercise of discretion and independent judgement with respect to matters of significance.'" Amhaz, 2018 WL 4279468, at *3 (quoting Cohen v. Gerson Lehrman Grp., Inc., 686 F.Supp.2d 317, 327-28 (S.D.N.Y. 2010)); see 29 C.F.R. § 541.200(a).[11] In order to qualify for the executive exemption, the employee must be compensated at the specified salary level and the employee's primary duty must be "management of the enterprise in which the employee is employed," that is, she must regularly direct the work of two or more employees and have the authority to hire and fire employees or make recommendations about such matters that "are given particular weight." Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 559-60 (2d Cir. 2012); see 29 C.F.R. § 541.100. Regulations promulgated by the United States Department of Labor further provide for a "combination exemption": Employees "whose primary duty involves a combination of exempt administrative and exempt executive work may qualify" as exempt even though their duties do not entirely fit either the administrative or executive exemption. See 29 C.F.R. § 541.708.

Because the FLSA is a "remedial act," its exemptions are to be "narrowly construed," and the "employer bears the burden of proving that its employees fall within an exempted category of the Act." Ramos, 687 F.3d at 558 (quoting Martin v. Malcolm Pirnie, Inc., 949

---

[11] Section (a)(1) of the referenced regulation was to be amended to change the salary threshold from "$455 per week" to "the 40th percentile of weekly earnings of full-time nonhourly workers in the lowest-wage Census Region." Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 81 Fed. Reg. 32391, 32549 (May 23, 2016). However, the United States District Court for the Eastern District of Texas enjoined the Department of Labor from implementing that change. See Nevada v. U.S. Dep't of Labor, 218 F.Supp.3d 520 (E.D. Tex. 2016).

18

F.2d 611, 614 (2d Cir. 1991)).  That said, plaintiffs seeking conditional certification in a

FLSA exemption case must make "some showing that 'there are other employees . . . who are

similarly situated with respect to their job requirements and with regard to their pay

provisions,' on which the criteria for many FLSA exemptions are based, [and] who are

classified as exempt pursuant to a common policy or scheme."  Myers, 624 F.3d at 555

(citation omitted).  "Generally, to certify a nationwide collective action in an FLSA exemption

case, a plaintiff 'must ultimately demonstrate a nationwide policy pursuant to which [managers]

are assigned duties that render [the employer's] exempt classification inappropriate.'"  Amhaz,

2018 WL 4279468, at *5 (quoting Costello, 2014 WL 4377931, at *3).

        Here, plaintiffs do not allege that an official policy of defendant violated the FLSA, but

instead contend that they were subject to a *de facto* illegal policy because in practice they,

along with other SMs and SMITs classified as exempt, primarily performed non-exempt tasks.

Accordingly, in order to prevail on their pending motion, plaintiffs "must make a modest

factual showing that they were subject to a common 'de facto illegal policy.'"  Costello, 2014

WL 4377931, at *4 (quoting Jenkins v. TJX Cos Inc., 853 F.Supp.2d 317, 322 (E.D.N.Y.

2012)); see Amhaz, 2018 WL 4279468, at *5.  In other words, plaintiffs "'must demonstrate'

that they are 'similarly situated with respect to the claim that they were required to perform

nonmanagerial job duties in contravention of the formal job description.'"  Costello, 2014 WL

4377931, at *4 (quoting Jenkins, 853 F.Supp.2d at 324); see Amhaz, 2018 WL 4279468, at

*5.

All five named plaintiffs have supplemented the allegations in the Amended Complaint by submitting their own declarations describing their duties and work hours; they have also submitted sworn statements from thirteen opt-in plaintiffs who worked as SMs or SMITs at various Lumber Liquidator stores around the country, in which they aver that their jobs primarily involved performing the same non-exempt job duties as the named plaintiffs, and that they worked an average of over 50 hours per week but were not paid overtime wages. The declarants also state that they did not have the authority to hire or fire employees and that their recommendations on personnel decisions were ignored. These employee declarants worked in 37 store locations in thirteen states. For the reasons explained below, this Court concludes that the pleadings and declarations submitted by plaintiffs satisfy the requisite "modest factual showing" that there are other "similarly situated" employees who were misclassified by defendant as exempt from the FLSA's overtime requirements.[12] Accordingly, plaintiffs have met their modest burden with respect to a nationwide collective of SMs at all but defendant's largest stores, and with respect to SMITs prior to their reclassification in 2018.[13]

_____

[12] This Court declines to consider the allegations pled in Kramer v. Lumber Liquidators, Inc. in California state court, see DE #42-1, or the online reviews from glassdoor.com, see DE #42-25, submitted by plaintiffs. Both documents are unsworn, and there is no indication as to whether the anonymous online reviews from glassdoor.com were drafted by SMs other than those who already submitted declarations in support of the instant motion.

[13] Since defendant has failed to address the conditional certification of a collective of SMITs, this Court treats plaintiffs' application with respect to SMITs as uncontested. Nevertheless, the Court notes that defendant's wholesale reclassification of SMITs demonstrates that those employees were subject to a common policy and suggests that SMITS are similarly situated. See SMIT Job Description; Julian v. MetLife, Inc., 298 F.Supp.3d 699, 704 (S.D.N.Y. 2018); Ibea v. Rite Aid Corp., No. 11 Civ. 5260 (JSR)(HBP) 2012 WL 75426, at *2 (S.D.N.Y. Jan. 9, 2012).

First, all SMs nationwide are subject to a common job description.  Although a common job description alone is insufficient to demonstrate that other employees are "similarly situated,"[14] it is some evidence that SMs were subject to a common policy and that corporate management exercised some control over individual store operations.  See Griffin v. Aldi, Inc., No. 5:16-CV-354 (LEK/ATB), 2017 WL 1397320, at *9 n.15 (N.D.N.Y. Feb. 22, 2017) (granting nationwide conditional certification); Varghese v. JP Morgan Chase & Co., 14 Civ. 1718 (PGG), 2016 WL 4718413, at *7 (S.D.N.Y. Sep. 9, 2016) (considering common job descriptions as a factor in granting nationwide conditional certification); Puglisi v. TD Bank, N.A., 998 F.Supp.2d 95, 100 (E.D.N.Y. 2014) (granting nationwide conditional certification because similarities in job postings tend to suggest that assistant managers "are treated uniformly to some degree"); Ibea v. Rite Aid Corp., No. 11 Civ. 5260(JSR)(HBP), 2012 WL 75426, at *3 (S.D.N.Y. Jan. 9, 2012) (in ruling on defendant's objections to conditional certification, district court holds that magistrate judge's reliance on common job description was "completely reasonable"); Pippins v. KPMG LLP, No. 11 Civ. 0377(CM)(JLC), 2012 WL 19379, at *9 (S.D.N.Y. Jan. 2, 2012).

More importantly, the substance of the SM job description supports plaintiffs' allegations.  For example, the job description acknowledges that there is some degree of non-exempt manual labor required, warning that SMs are required to frequently lift up to 20 pounds and occasionally lift up to 80 pounds.  See SM Job Description at 2.  Further

---

[14] See Brown v. Barnes & Noble, Inc., 252 F.Supp.3d 255, 263 (S.D.N.Y. 2017); Costello, 2014 WL 4377931, at *4.

highlighting the similarities in the position nationwide, the job description additionally states that SMs "routinely work fifty (50), and sometimes more, hours per week . . . ." Id. at 3; see Griffin, 2017 WL 1397320, at *4 (noting that store managers were "expected to work 50 hours per week" and "were not paid overtime"). Finally, the job description acknowledges that SMs may need "to fill store staffing gaps due to associate absences, scheduled Paid Time-Off, special/promotional events or other business demands." SM Job Description at 2. Defendant's recognition in the universal SM job description that SMs are required to perform non-exempt tasks weighs in favor of collective certification. See Griffin, 2017 WL 1397320, at *6 (defendant's "job description for Store Managers clearly contemplates that these exempt employees would, to some extent, perform the same types of manual labor done by the non-exempt employees in the store"); Puglisi, 998 F.Supp.2d at 100 (noting "starkly similar" job postings, from various bank branches, that included non-managerial duties); Costello, 2014 WL 4377931, at *5 (in certifying nationwide collective action, court considers job description and training document that acknowledge that assistant store managers are expected to perform at least some non-exempt work); Ferreira v. Modell's Sporting Goods, Inc., No. 11 Civ. 2395(DAB), 2012 WL 2952922, at *3 (S.D.N.Y. July 16, 2012) (relying on job description requiring "the performance of nonexempt duties").

The named and opt-in plaintiffs rely not only on their own experiences working for defendant, but on their conversations with other (identified) SMs who worked at different stores across the country. See Spack v. Trans World Entm't Corp., No. 1:17-CV-1335 (TJM/CFH), 2019 WL 192344, at *9-10 (N.D.N.Y. Jan. 15, 2019) (granting nationwide

conditional certification on misclassification claim, based on declarations of named plaintiffs and twelve opt-in plaintiffs recounting their working conditions and each referencing their awareness of at least one other store manager who had the same experience); Amhaz, 2018 WL 4279468, at *5 (plaintiffs' declarations regarding their personal experiences and observations of potential opt-in plaintiffs were sufficient at conditional certification stage); Costello, 2014 WL 4377931, at *5 (relying on deposition testimony of opt-in plaintiffs regarding observations and discussions with other managers).

For example, opt-in plaintiff Schlueter, who was the SM of the Pleasantville, New Jersey store, spoke regularly with the SM at the Deptford, New Jersey store, who complained about "having to do manual labor all the time and having no associates to assist." Schlueter Decl. ¶ 12. In fact, for at least three months, the SM at the Deptford store worked alone, without any non-exempt employees. See id. Plaintiff Mason spoke with SMs at six New York area stores, who told her "that they too spent a significant amount of their time primarily performing non-exempt, associate level tasks." See Mason Decl. ¶ 13; see also Lane Decl. ¶ 13 (SM at Louisiana store spoke with SMs at two Texas stores who also "perform[ed] non-exempt, associate-level functions as their primary duty"); Flores Decl. ¶ 14 (SM of State College, Pennsylvania store spoke with five other SMs at various stores who "similarly had minimal or non-existent managerial functions and spent nearly all of their time performing non-exempt, associate-level tasks as their primary duty"); Portis Decl. ¶ 20 (identifying five other SMs who told him they "primarily perform[ed] non-exempt, associate-level tasks"). Opt-in plaintiff Kapsidelis states that he worked as a non-exempt associate at six locations in

Texas and Arkansas and observed SMs at those stores "spending nearly all of their time performing the same non-exempt, associate-level functions." Kapsidelis Decl. ¶ 13. This further supports plaintiffs' claim that nationwide collective action members were subject to a *de facto* common policy.

The declarations submitted by plaintiffs buttress plaintiffs' theory that defendant implemented a nationwide practice of thinly staffing its stores, causing SMs to routinely perform non-managerial tasks. See Griffin, 2017 WL 1397320, at *5-6 (complaint alleged common policy nationwide to control labor costs, resulting in SMs performing manual work that could otherwise have been performed by non-exempt employees); Costello, 2014 WL 4377931, at *6 (testimony that budget and staffing cuts resulted in assistant store managers performing non-managerial tasks and "tie[d] Plaintiffs' claims to a policy or practice that affected" assistant store managers nationwide); Indergit v. Rite Aid Corp., No. 08 Civ. 9361(PGG), 2010 WL 2465488, at *7 (S.D.N.Y. June 16, 2010) (relying on affidavits that store managers were subject to a "corporate-wide policy" that, due to cuts in overtime hours in their labor budgets, "forced them to perform mainly non-exempt duties"). Opt-in plaintiff Schlueter states that if non-exempt employees were absent for any reason, he "was expected to work their shift and perform their same job duties." See Schlueter Decl. ¶ 11; see also id. ¶ 12 (describing conversation with SM Mike Schott, who worked alone for at least three months). Opt-in plaintiff Dixon had the same experience and the SM from the San Antonio location warned him that he would have to perform associate functions because the staff "is so limited." See Dixon Decl. ¶ 13. Plaintiff Mason states that due to associate absences at her

store, she sometimes had to work sixteen consecutive days, for at least eleven hours per day. See Mason Decl. ¶ 12; see also id. ¶ 13 (describing a conversation with an SM at a New York City store who stayed with a relative nearby because he had to work so many hours without a day off due to associates' absences). Becerra, an opt-in, avers that even if he was scheduled for a day off, he would have to fill in if an associate missed work. See Becerra Decl. ¶ 14. And, as discussed above, the SM job description itself advises that SMs must "fill store staffing gaps due to associate absences . . . ." SM Job Description at p. 3. In fact, several of the declarants describe having complained to their Regional Managers (each of whom was different) about primarily spending their time on non-exempt tasks, only to have those complaints ignored. See Dixon Decl. ¶ 16; Lane Decl. ¶ 16; Becerra Decl. ¶ 18; Harmon Decl. ¶ 15.

Notably, plaintiffs do not seek to include in the collective those SMs who worked at defendant's "largest stores," i.e., those with at least $5,000,000 in annual revenue, on average, during the notice period. See Pl. Mem. at 23 & n.25. Defendant concedes that a store with larger sales volume will have more non-exempt employees reporting to the SM, and that the store's sales volume will also affect the frequency of customer interactions, the number of deliveries and the volume of inventory to be monitored. See Dyer Decl. ¶¶ 19-23, 27. While defendant acknowledges that the duties performed by some SMs, and the time devoted to those tasks, "var[y] widely," see Dyer Decl. ¶ 13, defendant nevertheless proffers declarations that largely "do not differentiate or specify their experiences as a[n] SM in stores

based on revenue," Pl. Reply at 9.[15]  Moreover, nine of defendant's declarants admitted in

responding to requests to admit that there were weeks where they had fewer than two full-time

employees, and where they worked more than 55 hours and engaged in non-exempt tasks.  See

Responses to Requests for Admission, DE #63-1 to DE #63-9.

Defendant argues that the question whether an exemption applies to SMs is an

individualized inquiry that depends on the work each SM actually performed, making this an

inappropriate case for conditional certification.  See Def. Opp. at 28.  Defendant is correct that

the determination of whether the employee's "primary duty" is the performance of exempt

work involves a fact-specific inquiry.  See id. at 24 (citing 29 C.F.R. § 541.700).  But

defendant is mistaken in assuming that plaintiffs' motion should therefore be denied: courts

have often held that the potential need for individualized inquiries does not preclude

conditional certification at the first stage of the judicial inquiry.  See Agonath v. Interstate

Home Loans Ctr., Inc., 17-cv-5267 (JS)(SIL), 2019 WL 1060627, at *3-4 (E.D.N.Y. Mar. 6,

2019) ("[d]efendants' arguments concerning exemption status and disparate employment

conditions present factual disputes that would require the premature resolution of substantive

issues"); Martin v. Sprint/United Mgmt. Co., No. 15 Civ. 5237 (PAE), 2016 WL 30334, at

*14 n.30 (S.D.N.Y. Jan. 4, 2016) (defendant is "wrong to claim that the potential need for

individualized inquiries into whether an FLSA exemption applies precludes conditional

_____

[15] Defendant contends that each of its rebuttal declarations is from an SM who worked in at least one
store with less than $5,000,000 in annual revenue.  See Def. Opp. at 3 n.1.  The declarations
themselves do not, however, distinguish between the declarants' experiences at the largest stores and
their experiences at the stores that would be encompassed within the proposed collective.

certification"); Trawinski v. KPMG LLP, No. 11 Civ. 2978(PAC), 2012 WL 6758059, at *4

(S.D.N.Y. Dec. 21, 2012) (concluding that defendant's claim that certain members of a

proposed collective action "qualify them for the administrative or professional exemptions to

the FLSA" is "a merits argument . . . inappropriate at this stage of the litigation"); Summa v.

Hofstra Univ., 715 F.Supp.2d 378, 390 (E.D.N.Y. 2010) ("the Court rejects Defendant's

objection that conditional certification was inappropriate because the class . . . required

individualized factual inquiries to determine whether or not they were exempt from the

FLSA"). Instead, defendant may make its merits-based argument at the decertification stage,

after discovery has been completed. See Spack; 2019 WL 192344, at *9; Amhaz, 2018 WL

4279468, at *6-7; Puglisi, 998 F.Supp.2d at 101; Pippins, 2012 WL 19379, at *11.

Otherwise, no FLSA case based on misclassification under an exemption could proceed

through the collective action notice process, thereby defeating the purpose of the FLSA's

provisions and forcing courts to address each individual plaintiff's claim in a separate lawsuit.

See Hernandez v. City of New York, No. 16-CV-3445 (RA), 2017 WL 2829816, at *5

(S.D.N.Y. June 29, 2017); Jackson v. Bloomberg, 298 F.R.D. 152, 161 (S.D.N.Y. 2014).

   Moreover, it is undisputed that defendant has classified all SMs as exempt regardless of

the work they actually performed. See Julian v. MetLife, Inc., 298 F.Supp.3d 699, 703

(S.D.N.Y. 2018) (finding that plaintiffs had demonstrated that members of the proposed

collective were "classified as exempt pursuant to common policy or scheme"). In addition, in

October 2016, defendant uniformly increased every SM's salary and reduced every SM's

commissions. See Compensation Change Announcement and Q & A (Nov. 3, 2018), DE #43-

3; Pippins, 2012 WL 19379, at *10 (noting that plaintiffs and members of the proposed collective were subject to "the same compensation policies and practices").  Although, as previously noted, an employer's classification of all employees in a particular job title as exempt does not alone satisfy a plaintiff's burden, defendant herein should not be heard to complain that SMs must be treated individually where defendant itself uniformly classified all SMs as exempt, without an individualized inquiry as to the actual job duties of each.  See Costello, 2014 WL 4377931, at *7; Pippins, 2012 WL 19379, at *10; Jacob v. Duane Reade, Inc., No. 11-cv-0160 (JPO), 2012 WL 260230, at *8 (S.D.N.Y. Jan. 27, 2012); Alli v. Boston Mkt. Co., Civil No. 3:10-cv-4 (JCH), 2011 WL 4006691, at *5 (D. Conn. Sept. 8, 2011); see also Julian, 298 F.Supp.3d at 704 (finding that reclassification of all employees with specified job title as exempt from FLSA demonstrates that they were subject to a common policy); accord Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1264 (11th Cir. 2008) (rejecting defendant's argument that individual inquiry was required where employer "uniformly exempted all store managers from overtime pay requirements and its exemption did not turn on any individualized factors. . . . There is nothing unfair about litigating a single corporate decision in a single collective action . . . .").

To the extent that the rebuttal declarations submitted by defendant present factual disputes, it is well established that issues of fact should not be resolved during the first stage of the conditional certification inquiry.  See Amhaz, 2018 WL 4279468, at *6-7; Julian, 298 F.Supp.3d at 705; Griffin, 2017 WL 1397320, at *8; Varghese, 2016 WL 4718413, at *7-8;

Jacob, 2012 WL 260230, at *7. As discussed above, at the notice stage, courts ought not determine credibility or resolve the merits of plaintiffs' claims.

In a strained interpretation of the information contained in the declarations of two of plaintiffs' declarants, Van Vorhis and Harmon, defendant further argues that those two declarants may meet the combination exemption set forth in 29 C.F.R. § 541.708. See Def. Opp. at 6 n.13. Specifically, defendant contends that the two declarants "participated in the hiring process," offered their judgments on the hiring and firing of employees, and exercised discretion and independent judgment by cold-calling potential customers. See id. In fact, Van Vorhis states that he spent about 98 percent of his time performing non-exempt, associate-level functions and that his personnel recommendations were disregarded by his Regional Manager. See Van Vorhis Decl. ¶¶ 9-11. Similarly, Harmon avers that he spent 95 percent of his time performing non-exempt, associate-level tasks, and that his Regional Manager "did not consider" his personnel recommendations. See Harmon Decl. ¶¶ 8-10. Their declarations thus do not demonstrate that Harmon and Van Vorhis are exempt under the combination exemption.

The facts in Costello, in which the district court conditionally certified a nationwide class of assistant store managers, are closely analogous to those in the instant case. In Costello, the defendant operated approximately 1,160 department stores nationwide. Two plaintiffs brought a FLSA action on behalf of themselves and other assistant store managers, whom they claimed were misclassified as exempt under the FLSA. Each plaintiff had worked as an assistant store manager in two stores in a single state (Virginia and New York,

respectively).  The two plaintiffs alleged that they worked more than 40 hours per week,

performing primarily routine, non-managerial tasks, but were not paid overtime.  Ten other

assistant store managers, who had worked in defendant's stores in eleven states, opted in to the

action and submitted declarations in support of plaintiffs' motion for conditional certification,

describing their personal experiences and their observations and discussions with other

assistant store managers.  As in this case, the defendant in Costello used uniform job

descriptions for all assistant store managers, outlining the performance of at least some non-

exempt work.  See 2014 WL 4377931, at *5.  There too, the plaintiffs described the thin

staffing of stores as creating the need for them to perform primarily non-exempt duties.  See

id. at *6.  The defendant in that case likewise argued that due to differences among its stores,

assistant store managers performed different duties and thus were not similarly situated

nationwide.  The district court rejected that argument, observing that the defendant, without

undertaking an individual analysis, had classified all assistant managers as exempt.  See id. at

*7.  In language that applies with equal force in the instant case, the court in Costello

emphasized that "[t]here is no requirement that all collective action members be identically

situated; they must be similarly situated."  Id.

Similarly, in Stevens v. HMSHost Corp., No. 10 Civ. 3571(ILG)(VVP), 2012 WL

4801784 (E.D.N.Y. Oct. 10, 2012), District Judge I. Leo Glasser upheld the conditional

certification of a nationwide collective of assistant store managers based on the deposition

testimony of nine potential plaintiffs from across the country, who alleged that they were

misclassified as exempt from the FLSA's overtime requirement but were required to perform

primarily non-exempt tasks. Overruling the defense objections to the magistrate judge's order of conditional certification, the district court concluded that by proffering evidence of identical job classifications and training materials, plaintiffs had demonstrated a *de facto* illegal policy that affected all assistant store managers. See id. at *2. Judge Glasser rejected the defendants' argument that their evidentiary submissions demonstrated the existence of factual differences as to the duties performed by assistant store managers. See id. at *3. As Judge Glasser held in Stevens, any factual disputes raised by defendants' declarations could not be resolved until the decertification stage, after the completion of discovery. See id.

In contrast, many of the cases on which defendant relies are readily distinguishable or are against the weight of authority. For example, courts in this Circuit have almost uniformly rejected the rationale of Diaz v. Electronics Boutique of America, Inc., No. 04-CV-0840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005), that an individual inquiry into the duties performed by each opt-in plaintiff is necessary to evaluate a misclassification claim. See Benitez v. Demco of Riverdale, LLC, No. 14 Civ. 7074(CM), 2015 WL 3780019, at *5 (S.D.N.Y. June 15, 2015) (concluding that Diaz is "against the weight of authority"); Francis v. A & E Stores, Inc., No. 06 Civ. 1638(CS)(GAY), 2008 WL 4619858, at *3 n.3 (S.D.N.Y. Oct. 16, 2008) (same); see also cases cited *supra* pp. 26-27.

This Court's decision in Zheng v. Good Fortune Supermarket Grp. (USA), Inc., No. 13-CV-60 (ILG), 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013), which was not a misclassification case, bears no resemblance to the instant action. There, this Court refused to certify a collective of supermarket clerks at three locations based on the conclusory declaration

of one plaintiff, who failed to specifically identify *any* similarly situated employees. In

Laroque v. Domino's Pizza, 557 F.Supp.2d 346 (E.D.N.Y. 2008), the district court granted

conditional certification as to the chain location where all four plaintiffs worked but denied the

motion as to five other locations. In that case, there were no sworn statements from any

employees at any of the other locations, and the source of one of the few hearsay statements

from an identifiable declarant (a manager of the store where the plaintiff worked) denied under

oath that he had made the hearsay statement attributed to him. See id. at 355-56. The district

court declined to certify the broader collective "on the basis of such thin factual support." Id.

at 356. And, in Ahmed v. T.J. Maxx Corp., No. 10-CV-3609 (ADS)(ETB), 2013 WL

2649544 (E.D.N.Y. June 8, 2013), the district judge set aside the magistrate judge's order

conditionally certifying a nationwide collective of assistant store managers, where the plaintiff

provided deposition testimony concerning an "extremely limited" geographical region (New

York and Connecticut) and insufficient evidence of a *de facto* nationwide policy. See 2013

WL 2649544, at *13-15; see also Stevens, 2012 WL 4801784, at *3 (distinguishing caselaw

refusing to certify nationwide collective action based on "geographically clustered" evidence).

In contrast to the cases cited by defendant, plaintiffs in this case have met their modest

burden of showing that they, opt-in plaintiffs and potential collective action members are

similarly situated victims of a common plan or policy that violates the FLSA.

## III.    SCOPE OF NOTICE

Defendant further argues that if the Court determines that notice should issue to

potential collective action members, such notice should be limited to employees at the New

York locations where the original four named plaintiffs worked. See Def. Opp. at 18, 29.

Defendant offers no reason for limiting notice in that manner. In addition to the five named

plaintiffs, plaintiffs have submitted declarations from thirteen opt-in plaintiffs who worked at

various locations nationwide, from different regions in the country, who describe being subject

to the same policies as the named plaintiffs with respect to the alleged FLSA overtime

violation. Plaintiffs' declarants further describe conversations they had with SMs from other

locations around the country, who performed similar non-exempt duties but were not paid

overtime for those hours in excess of 40 that they worked in a workweek. Many courts in this

Circuit have conditionally certified nationwide collectives of "managers" or "assistant

managers" alleged to have been misclassified as exempt, where the motions were supported by

the declarations of plaintiffs and opt-in plaintiffs from various geographic locations, detailing

their experiences and observations and/or conversations they had with employees from the

defendants' other locations. See Spack, 2019 WL 192344; Griffin, 2017 WL 1397320;

Varghese, 2016 WL 4718413; Puglisi, 998 F.Supp.2d 95; Costello, 2014 WL 4377931; Ibea,

2012 WL 75426; Stevens, 2012 WL 4801784; Pippins, 2012 WL 19379; Alli, 2011 WL

4006691; Ravenell v. Avis Budget Car Rental, LLC, No. 08-CV-2113 (SLT)(ALC), 2010 WL

2921508 (E.D.N.Y. July 19, 2010).

Here, the similarities in the substance of the declarations of opt-in plaintiffs from across

the country, in terms of the hours worked, the performance primarily of non-exempt duties,

and the lack of discretion they were permitted to exercise, raises an inference of a common

policy that violated the FLSA. Unlike the cases on which defendant relies, see Def. Opp. at

29, the declarations proffered by plaintiffs are numerous and represent a geographically diverse sampling, cf. Martin, 2016 WL 30334, at *8-9 (certifying a collective of employees at only a single location, where plaintiffs proffered a "numerically and geographically limited number of declarations" and defendant used different intermediary companies to retain putative collective action members); Vasquez v. Vitamin Shoppe Indus. Inc., No. 10 Civ. 8820(LTS)(THK), 2011 WL 2693712, at *3-4 (S.D.N.Y. July 11, 2011) (denying conditional certification motion for a nationwide collective based on the single declaration of the plaintiff describing his experience and that of six other managers in Manhattan and Brooklyn). For example, in Ahmed, plaintiffs offered the deposition testimony of assistant store managers only in New York and Connecticut. See 2013 WL 2649544, at *13. Here, in contrast, plaintiffs have submitted declarations from thirteen SMs, who worked at 37 of defendant's stores across thirteen states from different regions in the country. As in Costello, plaintiffs' submissions constitute "'actual evidence of a link' between plaintiffs and those across the nation." 2014 WL 4377931, at *6 (citation omitted).

Accordingly, the Court authorizes plaintiffs to send notice to a nationwide collective of (a) SMITs, and (b) SMs who worked at stores that generated, on average, less than $5 million in revenue during the notice period.

## IV.    DISCOVERY OF IDENTIFYING INFORMATION

Plaintiffs request that the Court direct defendant to produce the name, mailing address, email address (if any), telephone numbers, and the last four digits of Social Security numbers

of each potential member of the collective.  See Pl. Mem. at 26.  Defendant argues that only

mailing addresses and dates of employment are necessary.  See Def. Opp. at 29.

"'In general, it is appropriate for courts in collective actions to order the discovery of

names, addresses, telephone numbers, email addresses, and dates of employment of potential

collective members.'"  Valerio, 314 F.R.D. at 74-75 (quoting Velasquez v. Digital Page, Inc.,

No. CV 11-3892(LDW)(AKT), 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014))

(collecting cases); see Lopez v. Paralia Corp., 16-CV-6973 (SLT)(PK), 2018 WL 582466, at

*3 (E.D.N.Y. Jan. 26, 2018) (rejecting defendant's argument that telephone numbers should

not be produced); Zaldivar v. JMJ Caterers, Inc., 166 F.Supp.3d 310, 326 (E.D.N.Y. 2016).

On the other hand, courts are reluctant to require the disclosure of personally sensitive

information, such as Social Security numbers, absent a showing that the information is

necessary for plaintiffs to notify potential opt-ins of the litigation.  See Varghese, 2016 WL

4718413, at *10 n.7; Zaldivar, 166 F.Supp.3d at 326-27; Valerio, 314 F.R.D. at 75.

Plaintiffs herein have not demonstrated the necessity for disclosure of partial social security

numbers.  Therefore, plaintiffs' request for the disclosure of social security numbers is denied,

without prejudice to a further showing of necessity.  Accordingly, subject to the confidentiality

stipulation entered in this case, see Stipulation and Protective Order (June 22, 2018), DE #33,

defendant is directed to produce to plaintiffs, in a computer-readable format, a list of the

names, addresses, telephone numbers, email addresses, work locations and dates of

employment for all potential collective action members during the relevant time period.

## V. METHODS OF PROVIDING NOTICE AND OPTING IN

Plaintiffs also request that the opt-in notice be sent by both regular mail and email, and be posted in the workplaces of defendant's employees, and that putative collective action members be permitted to opt-in by mailing, faxing, emailing or providing electronic consent through a dedicated website. See Pl. Mem. at 27. Defendant opposes plaintiffs' request and contends that notice by first-class mail is sufficient. See Def. Opp. at 30.

Courts in this District routinely authorize the posting of notice within defendants' businesses. See, e.g., Agonath, 2019 WL 1060627, at *7; Castillo v. Perfume Worldwide Inc., No. CV 17-2972 (JS)(AKT), 2018 WL 1581975, at *17 (E.D.N.Y. Mar. 30, 2018); Lopez, 2018 WL 582466, at *2. Defendant therefore shall post copies of the Notice, in all relevant languages, see Portilla v. Bridgehampton Stone, Inc., CV 17-2549 (JMA)(AYS), 2019 WL 1128364, at *10 (E.D.N.Y. Mar. 12, 2019), in non-public locations conspicuous to all relevant employees, for the duration of the opt-in period.

Courts in this Circuit also regularly authorize notice by email. See id.; Agonath, 2019 WL 1060627, at *7; Djurdjevich v. Flat Rate Movers, Ltd., 17-cv-261 (AJN), 2019 WL 125888, at *3 (S.D.N.Y. Jan. 7, 2019); Knox v. John Varvatos Enters. Inc., 282 F.Supp.3d 644, 667 (S.D.N.Y. 2017). In the absence of any explanation by defendant as to why notice via email would be "unreasonable," the Court grants plaintiffs' request to send notice by email, in addition to first-class mail.

Plaintiffs further request that opt-in plaintiffs be permitted to submit their consent forms to plaintiffs' counsel by mail, email or fax. See Pl. Mem. at 27. Courts within this District

have split on the issue of whether opt-in plaintiffs should be instructed to return their consent forms to the Clerk of the Court or to plaintiffs' counsel. See, e.g., Garriga v. Blonder Bldrs. Inc., CV 17-497 (JMA)(AKT), 2018 WL 4861394, at *8 (E.D.N.Y. Sept. 28, 2018) (collecting cases). In previous cases, this magistrate judge has had the forms sent to the Clerk of the Court, in order to avoid chilling the right of opt-in plaintiffs to select their own counsel. See, e.g., Pérez v. La Abundancia Bakery & Rest. Inc., 17-CV-0656 (RLM), 2017 WL 3382068, at *9 (E.D.N.Y. Aug. 4, 2017); see also Garriga, 2018 WL 4861394, at *8. Other decisions in the Eastern District New York have held that where, as here, the Notice to the collective expressly states that opt-ins have the right to retain separate counsel, the risk that opt-in plaintiffs will be discouraged from selecting their own counsel is "*de minimis* at best." Dilonez v. Fox Linen Serv. Inc., 35 F.Supp.3d 247, 257 (E.D.N.Y. 2014); accord Zai You Zhu v. PMEO Japanese Grill & Sushi, Inc., 17 CV 3521 (LDH) (CLP), 2018 WL 6531592, at *4 (E.D.N.Y. Dec. 11, 2018).

Moreover, as one court observed, "in light of the budgetary constraints and financial limitations faced by the federal courts, the more practicable and efficient method of opting in is for the consent forms to be sent to plaintiffs' counsel[,]" who have the "incentive to quickly file the consent forms with the Court" through electronic filing. Dilonez, 35 F.Supp.3d at 256. Having considered the case law in this District on both sides of the issue, this Court concludes that the procedures proposed by plaintiffs, whereby putative collective members may join the case "by mailing, faxing or emailing their consent forms" to plaintiffs' counsel, Pl. Mem. at 27, are reasonable and will facilitate the opt-in process. The Court, in its discretion,

approves those procedures. These approved mechanisms are sufficient to provide notice to putative opt-in plaintiffs, making a dedicated website for transmittal of consent forms unnecessary.

## VI.    REMINDER NOTICE

Plaintiffs request permission to send a reminder notice by regular mail and email to putative collective action members who, halfway through the opt-in period, have not opted in. See Pl. Mem. at 28. Defendant opposes this request as "duplicative, unreasonable and unnecessary." See Def. Opp. at 30. Plaintiffs' request is granted since it furthers the purpose of notice of a collective action under the FLSA. See Portilla, 2019 WL 1128364, at *10; Douglas v. Anthem Prods., LLC, 18-CV-5789 (VEC), 2019 WL 78988, at *5 (S.D.N.Y. Jan. 2, 2019); Diaz v. New York Paving Inc., 340 F.Supp.3d 372, 386-87 (S.D.N.Y. 2018). Although not specifically requested by defendant, the Court rules that, in order to avoid any unfair prejudice to defendant, the reminder notice must include a disclaimer that the Court neither encourages nor discourages participation in the action. See Lopes v. Heso, Inc., 16 CV 6796 (MKB)(RML), 2017 WL 4863084, at *8 (E.D.N.Y. Oct. 27, 2017); Hotaranu v. Star Nissan Inc., 16 CV 5320 (KAM) (RML), 2017 WL 1390808, at *6 (E.D.N.Y. Apr. 12, 2017).

## VII.    DEADLINE TO OPT-IN

Plaintiffs request that putative collective action members be required to opt in to the litigation within 90 days. See Pl. Mot. at 26. Defendant objects to a 90-day period and instead proposes a 60-day period. See Def. Opp. at 30-31. In the absence of any argument by

plaintiffs as to why a longer period is necessary, this Court adheres to the more typical 60-day period from the date of dissemination of the Notice for opt-in plaintiffs to send in their consent forms. See Castillo, 2018 WL 1581975, at *11 (collecting cases and describing a 60-day opt-in period as "common practice" under the FLSA); Yap v. Mooncake Foods, Inc., 146 F.Supp.3d 552, 566-67 (S.D.N.Y. 2015) (overruling plaintiff's request for 90-day opt-in period).

## VIII.  CONSENT FORM

Defendant further requests that language be inserted into the opt-in form (DE #42-30) to clarify that putative collective action members are opting into a lawsuit with respect to their federal claims. See Def. Opp. at 31 (requesting the following language: "I consent to be a plaintiff . . . to contest the failure of Lumber Liquidators to pay me overtime wages under federal law and authorize the filing of this consent in this lawsuit challenging such conduct.") The Court does not find the existing language (without the three underscored words) to be problematic, especially since plaintiffs' proposed opt-in form does not even reference the NYLL. Cf. Garriga, 2018 WL 4861394, at *9 (declining to remove reference to the NYLL from the proposed notice to the collective). Defendant's request is denied.

## IX.  RELEVANT TIME PERIOD FOR NOTICE

Plaintiffs request that the notice period be keyed to the date of the filing of plaintiffs' motion for conditional certification. See Pl. Mem. at 27. In effect, plaintiffs ask this Court to exercise its discretion to toll the limitations period from the date the instant motion was filed until the date of this Memorandum and Order.

In FLSA collective actions, the statute of limitations is automatically tolled for potential opt-in plaintiffs on the "date on which [their] written consent is filed in the court in which the action was commenced." 29 U.S.C. § 256(b). Nevertheless, courts in this District have frequently permitted equitable tolling while the motion for conditional certification was pending, to avoid "attributing to the [potential opt-ins] the Court's deliberation period." Wang v. Empire State Auto Corp., No. 14-cv-1491 (WFK)(VMS), 2015 WL 4603117, at *14 (E.D.N.Y. July 29, 2015); see, e.g., Garriga, 2018 WL 4861394, at *11; Cabrera v. Stephens, 16-CV-3234 (ADS) (SIL), 2017 WL 4326511, at *7 (E.D.N.Y. Sept. 28, 2017); Chen v. XpresSpa at Term. 4 JFK, LLC, No. 15 CV 1347 (CBA)(CLP), 2016 WL 11430475, at *10 (E.D.N.Y. Feb. 16, 2016), adopted, 2016 WL 5338536, at *5-6 (E.D.N.Y. Sept. 23, 2016); Zhang v. Wen Mei, Inc., No. CV14-1647 (JS)(SIL), 2015 WL 6442545, at *7 (E.D.N.Y. Oct. 23, 2015).

It would be inequitable to charge the potential opt-in plaintiffs with the time during which the instant motion was pending before this Court. In addition, the parties agreed to toll the limitations period for 418 days as to the SMITs and 582 days as to the SMs. See Second Declaration of Justin Marino (Jan. 14, 2019) ¶ 19, DE #63. Defendant did not address the relevant notice period in its opposition papers. Accordingly, in the absence of any objection, this Court rules that notice may be sent to SMITs who were employed by defendants between November 22, 2014 and September 24, 2018[16] (three years from November 2, 2018 minus 345

---

[16] September 24, 2018 is the earliest date on which the SMIT job postings submitted by plaintiffs were disseminated. See 2018 SMIT Job Postings.

days), and that notice be sent to SMs who were employed by defendant between June 11, 2014 to the present (three years from November 2, 2018, minus 509 days).[17]

## CONCLUSION

For the reasons set forth above, the Court grants plaintiffs' motion for conditional certification of a nationwide FLSA collective action, pursuant to 29 U.S.C.§ 216(b), and for court-authorized notice.  In the attached appendix, the Court has revised the precise language of the forms, since plaintiffs' proposed Notices suffer from certain errors and omissions.

**SO ORDERED.**

**Dated:** Brooklyn, New York
**May 13, 2019**

/s/ *Roanne L. Mann*
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[17] The parties had agreed to toll the statute from October 28, 2018 to January 14, 2019.  Thus, the Court must deduct the overlapping days between the agreed-upon tolling and equitable tolling while the instant motion was pending.