UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

ASHLEIGH MASON, DAN MORSE, RYAN
CARROLL, OSAGIE EHIGIE, and TRAVIS
STREETER,

                            Plaintiffs,

                             v.

LUMBER LIQUIDATORS, INC.,

                            Defendant.

**MEMORANDUM & ORDER**
17-CV-4780 (MKB) (RLM)

----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Ashleigh Mason, Dan Morse, Ryan Carroll, and Osagie Ehigie commenced the above-captioned action on August 15, 2017 on behalf of themselves and others similarly situated, (Compl., Docket Entry No. 1), and, together with Plaintiff Travis Streeter, filed an Amended Complaint on December 4, 2017, (Am. Compl., Docket Entry No. 16). Plaintiffs allege that Defendant owes them unpaid overtime wages and seek relief pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York Labor Law § 190 *et seq.* ("NYLL"). (*Id.* ¶ 1.) On May 13, 2019, Chief Magistrate Judge Roanne L. Mann granted Plaintiffs' motion for (1) court-supervised notice to putative collective action members pursuant to 29 U.S.C. § 216(b) and (2) disclosure of identifying information of potential collective action members (the "May 2019 Decision"). (May 2019 Decision, Docket Entry No. 70.) On June 5, 2019, Judge Mann denied Defendant's request for a stay of the deadline to distribute the form notice to putative collective action members, or, in the alternative, two weeks to produce data regarding the potential collective action members (the "June 2019 Decision"). (June 2019 Decision, Docket Entry No. 84.)

Currently before the Court are Defendant's appeal of (1) the May 2019 Decision, and (2) the June 2019 Decision. (Def. Appeal of the May 2019 Decision ("Def. Appeal"), Docket Entry No. 91; Def. Appeal of the June 2019 Decision, Docket Entry No. 89.) For the reasons set forth below, the Court affirms the May 2019 Decision and dismisses Defendant's appeal of the June 2019 Decision as moot.

## I. Background

On November 2, 2018, Plaintiffs moved for court-supervised notice to two groups of putative collective action members nationwide: (1) all Store Managers ("SMs") who worked for Defendant as a SM in a store that generated less than $5,000,000 in annual revenue, on average, over the course of the notice period, and (2) all Store Managers in Training ("SMITs") who were classified as exempt from overtime. (Pls. Mot. to Certify FLSA Collective Action ("Pls. Mot."), Docket Entry No. 41; Mem. in Supp. of Pls. Mot. ("Pls. Mem."), Docket Entry No. 41-1.) Plaintiffs also moved for disclosure of identifying information of potential collective action members. (Pls. Mem. 27–28.)

Plaintiffs argued that the purported SM and SMIT classes perform the same duties and functions including engaging in routine customer service, selling merchandise to customers, making cold calls to prospective customers, cleaning stores and warehouses, operating the register, unpacking boxes and unloading freight, changing prices of merchandise, and moving and organizing merchandise. (*Id.* at 10–11.) In addition, Plaintiffs alleged that Defendant's policies and procedures are the same for all SMs and SMITs, respectively, (*id.* at 13), and that the compensation method is the same for all SMs and SMITs, respectively, (*id.* at 14).

In opposing Plaintiffs' motion, Defendant argued that (1) the court did not have personal jurisdiction over SMs and SMITs outside of New York; (2) Plaintiffs had not demonstrated the

2

existence of "a single uniform unlawful policy or practice;" and (3) the purported collective action would be "unmanageable." (Def. Mem. in Opp'n to Pls. Mot. ("Def. Mem.") 1–2, Docket Entry No. 57.)

Judge Mann granted Plaintiffs' motion for court-supervised notice to putative collective action members, authorizing notice to (1) SMs who worked in one of Defendant's stores that generated less than $5,000,000 in annual revenue on average during the notice period and (2) SMITs nationwide who, during the notice period, were classified as exempt from overtime. (May 2019 Decision 1–2.) Judge Mann found that the affidavits submitted by Plaintiffs and the opt-in Plaintiffs consistently stated that SMs were not paid overtime for hours worked in excess of forty hours per week, and that SMs spent a majority of their time performing associate-level tasks, such as moving products, working the cash register, and cleaning the store. (*Id.* at 4–6.) In addition, Judge Mann found that Defendant uniformly classified SMITs as exempt from overtime requirements until 2018, when it reclassified SMITs as non-exempt and began paying them overtime for hours worked in excess of forty hours per week. (*Id.* at 7.) Judge Mann also found that SMITs were subject to one common job description with the same duties as hourly associate employees who were paid overtime and had no management duties. (*Id.* at 7–8.)

In reaching her decision, Judge Mann rejected Defendant's arguments raised in its opposition. First, Judge Mann found that Defendant waived personal jurisdiction because it did not raise the defense in its answer or amended answers, and did not file a motion to dismiss asserting the defense, despite having participated in pretrial proceedings for more than a year. (*Id.* at 11.) However, Judge Mann found that even if Defendant had properly raised its personal jurisdiction defense, it would not warrant denial of Plaintiffs' motion. (*Id.*) Judge Mann explained that in *Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773 (2017),

3

the Supreme Court held in a mass-tort action brought in California state court that state courts lack personal jurisdiction over claims brought by out-of-state plaintiffs against an out-of-state defendant, but the Supreme Court left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." (*Id.* at 12 (quoting *Bristol-Myers*, 137 S. Ct. at 1783–84).) Recognizing a split among district courts as to whether the *Bristol-Myers* rationale applies to federal nationwide class actions, Judge Mann found "more persuasive the reasoning of those courts that have declined to apply the . . . reasoning in *Bristol-Myers* to FLSA collective actions," as "the collective action allegations here arise under a federal statute intended to address wage-and-hour practices nationwide." (*Id.* at 14.) Accordingly, even if Defendant had not forfeited its personal jurisdiction defense, Judge Mann concluded that it would not warrant denial of Plaintiffs' motion. (*Id.* at 14–15.)

Second, Judge Mann found that Plaintiffs have satisfied the requisite "modest factual showing" that there are other "similarly situated" employees who were misclassified by Defendant as exempt from the FLSA's overtime requirements. (*Id.* at 20.) In support, Judge Mann explained that all SMs nationwide are subject to a common job description, and that the job description indicates that SMs are required to perform some non-exempt manual labor, work fifty or more hours per week, and "fill store staffing gaps due to associate absences." (*Id.* at 21–22.) In addition, Judge Mann noted that Plaintiffs' evidence consisted of not only their own experiences and those of the opt-in Plaintiffs, but also conversations with other employees who worked at Defendant's stores across the United States. (*Id.* at 22.) Based on this evidence, Judge Mann concluded that, *inter alia*, Defendant implemented a nationwide practice of thinly staffing its stores so that SMs would routinely perform non-managerial tasks. (*Id.* at 24.) Judge Mann also noted that Plaintiffs sought to include in the collective only those SMs who worked at

4

Defendant's stores with less than $5,000,000 in annual revenue, on average, during the notice period.[1] (*Id.* at 25.)

Third, Judge Mann rejected Defendant's argument that this case is inappropriate for conditional certification because "the question of whether an exemption applies . . . is an individualized inquiry." (*Id.* at 26.) Although the determination of whether an employee's primary duty is the performance of exempt tasks involves a fact-specific inquiry, Judge Mann explained that courts often find that the potential need for individualized inquiries does not preclude conditional certification at the first stage of the judicial inquiry. (*Id.*)

Accordingly, Judge Mann directed Defendant to produce to Plaintiffs a list of the names, addresses, telephone numbers, email addresses, work locations, and dates of employment for all potential collective action members during the relevant time period. (*Id.* at 35.) In addition, Judge Mann granted Plaintiffs' request to toll the statute of limitations for potential opt-in Plaintiffs from the date that Plaintiffs' motion was filed to the date of the May 2019 Decision. (*Id.* at 39–41.)

## II. Discussion

### a. Standard of review

Under the Federal Magistrates Act, 28 U.S.C. § 636, and Rule 72 of the Federal Rules of Civil Procedure, a magistrate judge is authorized "to make findings as to non-dispositive pretrial matters . . . which may not be disturbed by a district judge absent a determination that such

---

[1] Plaintiffs exclude from the collective SMs who worked at Defendant's stores with an annual gross revenue in excess of $5,000,000 because those stores "typically have many more employees, for which the same concerns identified by Plaintiffs and the opt-ins are less likely to be as extreme." (Pls. Mem. 23 n.25.) In addition, Plaintiffs explain that they "do not have individuals that worked at [Defendant's] largest stores" and that "a $5,000,000 threshold . . . is important because a one-off increase that approaches or slightly eclipses the $5,000,000 annual revenue will not immediately result in increased labor being allocated to the store." (*Id.*)

5

findings were clearly erroneous or contrary to law." *Saint-Jean v. Emigrant Mortg. Co.*, No. 11-CV-2122, 2015 WL 3797198, at *1 (E.D.N.Y. June 18, 2015); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010) ("[T]he district judge in the case must consider timely objections and modify or set aside any part of the magistrate judge's order that is clearly erroneous or is contrary to law." (alterations omitted) (quoting Fed. R. Civ. P. 72(a))); *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) (same). An order is clearly erroneous if, based on all the evidence, a reviewing court "is left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro-Gonzalez*, 739 F. App'x 688, 690 (2d Cir. 2018) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)); *see also Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15-CV-8459, 2017 WL 3142072, at *1 (S.D.N.Y. July 24, 2017). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Lifeguard Licensing Corp.*, 2017 WL 3142072, at *1 (citation and internal quotation marks omitted).

A motion for conditional certification of a class under the FLSA is a non-dispositive pretrial matter. *See Spack v. Trans World Entern. Corp.*, No. 17-CV-1335, 2019 WL 192344, at *1 n.1 (N.D.N.Y. Jan. 15, 2019) ("[A] magistrate judge has jurisdiction over a motion seeking conditional class certification because it is only a preliminary determination and is not dispositive." (alteration, citation, and internal quotation marks omitted)); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383–84 (E.D.N.Y. 2010) (collecting cases) (explaining that the magistrate judge's "decision granting conditional certification . . . for purposes of notice and discovery . . . concern[ed] a non-dispositive pretrial matter").

> b. **The May 2019 Decision is not clearly erroneous nor contrary to law, and Defendant's appeal of the June 2019 Decision is therefore moot**

"A collective action under the FLSA is different from the typical class action under the Federal Rules of Civil Procedure, the strict requirements of which — numerosity, commonality, typicality, and adequate representation — do not apply to a collective action." *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014); *see also Warman v. Am. Nat. Standards Inst.*, 193 F. Supp. 3d 318, 322 (S.D.N.Y. 2016) ("[T]here need not be a showing of numerosity, commonality, typicality, or adequacy of representation." (citation omitted)). The FLSA does not require certification, however, certification is "a recognized case management tool for district courts to employ in appropriate cases to facilitate the sending of notice to potential class members." *Heitzenrater v. Officemax, Inc.*, No. 12-CV-900S, 2014 WL 448502, at *1 (W.D.N.Y. Feb. 4, 2014) (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010)).

When determining whether a matter should proceed as a collective action under the FLSA, courts employ a two-step process. *Myers*, 624 F.3d at 554–55 ("In determining whether to exercise this discretion in an 'appropriate case[],' the district courts of this Circuit appear to have coalesced around a two-step method, a method which, while . . . not required by the terms of FLSA or the Supreme Court's cases, we think is sensible." (alteration in original) (footnote omitted)); *see also Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 65 (E.D.N.Y. 2016) ("Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective action." (collecting cases)). First, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. At this stage, the plaintiffs are required to make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the

7

law.'" *Id*. (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "The modest factual showing cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Id.* (citations and internal quotation marks omitted). If the plaintiffs can satisfy this "minimal burden . . . the court certifies the class and provides for notice to be sent to the potential class members who are then given the chance to opt in to the action." *Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, No. 13-CV-60, 2013 WL 5132023, at *4 (E.D.N.Y. Sept. 12, 2013); *see also Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 199 (E.D.N.Y. 2015) ("Once additional plaintiffs have opted in and a fuller record has been developed, the court may proceed to the second step . . . ."). At the second stage, after the completion of discovery, the court will review the record to "determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs may be dismissed without prejudice." *Myers*, 624 F.3d at 555.

Because of the nature of the two-step process, a court will not consider a defendant's objection that individual defenses exist against certain potential class members as a basis to deny certification at the first step. *See Cruz v. Lyn–Rog Inc.*, 754 F. Supp. 2d 521, 525–26 (E.D.N.Y. 2010) ("[I]t is well settled that the existence of certain individual claims or defenses does not preclude the conditional certification of an FLSA collective action." (quoting *Sexton v. Franklin First Financial, Ltd.*, No. 08-CV-04950, 2009 WL 1706535, at *8–9 (E.D.N.Y. June 16, 2009))); *see also Bijoux v. Amerigroup N.Y., LLC*, No. 14-CV-3891, 2015 WL 4505835, at *13 (E.D.N.Y. July 23, 2015) ("[T]he presence of individual defenses does not undermine the court's

8

determination that conditional certification is warranted here."), *report and recommendation adopted*, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015). Rather, the purpose of the first step of conditional certification is to provide notice to potential plaintiffs, and it is not until the second step, sometimes referred to as the "decertification stage," that a court will scrutinize membership in the class. *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 638–39 (S.D.N.Y. 2013) ("In determining whether to decertify, courts look to the following factors: '(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against [collective action treatment].'" (alteration in original) (citations omitted)); *Searson v. Concord Mortg. Corp.*, No. 07-CV-3909, 2009 WL 3063316, at *6 (E.D.N.Y. Sept. 24, 2009) ("When conducting an initial determination for class certification, the court does not look to [the plaintiff's] individual defenses because that inquiry is properly addressed in the second stage of certification, after discovery.") (adopting report and recommendation).

### i. The May 2019 Decision is not clearly erroneous nor contrary to law

Defendant argues that the May 2019 Decision is clearly erroneous and contrary to law because it (1) "infers from a handful of declarations" that Defendant had a *de facto* illegal policy to require non-exempt work from exempt SMs and SMITs, (2) contravened the Supreme Court's holding in *Encino Motors, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018), by finding that the FLSA's exemptions are to be "narrowly construed," (3) incorrectly found that Defendant had waived personal jurisdiction, and (4) erred in tolling the statute of limitations. (Def. Appeal 3–12.)

Plaintiffs argue that (1) they submitted eighteen declarations from Plaintiffs and opt-in

9

Plaintiffs who collectively worked at thirty-five of Defendant's stores across thirteen states, (Pls. Opp'n to Def. Appeal ("Pls. Opp'n") 2, Docket Entry No. 110), and that Defendant does not cite to any case law precluding certification based on a *de facto* illegal policy, (*id.* at 7), (2) Judge Mann's reference to the "narrowly construed" standard had "no impact on [her] decision," (*id.* at 11), (3) Judge Mann did not err in finding that Defendant waived any objection to personal jurisdiction, (*id.* at 12–13), and (4) Judge Mann's decision to toll the statute of limitations was a proper exercise of discretion supported by precedent, (*id.* at 13–15).

### 1. Judge Mann did not err in finding that Plaintiffs are similarly situated

Contrary to Defendant's assertion, Judge Mann did not merely rely on a "handful of declarations" that "pertain only to Plaintiffs" in concluding that Plaintiffs and putative members of the collective are similarly situated. (Defs. Appeal 5–6.) Instead, Judge Mann explained that Defendant has one common job description for SMs nationwide, and that, upon hiring, SMs are required to attend a training course with "specific guidelines that SMs are required to follow." (May 2019 Decision 4.) Judge Mann also relied on the consistent declarations submitted by each Plaintiff and thirteen opt-in Plaintiffs who have collectively worked at thirty-seven of Defendant's stores across thirteen states. (*Id.*) These declarations not only recounted the experiences of the Plaintiffs and the opt-in Plaintiffs, but were also based on conversations between the declarants and SMs at stores across the country. (*Id.* at 5–6.) As to SMITs, Judge Mann relied on the fact that SMITs were subject to one common job description nationwide and that Defendant uniformly classified them as exempt from overtime requirements until 2018 when it reclassified them and began paying them overtime for hours worked in excess of forty hours per week. (*Id.* at 7.) Based on this evidence, Judge Mann properly concluded that potential opt-in Plaintiffs would be "similarly situated" to Plaintiffs "with respect to whether a FLSA violation

10

has occurred." *Myers*, 624 F.3d at 555.

In support of its argument that Judge Mann erred in her decision, Defendant relies on *Jenkins v. TJX Cos. Inc.*, 853 F. Supp. 2d 317 (E.D.N.Y. 2012), and *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469 (S.D.N.Y. 2010), where the courts denied certification, but neither case provides support for Defendant's arguments. In *Jenkins*, the district court denied the plaintiff's motion for certification because (1) the plaintiff did "not allege that [the defendant's] official, formal policy mandates non-exempt job duties," and instead "allege[d] that, in practice, he primarily performed non-exempt duties," and (2) the plaintiff's "sole submission in support of the existence of a common de-facto policy . . . [was the plaintiff's] own deposition testimony, discussing his own personal experience." *Jenkins*, 853 F. Supp. 2d at 321–22. Similarly, in *Guillen*, the district court denied the plaintiff's motion for certification because the plaintiff did "not challeng[e] the content of [the defendant's] formal written policies" and submitted affidavits from employees in the New York City metropolitan area only, but sought certification as to all of defendant's 820 stores nationwide. *Guillen*, 750 F. Supp. 2d at 477. Unlike in *Jenkins* and *Guillen*, "the substance of the SM job description [in this case] supports [P]laintiffs' allegations." (May 2019 Decision 21.) Specifically, the SM job description indicates that SMs are frequently required to lift up to twenty pounds and occasionally required to lift up to eighty pounds, routinely work fifty or more hours per week, and are required to fill staffing gaps due to associate absences. (*Id.* at 21–22); *cf. Guillen*, 750 F. Supp. 2d at 476 ("Guillen is not challenging the content of [the defendant's] formal written policies."). In addition, as Judge Mann noted, unlike in *Jenkins* and *Guillen*, Plaintiffs rely on eighteen declarations from Plaintiffs and opt-in Plaintiffs who collectively worked at thirty-five of Defendant's stores across thirteen states, which are based on, *inter alia*, their conversations with other employees, and do

11

not seek to include in the collective employees who worked at Defendant's stores with more than $5,000,000 in annual revenue, on average, during the notice period. (May 2019 Decision 4, 21–22, 25); *cf. Jenkins*, 853 F. Supp. 2d at 321 (noting that plaintiff's "sole submission" in support of the existence of a *de facto* policy was his own deposition testimony discussing his own personal experience, and that he "provide[d] no other affidavits, depositions, or even hearsay evidence that he was actually aware of other [employees] who also primarily performed non-exempt duties"); *Guillen*, 750 F. Supp. 2d at 477 (explaining that the evidence that plaintiffs were similarly situated was "extremely thin" because it "consist[ed] of affidavits from five [employees] . . . at nine of the 820 [of defendant's] stores nationwide . . . exclusively in the New York City metropolitan area"). Accordingly, Defendant's reliance on *Jenkins* and *Guillen* is misplaced. Judge Mann did not err in concluding that Plaintiffs are similarly situated to the employees that they seek to include in the collective action.

> **2.    The May 2019 Decision is not erroneous because Judge Mann's statement that the FLSA exemptions are to be "narrowly construed" had no effect on the May 2019 Decision**

Defendant argues that Judge Mann erred in stating that the FLSA's exemptions must be "narrowly construed" because the Supreme Court "explicitly rejected th[at] notion" in *Encino Motocars*, 138 S. Ct. at 1142. (Def. Appeal 8–9.)

Plaintiffs argue that "Defendant highlights a single sentence" in the May 2019 Decision that was made "in passing," and "not utilized for purposes of rendering the [May 2019 Decision]." (Pls. Opp'n 11–12.)

While Defendant is correct that the Supreme Court recently concluded that "there is no reason to give [the FLSA exemptions] anything other than a fair (rather than a narrow) interpretation," *Encino Motocars*, 138 S. Ct. at 1142 (citation and internal quotation marks

12

omitted), this pronouncement does not render the May 2019 Decision erroneous. Judge Mann correctly explained that "plaintiffs seeking conditional certification in a FLSA exemption case must make some showing that there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, and who are classified as exempt pursuant to a common policy or scheme," (May 2019 Decision 19 (alterations and internal quotation marks omitted) (quoting *Myers*, 624 F.3d at 555)), and she correctly applied this standard. The May 2019 Decision does not construe the FLSA exemptions narrowly and a "fair interpretation" of the FLSA exemptions, *Encino Motocars*, 138 S. Ct. at 1142, produces the same conclusion as that reached by Judge Mann — Plaintiffs have demonstrated that there are other similarly situated employees who were misclassified by Defendant as exempt from the FLSA's overtime requirements. Accordingly, *Encino Motocars* does not render the May 2019 Decision clearly erroneous or contrary to law.

### 3. Judge Mann did not err in finding that Defendant waived its personal jurisdiction defense, and that even if it had not, the defense would not warrant denial of Plaintiffs' motion

Defendant argues that Judge Mann's conclusion that Defendant waived its personal jurisdiction defense is clearly erroneous and contrary to law because the defense "is only now manifest due to the [May 2019] Decision." (Def. Mem. 9–12.)

Plaintiffs argue that Judge Mann properly concluded that Defendant waived any objection to personal jurisdiction and that, even if she had erred in doing so, she held that *Bristol-Meyers*, 137 S. Ct. at 1773, would not bar the court from exercising personal jurisdiction over out of state plaintiffs, and Defendant does not challenge that decision. (Pls. Opp'n 12–13.)

"A defendant may . . . forfeit its objections to personal jurisdiction by failing to raise them timely in the answer or in an initial motion." *Brown v. Lockheed Martin Corp.*, 814 F.3d

13

619, 625 (2d Cir. 2016) (citing Fed. R. Civ. Pro 12(h)(1)); *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011) ("It is well established that a party forfeits its defense of lack of personal jurisdiction by failing timely to raise the defense in its initial responsive pleading."). "To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Penmex–Exploracion Y Produccion*, 832 F.3d 92, 102 (2d Cir. 2016) (citation omitted); *see also Roberts v. Bennaceur*, 658 F. App'x 611, 616 (2d Cir. 2016) ("[A] party may forfeit a right or defense by actively litigating other issues.").

In *Bristol-Myers*, the Supreme Court held that a California state court did not have personal jurisdiction over claims brought by non-California residents. 137 S. Ct. at 1782. However, the Supreme Court noted that the decision concerned "the due process limits on the exercise of specific jurisdiction by a State," and left open "the question of whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784–85. As Judge Mann noted, district courts are split on whether *Bristol-Myers* applies to federal nationwide class actions. *See Bank v. CreditGuard of Am.*, 18-CV-1311, 2019 WL 1316966, at *12 (E.D.N.Y. Mar. 22, 2019) ("[T]he applicability of *Bristol-Meyers* [sic] to federal courts is uncertain at best."); *compare Gazzillo v. Ply Gem Indus., Inc.*, No. 17-CV-1077, 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018) (applying *Bristol-Myers* and dismissing nonresident plaintiffs' claims for lack of specific personal jurisdiction) *with Molock v. Wholefoods Mkt., Inc.*, 297 F. Supp. 3d 114, 126–27 (D.D.C. 2018) (concluding that *Bristol-Myers* did not preclude personal jurisdiction over claims brought by out-of-state putative class

14

members).

Judge Mann's conclusion that Defendant waived its personal jurisdiction defense, and that even if it had not, the defense would not warrant denial of Plaintiffs' motion, is not clearly erroneous or contrary to law. In *Bristol-Myers*, the Supreme Court explicitly noted that the case did not address "whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." 137 S. Ct. at 1783–84. In her dissent, Justice Sotomayor noted that the Supreme Court did "not confront the question whether its opinion . . . would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id.* at 1789 n.4. In addition, as Judge Mann recognized, "[u]nlike the mass-tort state law claims at issue in *Bristol-Myers*, the collective action allegations here arise under a federal statute intended to address wage-and-hour practices nationwide." (May 2019 Decision 14.) Accordingly, the Court finds that Judge Mann's conclusion that Defendant waived its personal jurisdiction defense, and that even if it had not, the defense would not warrant denial of Plaintiffs' motion, is not clearly erroneous or contrary to law.[2]

### 4. Judge Mann did not err in tolling the statute of limitations

Defendant argues that Judge Mann erred in "facilitating a notice period based on the date of the filing of [Plaintiffs'] motion for conditional certification," thus tolling the statute of limitations during the pendency of Plaintiffs' motion. (Def. Mem. 12.) Defendant argues that this decision is contrary to "long-standing precedent," which instructs that the statute of

---

[2] Because the Court concludes that Judge Mann did not err in holding that even if Defendant did not waive its personal jurisdiction defense, the Court has personal jurisdiction over Plaintiffs, the Court declines to decide whether Defendant properly raised the defense of personal jurisdiction.

15

limitations runs from the date that the motion for conditional certification is granted, *not* from the date it is filed. (*Id.*)

Plaintiffs argue that Judge Mann properly exercised her discretion in tolling the statute of limitations, and that Defendant fails to raise any controlling law in support of its argument that Judge Mann's decision is "contrary to law." (Pls. Opp'n 14.)

The statute of limitations for the FLSA is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a); *see also Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 70 (2d Cir. 2014); *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011). However, "courts have discretion to equitably toll the limitations period in appropriate cases to avoid inequitable circumstances," *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (citation and internal quotation marks omitted), and "the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine," *id.* (quoting *Yahraes v. Restaurant Assocs. Events Corp.*, No. 10-CV-935, 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011)); *see also Agonath v. Interstate Home Loans Ctr., Inc.*, No. 17-CV-5267, 2019 WL 1060627, at *4 (E.D.N.Y. Mar. 6, 2019) ("[E]quitable tolling is appropriate . . . during the period in which the motion for conditional certification is pending."); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (applying equitable tolling as of the date of the filing of a conditional certification motion that took seven months to decide).

Judge Mann did not err in tolling the statute of limitations during the pendency of Plaintiffs' motion and thus in "key[ing]" the notice period to the date of the filing of Plaintiffs'

16

motion. In rendering her decision to toll the statute of limitations, Judge Mann properly considered (1) that it would be inequitable to charge the potential opt-in Plaintiffs with the time during which Plaintiffs' motion was pending before the court, (2) the parties' agreement to toll the statute of limitations for 582 days for the SMs and 418 days for the SMITs, and (3) the fact that Defendant did not address the relevant notice period in its opposition papers. (May 2019 Decision 40); *see also Hintergerger v. Catholic Health Sys.*, No. 08-CV-380, 2009 WL 3464134, at *14 (W.D.N.Y. Oct. 21, 2009) (explaining that some "[c]ases in which tolling was granted have involved . . . a court-imposed stay pending the [c]ourt's resolution of a dispositive motion [or] a stipulation among the parties to toll the statute); *Iriarte v. Café 71, Inc.*, No. 15-CV-3217, 2015 WL 8900875, at *7 (S.D.N.Y. 2015) (tolling the statute of limitations as of the date of the filing of the plaintiff's motion for conditional certification); *Jackson*, 298 F.R.D. at 170–71 (same).

### ii. Defendant's appeal of the June 2019 Decision is moot

Defendant appeals the June 2019 decision denying its motion to stay the deadline to distribute court-authorized notice to the putative collective action members or, in the alternative, two weeks to produce data regarding the potential collective action members to whom the notice must be sent. (Def. Appeal of the June 2019 Decision; June 2019 Decision.) Defendant argues that Judge Mann should have granted its motion for a stay pending this Court's resolution of its Appeal of the May 2019 Decision. (Def. Appeal of the June 2019 Decision.) Because the Court denies Defendant's Appeal of the May 2019 Decision, the Court dismisses Defendant's appeal of the June 2019 Decision as moot.

### III. Conclusion

For the foregoing reasons, the Court affirms the May 2019 Decision. As indicated in the May 2019 Order, Defendant is directed to produce a list of the names, addresses, telephone numbers, email addresses, work locations, and dates of employment for all potential collective action members during the relevant time period. In addition, the Court dismisses Defendant's appeal of the June 2019 Decision as moot.

Dated: August 19, 2019
      Brooklyn, New York

                                  SO ORDERED:

                                  _____s/ MKB_____
                                  MARGO K. BRODIE
                                  United States District Judge