

**Justin R. Marino**, Principal   d: (212) 939 – 7228   f: (212) 531-6129
a: 75 Maiden Lane, Suite 402, New York, NY 10038   e: jmarino@stevensonmarino.com

December 27, 2019

**VIA ECF**

Honorable Roanne L. Mann
Chief United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   *Mason et al. v. Lumber Liquidators*
             17-cv-04780 (MKB) (RLM)

Dear Chief Magistrate Judge Mann:

      This office represents Plaintiffs in the above-referenced action. We write in response to the Court's December 21, 2019 Order, requiring each party to file a letter addressing the disputed portions of their December 20, 2019 submission regarding the proposed scope of collective discovery. For ease of reference, we are attaching a redline of the proposed collective discovery (showing the Plaintiff's preferred changes in redline), together with letters A-K next to each redline, so the Court can easily ascertain which revisions Plaintiffs' points below refer to. Accordingly, Plaintiffs' position with respect to each redline is as follows:

    A. Plaintiffs seek baseline information regarding NY Store Managers during the statutory period (i.e., June 11, 2011 through the present), to prepare for an impending Rule 23 motion. This information is sought only for the opt-in Plaintiffs that worked in New York, which consists of just over a dozen individuals. Plaintiffs have limited the information sought, as opposed to seeking information for every putative class member that worked in NY, to address Defendant's proportionality objection.

    B. It appears Defendant insists upon the words "[t]o the extent that they exist," which prefaces the category of documents Defendant will agree to produce. This difference seems to be one without a distinction, as Defendant cannot produce documents that do not exist. Thus, the inclusion or deletion of this phrase is immaterial to Plaintiffs.

    C. Plaintiffs request the personnel file of the opt-ins that have joined the litigation. The personnel file will contain, among other things, the New York Labor Law § 195 Notice and Acknowledgment of Pay form (for NY opt-ins), as well as other relevant information (such as the arbitration

  agreement, if any – which Defendant has expressed its desire to compel in the near future). Having the personnel file will also provide further information as to the claims and defenses in this matter, is proportional to the needs of the case, and is not overly burdensome for Defendant to produce.

D. In footnote 2, the parties disagree as to what a representative sample should be for Customer Experience and Relationship Tool ("CERT") documents and Post Good Issues ("PGI") documents. Defendant's policy is to have Store Managers ("SMs") complete CERT documents – which is a literal summary of the SMs interaction with a customer from the time they enter the store to when they leave. The CERT document requires a full description of the flooring project, customer's timeline for completion, specific floor product they are interested in, the amount of square feet, the type of subfloor, interest in financing and installation needs, as well as the customer's information. This information is then utilized by the SM to subsequently contact the customer in an effort to finalize the sale. Similarly, the PGI documents are utilized when merchandise is given to the customer. This document will show the customer, the quantity of merchandise sold, and will be signed off by the individual who loads the merchandise for the customer – which is most frequently the SM.

  The foregoing information is highly relevant, as it literally documents the SM's involvement in non-exempt functions (i.e., sales and loading merchandise). Because these documents are maintained at the local store level (and may be completed differently by each SM), Plaintiffs request 100 documents completed by the SM or SMIT or all relevant documents completed by the SM or SMIT within a 6 month period (if it is less than 100 documents). These documents will show the SM's and SMIT's engagement in non-exempt functions.

E. Plaintiffs' inclusion to footnote 3 seeks to ensure that a representative sample is obtained from the 15% of opt-ins that are selected by the parties. The representative sample should comprise of opt-ins that worked both at (1) stores with varying revenue, but also – critically, (2) stores within each region throughout the country. At present, Defendants and Plaintiffs are planning to identify 7.5% of opt-ins each. There is a likelihood that some individuals may overlap or the preliminary selection could exclude certain regions. Because Defendants argued in their opposition to conditional certification that Store Manager's duties vary depending on their Regional Manager's management style, it is imperative to have a representative sample across varying Regions to address Defendant's defense. *See Defendant's Memorandum in Opposition to Conditional Certification*, p. 12-13 (filed Nov. 30, 2018, Dkt. 57) ("[A]n RM's involvement and the

    extent to which s/he takes on duties that are meant for the SM, can take an [sic] SM from exempt to non-exempt under the executive exemption).

F. For the Opt-In Plaintiffs Defendant seeks to depose, Plaintiffs seek the entire SM email box or, if it is a SMIT, the stores' general email account. This is requested so that our office can properly review, analyze and prepare client's for their depositions.

G. In an interest in efficiency, Plaintiffs agreed to limit the length of the depositions of certain individuals to four hours – provided the deponents are not attempting to obstruct the deposition or unduly delay it. Defendant's suggestion is to allow a longer deposition only after seeking the Court's intervention. This may not be feasible given the Court's calendar, which may mean any decision could occur after the initial deposition has concluded. Because many of these depositions will be taken around the country, having to reschedule a deposition would be inefficient. It is for these reasons, Plaintiffs propose the revisions in paragraph IV (a).

    Further, in paragraph IV(a), Plaintiffs request the email account for each RM that will be deposed so that we can properly prepare for the deposition by seeing the actual interactions each RM has with the SM and SMITs. This is highly relevant and required in order to obtain a meaningful deposition – even more so since Defendant claims in the Opposition to Conditional Certification that the management style of each RM varies.

H. Plaintiffs understand from Defendant's counsel that there are four low-level HR personnel. If this is a true statement, then Defendant should not take issue with replacing "Up to 4" with "All of the" lower-level HR representatives. Obtaining information from the lower-level HR individuals is relevant because SMs complain directly to HR and the Regional Managers. Getting the entire universe of the lower-level HR individuals (which is believed to only be 4 individuals) will further help show unity in practices across the country.

I. Plaintiffs' revisions to paragraph IV(c) attempt to reasonably narrow the total pool of depositions of the opt-in Plaintiffs. If Defendants need additional Plaintiffs to depose, the parties will work cooperatively to address and resolve that concern. Accordingly, Plaintiffs believe the foregoing revision is appropriate.

J. Paragraph IV(d) was stricken because this order does not restrict any parties' ability from deposing non-employees of the Company. Thus, while Plaintiffs will not oppose Defendant's from deposing former RM Robert Broad and former VP David Dunsmuir (each of whom submitted declarations in support of Plaintiffs' theory of the case), such inclusion is

The Honorable Roanne L. Mann
December 27, 2019
Page 4 of 4

    superfluous. Thus, the inclusion or deletion of this phrase is immaterial to Plaintiffs.

K. Paragraph VI simply seeks to ensure a litigation hold is placed at the store level for all locations where the opt-ins worked. To the extent that has not occurred, there will be significant spoliation issues. If Defendant has complied with their legal obligations, the inclusion of the foregoing language confirming the litigation hold should be a non-issue. Moreover, Plaintiffs requested this language, in part, to ensure that documents requested above (i.e., CERT and PGI documents) could actually exist because Defendants have taken steps to safeguard such information.

We thank Your Honor in advance for your consideration of the foregoing.

            Respectfully submitted,

            **/s/ Justin R. Marino**

            Justin R. Marino

cc:    Defendant's Counsel (via ECF)