UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ASHLEIGH MASON, DAN MORSE, RYAN CARROLL, OSAGIE EHIGIE, and TRAVIS STREETER, on behalf of themselves and all others similarly-situated,

        Plaintiffs,

-against-

LUMBER LIQUIDATORS, INC.,

        Defendant.

Civ. No. 17-cv-04780 (MKB) (RLM)

# REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE CLAIMS OF THE KRAMER PLAINTIFFS THROUGH SEPTEMBER 19, 2019

Christine L. Hogan
Kevin K. Yam
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
212.583.9600

*Attorneys for Defendant*
*Lumber Liquidators, Inc.*

TABLE OF CONTENTS

PAGE

I.   PRELIMINARY STATEMENT ........................................................................................ 1

II.  ARGUMENT .................................................................................................................... 2

    A.   Plaintiffs Do Not (And Cannot) Deny That *Rangel* Is Controlling Authority Which Compels Their Dismissal............................................................ 2

    B.   Impermissible Extrinsic Evidence Should Not Be Allowed Because The Kramer Settlement Agreement Is Clear And Unambiguous................................. 5

    C.   Plaintiffs' Opposition Fails To Address the Public Policy Imperatives Mandating Dismissal, And Does Not Refute Defendant's Argument That Applying New York Law Would Not Render A Different Result ....................... 8

        1.   Public Policy Imperatives Underlying Doctrine of Res Judicata Mandates Dismissal ................................................................................. 8

        2.   Plaintiffs Fail To Refute Defendant's Argument That Applying New York Law Would Not Render A Different Result ............................. 9

III. CONCLUSION................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Boeken v. Phillip Morris USA, Inc.*,
   48 Cal. 4th 788 (2010) ...................................................................................................2

*Brinton v. Bankers Pension Servs., Inc.*,
   76 Cal. App. 4th 550 (1999) ................................................................................. passim

*Brooklyn Savings Bank v. O' Neil*,
   324 U.S. 697 (1945)........................................................................................................4

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199 (2d Cir. 2015)......................................................................................9, 10

*Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*,
   60 Cal. App. 4th 1053 (1998) ........................................................................................8

*D.A. Schulte, Inc. v. Gangi*,
   328 U.S. 108 (1946)........................................................................................................4

*Estes v. Martin*,
   34 Ark. 410 (1879).........................................................................................................4

*Hart v. RCI Hosp. Holdings, Inc.*,
   90 F. Supp. 3d 250 (S.D.N.Y. 2015)..............................................................................6

*JA Apparel Corp. v. Abboud*,
   568 F.3d 390 (2d. Cir. 2009).......................................................................................5, 6

*Matsushita Elec. Ind. Co. v. Epstein*,
   516 U.S. 367 (1996)........................................................................................................9

*Mullen v. Torrance*,
   22 U.S. 537 (1824).........................................................................................................4

*Rangel v. PLS Check Cashers of Cal., Inc.*,
   899 F.3d 1106 (9th Cir. 2018) ............................................................................. passim

*Shine v. Williams-Sonoma, Inc.*,
   23 Cal. App. 5th 1070 (2018) ........................................................................................8

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).............................................................................................8

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

**Cases**

*Wells Fargo Bank, Nat'l Ass'n v. Aareal Capital Corp.*,
   2010 WL 11561181 (C.D. Cal. Nov. 24, 2010) ...........................................................5, 6

**Statutes**

28 U.S.C. §1738 ..............................................................................................................8, 9

Cal. Civil Code § 1639 ....................................................................................................5, 6

Civ. Code § 1856 ................................................................................................................7

**Other Authorities**

Federal Rule of Evidence 408 .........................................................................................6, 7

Defendant Lumber Liquidators, Inc. ("LL" or "Defendant") hereby submits this reply memorandum in support of its motion to dismiss the claims of fifty-five Kramer Opt-In Plaintiffs ("Plaintiffs") through September 19, 2019 in this action.

## I. PRELIMINARY STATEMENT

Plaintiffs' Opposition entirely fails to address *Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106 (9th Cir. 2018), nor does it challenge that *Rangel* is controlling authority and is dispositive in favor of dismissal. Plaintiffs therefore concede these points from the outset.

Plaintiffs' Opposition also impermissibly attempts to inject extrinsic and extraneous documents into the Court's analysis. California (and New York) law are clear, however, that where, as here, the Kramer Settlement Agreement (the "Agreement") is unambiguous, the Court need only look to its four corners to determine the parties' intent.

Finally, for want of substantive argument, Plaintiffs' Opposition chiefly relies upon procedural and factual sleight-of-hand to obfuscate the facts. The Court should not be swayed by Plaintiffs' smoke-and-mirrors ploy disguised as litigation strategy. Indeed, Plaintiffs expend fully half of their Opposition reciting the factual background and procedural postures of this case and the *Kramer* action, but fail to address the public policy imperatives of judicial efficiency, finality, and fundamental fairness dictating dismissal. Nor do Plaintiffs refute Defendant's arguments that even if New York law were to apply, their FLSA claims would still be barred.

Here, the claims of the fifty-five Opt-in Plaintiffs are barred by *res judicata* and *claim preclusion* arising from their voluntary assent to settle all of their claims in the *Kramer* action. The Agreement is clear, unambiguous and binding – both in its choice of governing law (California) and the preclusive effect of its broad release encompassing ***all claims*** that were or could have been brought in the *Kramer* action. Nothing in the statutory language of the Fair Labor Standards Act ("FLSA") or its interpretative case law compels a result other than dismissal. And

nothing in Plaintiffs' Opposition gainsays these points.

Accordingly, the Court should grant Defendant's Motion to Dismiss in its entirety.

## II.     ARGUMENT

### A.     Plaintiffs Do Not (And Cannot) Deny That *Rangel* Is Controlling Authority Which Compels Dismissal

Plaintiffs avoid addressing the import and effect of the *Rangel* decision in their Opposition. It is clear why. *Rangel* controls and conclusively bars Plaintiffs' FLSA claims brought in the present litigation. Instead, Plaintiffs baselessly contend in their Opposition that "*Rangel*, which is not binding on this court … failed to appropriately weigh the substantive and supreme federal law requirement of judicial approval of the release of FLSA claims in applying California's *res judicata* law." (Opp. at 13.) This argument fails.

First, to be clear, *Rangel* is binding on this Court via the governing law provision in the Agreement. (Hogan Decl. ¶ 5, **Ex. A**, § 3.20.) Plaintiffs do not (and cannot) argue that California law does not apply, and therefore, concede this point.

Second, as exhaustively briefed in Defendant's Motion to Dismiss (D. Br. at 7-12), *Rangel* applies California's *res judicata* doctrine and appropriately weighs the requirements of the FLSA – including the requirement of judicial approval. Contrary to Plaintiffs' assertions, the *Rangel* court addressed FLSA requirements in explicitly endorsing "California's primary rights approach to *res judicata*" by recognizing that "***FLSA claims, as federal versions of the state law claims asserted in the [prior state court class action] are typical examples of claims invoking 'the same injury to the same right' litigated in a prior case***." *Rangel*, 899 F.3d at 1111 (quoting *Boeken v. Phillip Morris USA, Inc.*, 48 Cal. 4th 788, 798 (2010)) (emphasis added). *Rangel* is directly on point and weighs heavily in favor of dismissal.

Third, Plaintiffs argue through their brief that "the court in *Kramer* did *not* analyze the

settlement to ensure it was a fair and reasonable resolution of FLSA claims." (Opp. at 12 & n.8, 15) (emphasis in original). Not only did the *Kramer* court, however, analyze practically the same factors as required by the FLSA in its order granting final approval, the decision in *Rangel* also undercuts Plaintiffs' position.

In *Rangel*, in holding that *res judicata* applied to FLSA claims, the court pointed to the underlying California court's preliminary approval, approval of the language in the notice of settlement, fairness hearing, grant of final approval, and language of the judgment itself, which specifically "stated that 'Class Members shall take nothing from Defendants ... except as expressly set forth in the Joint Stipulation of Settlement and Release.'" *Rangel*, 899 F.3d at 1109. Exactly like in *Rangel,* the *Kramer* court certified the class for settlement purposes, granted preliminary approval, approved notice to class members with opt-out instructions, granted preliminary approval on September 19, 2019, and included language in the Final Order that stated: "Plaintiff and all Class Members, except those who excluded themselves from the Settlement, ***shall take nothing from Defendant, except as expressly set forth in the Settlement Agreement***." (Hogan Decl. ¶ 6, **Ex. B**, at 5 (Final Order).)

As a final nail in the coffin, the Final Order in the *Kramer* case also explicitly stated: "Entry of this Final Judgment shall constitute a full and complete bar against the Class as to all Released Claims, and ***shall constitute res judicata and collateral estoppel with respect to the Released Claims***, except to those who properly opted out of the Settlement pursuant to the terms of the Settlement Agreement." (*Id.* at p. 4, ¶ 9) (emphasis added). The *Kramer* court entered judgment on January 17, 2020. (*Id.* ¶ 7, **Ex. C**, Notice of Entry of Judgment.)

Fourth, Plaintiffs attempt to make much of the fact that the term "FLSA" does not "appear in either the MOU or the Settlement Agreement (Opp. at 7), and again repeats that "[t]he Operative

3

*Kramer* Complaint, the Settlement Agreement, and the Memorandum of Understanding do not reference, assert, or otherwise incorporate the Fair Labor Standards Act or federal law in general." (Opp. at 10.) Plaintiffs contend that the Agreement, therefore, could not have released their FLSA claims. However, the *Rangel* court specifically addressed this point and ruled that *res judicata* arising from a settlement agreement in a prior state class action barred subsequently asserted FLSA claims, despite the fact that "[t]he complaint ***did not bring any federal claims and made no mention of the FLSA.***" *Rangel,* 899 F.3d at 1109.

As above, here too, *Rangel* directly undermines Plaintiffs' arguments, and squarely compels dismissal.

In an attempt to split the baby, Plaintiffs argue that – even if they released their FLSA claims for straight damages – liquidated damages should still be available. It is telling, however, that Plaintiffs resort to reliance on cases from the nineteenth century, *Mullen v. Torrance*, 22 U.S. 537 (1824), and *Estes v. Martin*, 34 Ark. 410 (1879), which were handed down 114 years and 59 years ***before*** the FLSA was even enacted in 1938, respectively. The Court should disregard these cases for that reason alone. Plaintiffs' other cited cases, *Brooklyn Savings Bank v. O' Neil*, 324 U.S. 697 (1945), and *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946),[1] fare no better, as they are from more than seven decades ago – only right after the FLSA was enacted. (Opp. at 1, 9, 11, 12-13.) These cases could not have foreseen the 75 years of subsequent case law interpreting the FLSA generally, and its provision of liquidated damages, specifically. The Court need not dig

---

[1] It is notable that in both cases, there were strong dissenting opinions. In *Brooklyn Savings Bank*, the dissent specifically pointed out that "[t]he studious avoidance of any provision making the non-payment of the liquidated damages a public wrong, by the omissions of sanctions which the statute does impose for the failure to pay minimum and overtime wages, ***is the most persuasive kind of evidence that it was the Congressional purpose to leave undisturbed the general policy of the law that a mere private claim for damages may be released at the will of the claimant.*** 324 U.S. at 717 (emphasis added). Similarly, the dissent in *D.A. Schulte, Inc.* also recognized that any prohibition against waiver of liquidated damages under the FLSA must be explicitly spelled out in the statutory language, "should be left to Congress," and not decided piecemeal by the courts. 328 U.S. at 121-22.

4

deep into the archives of case law to find on-point and relevant authority. *Rangel* is that authority.

The Court should therefore find in accordance with *Rangel* – that Plaintiffs effectively released their FLSA claims (including the coexisting remedies of liquidated damages and attorneys' fees and costs) and grant Defendant's motion to dismiss in full.

> **B.  Impermissible Extrinsic Evidence Should Not Be Allowed Because The Kramer Settlement Agreement Is Clear And Unambiguous**

Next, Plaintiffs argue that "the four corners of the *Kramer* Settlement do not support a finding that FLSA claims are released." (Opp. at 9.)  Yet, Plaintiffs resort to introducing a plethora of impermissible extrinsic evidence ***beyond*** the four corners of the Agreement, in their attempt to evade the unambiguous, broad release of claims in Paragraph 2.2 of the Agreement. (Hogan Decl. ¶ 5, **Ex. A**, ¶ 2.2.)  Plaintiffs' improper extrinsic evidence consists of a Memorandum of Understanding, and multiple email communications between counsel in the *Kramer* litigation. (*See* Marino Decl. Exs. 1, 3, and 6.)

Under California law, however, where contract language is unambiguous – as it is here – a court may only look to the four corners of the document (*i.e.*, the contractual language itself) to determine the parties' intent. *See Wells Fargo Bank, Nat'l Ass'n v. Aareal Capital Corp.*, 2010 WL 11561181, at *5 (C.D. Cal. Nov. 24, 2010) (citing *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d. Cir. 2009) ("Ambiguity [in a contract], moreover, 'is determined by looking within the four corners of the document, not to outside sources.'")).  In other words, "where, as here, the contract is in writing, 'the intention … is to be ascertained from the writing alone.'" *Brinton v. Bankers Pension Servs., Inc.*, 76 Cal. App. 4th 550, 559 (1999) (quoting Cal. Civil Code § 1639).

Based on their impermissible extrinsic evidence, Plaintiffs argue that their intent all along

was never to release their FLSA claims.[2]  However, California law is crystal clear that <u>only</u> the four corners of the document itself determine the parties' intent.  *Wells Fargo Bank, Nat'l Ass'n*, 2010 WL 11561181, at *5.  Indeed, this principle is codified at California Civil Code, section 1639, which provides that when a contract is in writing "the intention … is to be ascertained from the writing alone."  CAL. CIV. CODE § 1639.  Likewise, the Second Circuit is in accord in holding that any contractual ambiguity is determined by looking to "the four corners of the document, not to outside sources."  *JA Apparel Corp.*, 568 F.3d at 396.

In *Brinton v. Bankers Pension Servs.*, the California appellate court affirmed the trial court's grant of summary judgment based on *res judicata* arising from a settlement agreement in a previous class action.  Key to the court's analysis was its finding that "the writing alone" determines intention of the parties.  *Brinton,* 76 Cal. App. 4th at 559.  Similarly, in *Wells Fargo Nat'l Ass'n v. Aareal Capital Corp*, a California federal court applying New York law declined "to consider extrinsic evidence of the contract's meaning…. when the language of the contract is unambiguous."  2010 WL 11561181, at *5.  The court there confined its analysis to "the four corners of the document, not to outside sources" and granted summary judgment based on clear and unambiguous contractual language.  *Id.*

Here, there is no ambiguity in the Agreement's language effectuating a broad release of "***all claims*** which were pled in the operative First Amended Complaint . . . ***or which could have been pled based on the facts alleged*** in the operative First Amended Complaint, ***including without***

---

[2] Plaintiffs cite Federal Rule of Evidence 408 ("Rule 408") as authority for allowing them to introduce extrinsic email communications as evidence "that Defendant was aware of Plaintiffs' intent with respect to the Settlement Agreement not releasing the FLSA claims." (Opp. at 7 n.6.)  However, in like circumstances under Rule 408, a court in S.D.N.Y. deemed inadmissible email communications between counsel in furtherance of settlement of a FLSA and NYLL action.  *See Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 285 (S.D.N.Y. 2015).  Regardless, as discussed above, California (and New York) law are clear in holding that the parties' intent in the Agreement is to be determined *only* from examining the "four corners" of the document (*i.e.*, the contractual language) and not from looking "to outside sources."  *Wells Fargo Bank, Nat'l Ass'n*, 2010 WL 11561181, at *5; *JA Apparel Corp.*, 568 F.3d at 396.

*limitations claims for unpaid wages and overtime* . . . ." (Hogan Decl. ¶ 5, **Ex. A**, ¶ 2.2 (emphasis added).) Nothing could be clearer or more unambiguous than the contractual language of the Agreement and its release of claims – "without limitations."

Moreover, the Agreement specifically provided that the signatures of all Class Members are unnecessary for the Agreement to be binding: "The Notice **will advise all Class Members of the binding nature of the release** provided herein and shall have the same force and effect as if the Agreement were executed by each Class Member." (*Id.* at ¶ 3.18 (emphasis added).) Further, the Agreement provided that "[t]he only Class Members who will not be bound by the terms of this Agreement are those who submit a timely and valid Request for Exclusion." (*Id.*)

Finally, the Agreement expressly mandated that the "Settlement Agreement … *constitute[s] the entire agreement* among the parties…." (*Id.* at ¶ 3.16 (emphasis added).) Indeed, the *Brinton* court highlighted specific language in the settlement agreement there, which "contained a clause declaring it to be 'the entire agreement between the parties'" in rejecting any proffer of extrinsic evidence to show the parties' intent. *Brinton*, 76 Cal. App. 4th at 560. *See also* Civ. Code § 1856, subd. (a) ("Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement.")

The Court should adhere to California decisional and statutory authorities and Rule 408, and refuse to entertain Plaintiffs' attempt to create ambiguity where none exists. Therefore, the Court should disregard Plaintiffs' ploy to insert extrinsic evidence of intent where none is needed or permissible under binding precedent. Because the Agreement is clear, unambiguous, and constitutes the entire agreement between the parties, and Plaintiffs voluntarily assented to it when they did not opt-out upon notice of their right as Class Members to do so, they are bound by the

7

Agreement's broad release of all claims, including their FLSA claims. Accordingly, the Court should dismiss the Kramer Plaintiffs' pre-September 19, 2019 claims, in full, based on the doctrine of release.

> C. **Plaintiffs' Opposition Fails To Address the Public Policy Imperatives Mandating Dismissal And Does Not Refute Defendant's Argument That Applying New York Law Would Not Render A Different Result**
>
> 1. **Public Policy Imperatives Underlying Doctrine of *Res Judicata* Mandates Dismissal**

Plaintiffs fail to address the public policy imperatives of judicial efficiency, finality and fundamental fairness dictating that the doctrine of *res judicata* be applied here to serve the interests of both the parties and the judicial system in resolving disputes and bringing about a definitive end to litigation. *See Shine v. Williams-Sonoma, Inc.*, 23 Cal. App. 5th 1070, 1076 (2018) ("The doctrine [of *res judicata*] is based on public policy, recognizing there must be an end to litigation."); *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1065-66 (1998) ("A judgment entered … by consent or stipulation, is as conclusive a … bar as a judgment rendered after trial."). In short, it is against public policy to permit litigants to consume the time of the courts by re-litigating matters already judicially determined, or by asserting claims that were settled in a prior action. *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 106 (2d Cir. 2005) (without the principle of *res judicata* employers would be dissuaded from settling class actions for fear of exposure to "nearly limitless liability from related lawsuits in jurisdictions throughout the country").

Plaintiffs contend only that dismissal would undermine the Court's authority. (Opp. at 16.) However, Plaintiffs argument against dismissal would be an impermissible collateral attack on the *Kramer* court's authority in entering judgment based on the bargained-for terms of the Agreement. Indeed, this Court is duty bound under 28 U.S.C. section 1738 to give full faith and credit to the

8

*Kramer* court's approval of the Settlement Agreement and entry of judgment thereon. *Matsushita Elec. Ind. Co. v. Epstein*, 516 U.S. 367, 373-374 (1996) (citing 28 U.S.C. § 1738) ("Therefore, a judgment entered in a class action, like any other judgment entered in a state court proceeding, is presumptively entitled to full faith and credit under the express terms of the Act.").

### 2. Plaintiffs Fail To Refute Defendant's Argument That Applying New York Law Would Not Render A Different Result

Finally, as anticipated in Defendant's Motion to Dismiss, Plaintiffs urge that under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), New York law should apply, and *res judicata* does not bar their FLSA claims. (Opp. at 12-13.) However, even if New York law applied, the terms of the Agreement and its approval by the *Kramer* court have already met the *Cheeks* factors requiring that "the proposed settlement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Cheeks*, 796 F.3d at 200.

As discussed above and fully articulated in Defendant's moving brief, none of the Second Circuit's concerns in *Cheeks* are at issue here. (D. Br. at 16-17.) The *Kramer* court determined that the settlement in *Kramer* was public, fair, reasonable, and a product of arms-length transaction by parties ably represented by counsel. Moreover, the *Kramer* court's Final Order expressly incorporated the *Cheeks* fairness factors after conducting preliminary and final approval hearings:

> The Court has considered all relevant factors for determining the fairness of the Settlement and has concluded that all such factors weigh in favor of granting Final Approval. In particular, the Court finds that the Settlement was reached following meaningful discovery and investigation conducted by Class Counsel; that the Settlement is the result of serious, informed, adversarial, and arm's-length negotiations between the Parties; ***and that the terms of the Settlement are in all respects fair, adequate, and reasonable***. In so finding, the Court has considered all of the evidence presented, including evidence regarding the strength of the Plaintiffs case; the risk, expense, and complexity of the claims presented; the likely duration of further litigation; the amount offered in Settlement; the extent of investigation and discovery completed; and the experience and views of Class Counsel. Accordingly, the Court hereby

> approves the Settlement as set forth in the Settlement Agreement and ***expressly finds that said Settlement is, in all respects, fair, reasonable, adequate***, and in the best interests of the Class and hereby directs implementation of all remaining terms, conditions and provisions of the Settlement.

(Hogan Decl. ¶ 6, **Ex. B**. at ¶ 5) (emphasis added.)

Thus, even if New York law were to apply, the result would still be that *res judicata* and Plaintiffs' explicit release of ***all claims*** in the Agreement necessarily bars their FLSA claims in the present litigation. Accordingly, Plaintiffs must be dismissed.

### III.  CONCLUSION

For the foregoing reasons and those contained in Defendant's moving brief, Defendant respectfully requests that the Court dismiss the Kramer Plaintiffs' claims through September 19, 2019 from this action with prejudice, and grant Defendant other or further relief as the Court deems appropriate.

Date:  August 13, 2020
       New York, New York

*s/Christine Hogan*
Christine L. Hogan
Kevin K. Yam
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
212.583.9600
clhogan@littler.com
kyam@littler.com

*Attorneys for Defendant Lumber Liquidators, Inc.*