**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**ASHLEIGH MASON, et al.,**

|  |  |
|---|---|
| **Plaintiffs,** | **REPORT AND** |
| | **RECOMMENDATION** |
| -against- | |
| | **17-CV-4780 (MKB)** |
| **LUMBER LIQUIDATORS, INC.,** | |
| **Defendant.** | |

-------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Ashleigh Mason and others ("plaintiffs") bring this collective action against defendant Lumber Liquidators, Inc. ("Lumber Liquidators" or "defendant"), asserting claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law, for unpaid overtime wages owed to store managers and store managers in training who were alleged to have been misclassified as exempt from overtime requirements. Currently pending before this Court, on a referral from the Honorable Margo K. Brodie, is defendant's motion to dismiss the claims of 55 opt-in plaintiffs because of their participation in a California state class-action settlement that released all claims arising from the same facts on which the instant action is based.   See Motion to Dismiss (Aug. 13, 2020), Electronic Case Filing Docket Entry ("DE") #201.   For the reasons set forth below, this Court recommends that defendant's motion to dismiss be granted.

## BACKGROUND

Plaintiffs allege that they worked for defendant as Store Managers ("SM") and Store Managers in Training ("SMIT") and were misclassified as exempt for the purpose of the

overtime wage requirements, and thus were not paid an overtime premium for all hours worked in excess of 40 in a workweek.   See Amended Complaint (Dec. 4, 2017) ¶¶ 1-3, DE #16.   On June 5, 2019, this Court granted plaintiffs' motion for conditional certification of a nationwide collective action.   See Memorandum and Order (June 5, 2019), DE #84.

Meanwhile, on September 9, 2019, in a wage-and-hour class action filed against Lumber Liquidators in the Superior Court of California, i.e., Kramer v. Lumber Liquidators, Inc., Case No. 34-2017-00222434, the plaintiffs therein, who were represented by one of the same law firms (Stevenson Marino LLP) and some of the same attorneys as in this case, settled that action on behalf of a class of California SMs and SMITs.   See Class Action Settlement Agreement ("Kramer Settlement Agreement"), DE #201-3, DE #202-3.[1]   There, the plaintiffs alleged that Lumber Liquidators misclassified them as exempt from overtime compensation, resulting in multiple violations of California state law.   See Class Action Complaint, DE #202-6.   Among the claims brought in the Kramer action were: failure to pay all wages earned on a specific timeframe (Cal. Lab. Code § 204); failure to pay overtime wages (Cal. Lab. Code §§ 510, 1194(a), 1198); failure to provide accurate, itemized wage statements (Cal. Lab. Code § 226(a)); and a claim for penalties under the California Private Attorneys General Act (Cal. Lab. Code § 2699).   Fifty-five of the class members in Kramer, who participated in

---

[1] The Kramer Settlement Agreement covers "all current and/or former Store Managers and Store Managers in Training employed in the state of California by Defendant at any time between November 17, 2013 until the time of preliminary approval of the Settlement by the Court."   Kramer Settlement Agreement ¶ 2.3, DE #201-3.   As the preliminary approval in Kramer occurred on September 19, 2019, defendant's motion to dismiss covers only the claims through September 19, 2019 of the 55 opt-in plaintiffs who participated in the Kramer Settlement.   See Defendant's Memorandum in Support (Aug. 13, 2020) ("Def. Mem.") at 2, 17, DE #201-1.

that settlement, have also filed consent-to-join forms in this action (hereinafter referred to as the "California Opt-In Plaintiffs").   See Declaration of Justin R. Marino (Aug. 13, 2020) ("Marino Decl.") ¶¶ 12, 15, DE #202-1; Def. Mem. at 1 & n.1.

Importantly, the Kramer Settlement Agreement includes a broad release of all claims for unpaid wages and overtime wages, which were pled, or could have been pled, based on the facts alleged in that complaint.   The Agreement provides for the release by class members of:

> All claims which were plead [sic] in the operative First Amended Complaint . . . or which could have been pled based on the facts alleged in the operative First Amended Complaint, including without limitations claims for unpaid wages and overtime, itemized wage statements, meal and rest period wages and premiums, record keeping violations, unpaid business expenses, untimely final paychecks, and unfair competition.

Kramer Settlement Agreement ¶ 2.2.   Further, the Agreement states that "[t]he only Class Members who will not be bound by the terms of this agreement are those who submit a timely and valid Request for Exclusion."   Id. ¶ 3.18.   Finally, the Agreement provides that "the Settlement Agreement . . . constitute[s] the entire agreement among the parties."   Id. ¶ 3.16.

Pursuant to the terms of the Kramer Settlement Agreement, class members were sent notice of the settlement by first class U.S. mail.   See Kramer Settlement Agreement ¶ 3.9.3. Class members were instructed that if they wished to exclude themselves from the settlement, they were required to do so in writing; otherwise they would be bound by the terms of the Settlement Agreement.   See id. ¶ 3.9.6; Notice of Proposed Settlement of Class Action ("Class Notice") § 5, DE #212-7.   In a section titled "What Claims Am I Releasing?," the Class Notice alerted the class members, in bolded and mostly underscored language, that

absent exclusion, they would be **"releasing all claims"** through September 19, 2019 that were

pled, or **"could have been based on the facts alleged in the operative First Amended**

**Complaint, <u>including without limitations claims for unpaid wages and overtime</u>** . . . ."

<u>Id</u>. § 4.   Class members were also notified of their opportunity to object to the terms of the

Settlement Agreement.   <u>See id</u>. § 6; Kramer Settlement Agreement ¶ 3.9.7.

On January 17, 2020, the California Superior Court granted final approval of the class

settlement.   <u>See</u> Final Order and Judgment Granting Plaintiffs' Motion for Final Approval of

Class Action Settlement ("Final Order"), DE #201-4, #202-9.   The court explained that it had

"considered all relevant factors for determining the fairness of the Settlement" and found that it

was "the result of serious, informed, adversarial, and arms'-length negotiations between the

Parties; and the terms of the Settlement are in all respects fair, adequate, and reasonable."

<u>Id.</u> ¶ 5.   On or about April 20, 2020, following final approval of the Settlement, the class

members, including the 55 who opted in to the instant action, received their individual

settlement payments.   <u>See</u> Declaration of Christine L. Hogan (Aug. 13, 2020) ¶ 10, DE #201-

2; <u>see generally</u> Kramer Settlement Agreement ¶ 3.10; Final Order ¶¶ 5, 11.

Following the parties' briefing of the instant motion, this Court directed the parties to

submit "a joint-letter describing whether the <u>Kramer</u> court was advised of the instant FLSA

action, and supply any relevant portions of plaintiffs' motions for preliminary and final

approval of the settlement, and of transcripts of any corresponding hearings."   Scheduling

Order (Nov. 4, 2020) ("11/4/20 Order").   In response, the parties identified two references to

the instant litigation in the submissions to the court in <u>Kramer</u>.[2]   First, in counsel's Memorandum of Understanding (the "MOU"), which preceded execution of the Kramer Settlement Agreement, the parties agreed to limit disclosure of the settlement during a 10-day period, but carved out an exception to permit disclosure to this Court.   <u>See</u> MOU § 29, DE #202-4.   Second, in plaintiffs' counsel's declaration in support of the motion for preliminary approval of the Kramer Settlement, he noted the existence of the instant conditionally certified FLSA litigation and stated that "[t]he FLSA claims at issue in that matter were not litigated in the instant case and are not being released as part of this settlement."   Marino Declaration Submitted in Support of Motion for Preliminary Approval of Settlement ("Marino <u>Kramer</u> Decl.") ¶ 19, DE #212-3.

Defendant argues that the California Opt-In Plaintiffs are precluded from pursuing their pre-9/19/19 FLSA claims here because they released those claims by participating in the class-action settlement in <u>Kramer</u>.   Plaintiffs counter that the scope of the release in the Kramer Settlement Agreement did not in fact extend to FLSA claims; alternatively, they argue, even if the release contained in the Kramer Settlement Agreement purports to encompass FLSA claims, such a release is unenforceable under the FLSA.   This case presents an issue of first impression in this Circuit – whether an opt-out state law class-action settlement can operate as a bar to the claims of members of a FLSA collective.   Significantly, the only U.S. Courts of Appeals to have decided this issue — the Ninth and Fifth Circuits — have rejected the

_____

[2] The Court's order engendered a flurry of filings by the parties, most of which were stricken by the Court as "unresponsive and argumentative."   Memorandum and Order (Nov. 24, 2020) ("11/24/20 M&O") at 2, DE #218.

arguments now advanced by plaintiffs, see Rangel v. PLS Check Cashiers of Calif., Inc., 899

F.3d 1106, 1110-12 (9th Cir. 2018); Richardson v. Wells Fargo Bank, N.A., 839 F.3d 442,

449-54 (5th Cir. 2016), and, in doing so, applied California law, which, as discussed below,

governs the analysis herein, see infra p. 8.

## DISCUSSION

### I.      Legal Principles Governing Motions to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "FRCP") permits a party to

move to dismiss for "failure to state a claim upon which relief may be granted[.]"   Fed. R.

Civ. P. 12(b)(6).   "A court may consider a res judicata defense on a Rule 12(b)(6) motion to

dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or

incorporated therein, and materials appropriate for judicial notice."   TechnoMarine SA v.

Giftports, Inc., 758 F.3d 493, 498 (2d Cir. 2014).   For example, a court may take judicial

notice of state court decisions in considering a motion to dismiss.   See Rates Tech. Inc. v.

Speakeasy, Inc., 685 F.3d 163, 166 n.3 (2d Cir. 2012) ("We may 'take judicial notice of a

document filed in another court . . . to establish the fact of such litigation and related

filings.'") (quoting Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157

(2d Cir. 2006)); Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts

Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) (noting that, in deciding a motion to

dismiss for failure to state a claim, the court "may also look to public records, including

complaints filed in state court"); see also MacKinnon v. City of New York/Human Res.

Admin., 580 F.App'x 44, 45 (2d Cir. 2014) (affirming district court's decision to dismiss

6

complaint based on claim preclusion where district court relied on record of state court action).

In addition, a court may "grant a motion to dismiss on the basis of a binding release where . . .

the terms of the agreement are clear and unambiguous." 2 Broadway L.L.C. v. Credit Suisse

First Boston Mortg. Capital L.L.C., No. 00 Civ 5773 GEL, 2001 WL 410074, at *6

(S.D.N.Y. Apr. 23, 2001) (Lynch, J.).

Accordingly, this Court takes judicial notice of the terms of the court-approved

Settlement Agreement and related proceedings in the California litigation in determining

whether the California Opt-In Plaintiffs' FLSA claims are barred by *res judicata* principles, or

contractual principles, or both.   See Fed. R. Evid. 201; Graham v. Select Portfolio Servicing,

Inc., 156 F.Supp.3d 491, 509 (S.D.N.Y. 2016) (relying on state court judgment in dismissing

complaint under Rule 12(b)(6) based on collateral estoppel); Swiatkowski v. Citibank, 745

F.Supp.2d 150, 171 (E.D.N.Y. 2010) (same), aff'd, 446 F.App'x 360 (2d Cir. 2011).   In

contrast, the emails submitted by plaintiffs to demonstrate their subjective belief regarding the

scope of the release, see, e.g., 7/2/19 Email, DE #202-7, are not properly subject to judicial

notice, see Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.,

652 F.Supp.2d 463, 472 n.5 (S.D.N.Y. 2009) (excluding declarations submitted on motion to

dismiss asserting claim and issue preclusion); accord Minor v. FedEx Office & Print Servs.,

Inc., 78 F.Supp.3d 1021, 1028 (N.D. Cal. 2015) (on motion to dismiss based on *res judicata*,

"judicial notice of these emails would be inappropriate").

## II.    Principles of *Res Judicata*

According to the Full Faith and Credit Act, one of the earliest laws passed by

Congress, "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."   28 U.S.C. § 1738; see Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 374 (1996) (applying judgment entered in state court class action to "bar the litigation of exclusively federal claims"). Indeed, "[t]he federal courts generally have . . . consistently accorded preclusive effect to issues decided by state courts."   Allen v. McCurry, 449 U.S. 90, 95 (1980).   "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the [s]tate from which the judgments emerged would do so[.]"   Id. at 96.

A federal court applies the state's preclusion law to determine the preclusive effect of a judgment rendered by a court of that state.   See Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 191 (2d Cir. 2012) ("[I]n order to determine the preclusive effect of a state-court decision, a federal court must look to the law of that state and should not give the state-court decision any greater preclusive effect than the courts of that state would give it[.]"). Further, here, the Kramer Settlement Agreement expressly provides that it is to be governed and interpreted "according to the laws of the State of California."   Kramer Settlement Agreement ¶ 3.20.   Thus, this Court must apply California law to interpret the terms and scope of the Kramer Settlement Agreement and determine whether the FLSA claims of the California Opt-In Plaintiffs are barred by the doctrine of *res judicata* or claim preclusion (and/or by virtue of the scope of the release in the Kramer Settlement Agreement and Class

8

Notice).

Under California law, claim preclusion applies where there is a (1) final decision on the merits, (2) in a prior proceeding on the same cause of action, (3) which involves the same parties or their privies.   See Rangel, 899 F.3d at 1110 (quoting Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles, 126 Cal.App.4th 1180, 1202 (2004)).   Pursuant to the doctrine of claim preclusion, "'[i]f the matter [raised in the subsequent suit] was within the *scope* of the [prior] action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.'"   Villacres v. ABM Indus. Inc., 189 Cal.App.4th 562, 583-84 (2010) (citation and internal quotation marks omitted; alterations supplied by court in Villacres); see Wassmann v. S. Orange Cty. Cmty. Coll. Dist., 24 Cal.App.5th 825, 844 (2018) ("Res judicata encompasses 'matters which were raised or could have been raised, on matters litigated or litigable in the prior action.'") (citation omitted).

A.   First Element of *Res Judicata*: Final Decision on the Merits

A final judgment resulting from a class-action settlement is sufficient to meet the "final and on the merits" element of claim preclusion and "'is as conclusive a bar as a judgment rendered after trial.'"   Rangel, 899 F.3d at 1110 (quoting Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n, 60 Cal.App.4th 1053, 1065, 1067 (1998) (alterations omitted)); see Howard v. Am. Online Inc., 208 F.3d 741, 748 (9th Cir. 2000); Consumer Advoc. Grp., Inc. v. ExxonMobil Corp., 168 Cal.App.4th 675, 694 (2008).

9

B.    Second Element of *Res Judicata*: Same Parties

Plaintiffs argue that they could not have become parties to the Kramer action because they did not file consent forms, as required by section 216(b) of Title 29 of the United States Code.   See Plaintiffs' Memorandum of Law in Opposition (Aug. 13, 2020) ("Pl. Opp.") at 15-16, DE #202.   Section 216(b) provides, in relevant part, "[n]o employee shall be a party plaintiff to any such [FLSA] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought . . . ."   29 U.S.C. § 216(b).   It is undisputed that an employee must file a consent form in order to become a plaintiff in a FLSA action brought pursuant to section 216(b).   However, the Kramer class action was not brought as a FLSA collective action.   On the contrary, the plaintiffs in Kramer asserted only state law claims and members of the class became parties to that litigation by virtue of their failure to opt out of the class-action settlement.   See Rangel, 899 F.3d at 1111-12; Richardson, 839 F.3d at 451 (applying California law on claim preclusion, Fifth Circuit rejects argument that employees who did not opt in to California state class action did not become parties to the settlement releasing FLSA claims); see also Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 747 (9th Cir. 2006) ("Plaintiffs were parties to the *Wal–Mart* proceeding by virtue of their membership in the class and appearance through counsel at the fairness hearing."); Villacres, 189 Cal.App.4th at 591-92.

In a class-action settlement, absent class members who do not opt out are considered parties for the purposes of claim preclusion and are bound by the judicially approved settlement agreement.   See Richardson, 839 F.3d at 449-50; Villacres, 189 Cal.App.4th at

10

591-92.   Here, the Kramer Settlement Agreement specifically provided that "any Class Member who does not submit a timely and valid Request for Exclusion will be deemed to have released the Released Parties from the Released Claims."   Kramer Settlement Agreement ¶ 3.6.   Members of the Kramer class were each sent a notice of the pending settlement and its terms, including a description of the scope of the release.   See Class Notice, DE #212-7. The class members were advised that if they did not opt out by a specific date, they would be "releasing all claims" as part of the settlement.   See id. § 4 (**"If you do not timely exclude yourself from the Settlement, you will be releasing all claims for the time period of November 17, 2013 to September 19, 2019 which were plead [sic] in the operative First Amended Complaint or which could have been . . . , including without limitations claims for unpaid wages and overtime . . . .").**   The California Opt-In Plaintiffs clearly fell within the definition of the Kramer class -- California store managers and store managers in training who worked for defendant between November 17, 2013 and September 19, 2019.   Although, as plaintiffs observe, the California Opt-In Plaintiffs would not have been parties to that action had it been prosecuted as a FLSA collective action because they did not affirmatively opt in, this argument raises a different question, discussed below, see infra pp. 21-25: that is, whether, because of the opt-in requirement of 29 U.S.C. § 216(b), FLSA claims give rise to an exception to California preclusion rules — a question to which the two U.S. Courts of Appeals to have addressed the issue have answered no.   See Rangel, 899 F.3d at 1112; Richardson, 839 F.3d at 451.

11

C.    Third Element of *Res Judicata*: Prior Proceeding on the Same Cause of Action

"'[A] judgment pursuant to a class settlement can bar [subsequent] claims based on the allegations underlying the claims in the settled class action.   This is true even though the precluded claim *was not presented*, and *could not have been presented*, in the class action itself.'"   Richardson, 839 F.3d at 449 (quoting Villacres, 189 Cal.App.4th at 586-87). Under California's principles of *res judicata*, "a 'cause of action' is defined by the 'primary rights' theory."   Villacres, 189 Cal.App.4th at 575-576 (quoting Amin v. Khazindar, 112 Cal.App.4th 582, 589 (2003)).   Pursuant to the "primary rights" theory of *res judicata*, "'the violation of a single primary right gives rise to but a single cause of action.'"   Id. at 576 (same); see Mycogen Corp. v. Monsanto Co., 28 Cal.4th 888, 904-05 (2002).   Hence, under California's primary rights theory, prior litigation will bar subsequent litigation when the subsequent litigation concerns a primary right already litigated, even under a different legal theory or requesting different forms of relief.   See Miller v. Cty. of Santa Cruz, 39 F.3d 1030, 1034 (9th Cir. 1994); Boeken v. Philip Morris USA, Inc., 48 Cal.4th 788, 798 (2010) ("The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory . . . advanced."); Takahashi v. Board of Educ., 202 Cal.App.3d 1464, 1474 (1988); Boccardo v. Safeway Stores, Inc., 134 Cal.App.3d 1037, 1043 (1982).   Where "two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right."   Boeken, 48 Cal.4th at 798.

To determine whether the Kramer case and the instant litigation involve the same primary rights, the Court must compare the complaints in the two actions, focusing on "the

facts pleaded and the injuries alleged[.]"   Adam Bros. Farming v. Cty. of Santa Barbara, 604

F.3d 1142, 1149 (9th Cir. 2010); see Brinton v. Bankers Pension Servs., Inc., 76 Cal.App.4th

550, 557 (1999).   The facts pled in the Amended Complaint in the case at bar arise out of the

same facts alleged in the pleading in the Kramer action.   In fact, the FLSA claims alleged in

this case are nearly identical to the subject matter and issues raised in the Kramer action - the

payment of overtime wages to allegedly misclassified store managers and store managers in

training by the same employer (Pl. Opp. at 3).   See Rangel, 899 F.3d at 1111; Villacres, 189

Cal.App.4th at 584 (plaintiff's claims "were within the scope of [the prior class action] and

were related to the subject matter and issues in that action").   The claims raised in Kramer

and those in the instant lawsuit sought recovery for the same injury.   Each action sought to

hold defendant liable for its failure to pay SMs and SMITs overtime compensation.   Given the

overlap between the two cases, the claims assert violations of the same primary right.   Indeed,

the California Opt-In Plaintiffs' FLSA claims are "federal versions of the state law claims

asserted in the [Kramer] action" and "are typical examples of claims invoking 'the same injury

to the same right' litigated in a prior case."   Rangel, 899 F.3d at 1111 (citation omitted); see

Villacres, 189 Cal.App.4th at 584 (precluding subsequent action by a former employee who

was a member of a prior class action for alleged violations of the overtime provisions of the

California Labor Code).

    Plaintiffs do not take issue with, or even address, defendant's accurate summary of

California's principles of *res judicata*.   See generally Pl. Opp. at 13 ("[E]ven if California *res*

*judicata* law applies here . . . .").   Instead, plaintiffs advance two arguments to avoid claim

preclusion in this case: First, that the California Opt-In Plaintiffs did not intend to release their FLSA claims.   See id. at 8-11.   And second, that in light of the policy considerations articulated in cases including the Second Circuit's decision in Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), general principles of *res judicata* and waiver or release are subject to a special exception that prohibits the enforcement of settlement agreements that release FLSA claims as part of an opt-out class action.   See Pl. Opp. at 11-17.   This Court addresses, and rejects, these two arguments in turn.

## III.   Principles of Contractual Release

"A settlement agreement is in the nature of a contract and is therefore governed by the same legal principles applicable to contracts generally."   Timney v. Lin, 106 Cal.App.4th 1121, 1127 (2003) (citations omitted); see Brinton, 76 Cal.App.4th at 558.   Although plaintiffs are correct that courts "look to the intent of the settling parties to determine the preclusive effect of a dismissal with prejudice entered in accordance with a settlement agreement, . . . [t]he best evidence of [the parties'] intent is . . . the settlement agreement itself . . . , as interpreted according to traditional principles of contract law."   Wojciechowski v. Kohlberg Ventures, LLC, 923 F.3d 685, 689-90 (9th Cir. 2019) (citations omitted), cert. denied sub nom. Kohlberg Ventures, LLC v. Wojcie-Chowski, 140 S.Ct. 491 (2019).   "Such intent is to be inferred, if possible, solely from the written provisions of the contract."   Powerine Oil Co., Inc. v. Superior Court, 37 Cal.4th 377, 390 (2005) (citations omitted). "California recognizes the objective theory of contracts, under which [i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the

14

parties, that controls interpretation." In re Marriage of Simundza, 121 Cal.App.4th 1513, 1518 (2004) (internal quotation marks, citation, and alterations omitted).   "Thus, in interpreting the [agreement], we are not concerned as much with what the parties might tell us they meant by the words they used as with how a reasonable person would interpret those words." Citizens for Amending Proposition L v. City of Pomona, 28 Cal.App.5th 1159, 1188 (2018) (internal quotation marks and citation omitted).   This Court thus infers the parties' intent from the language of the Kramer Settlement Agreement and focuses "on the usual and ordinary meaning of the language and the circumstances under which the agreement was made." Powers v. Dickson, Carlson & Campillo, 54 Cal.App.4th 1102, 1111 (1997) (internal quotation marks and citation omitted); see Cal. Civ. Code §§ 1638, 1639, 1644. The question of whether a particular term is ambiguous is a question of law.   See Wolf v. Superior Court, 114 Cal.App.4th 1343, 1351 (2004).

Here, the terms of the court-approved Kramer Settlement Agreement unequivocally provide for a broad release of "all claims which were ple[]d. . . or which could have been pled" based on the facts alleged, including "claims for unpaid wages and overtime."   Kramer Settlement Agreement ¶ 2.2.   The plain language of the Agreement's release is unqualified and necessarily encompasses the instant FLSA claims brought by the California Opt-In Plaintiffs, since they arise out of the same facts alleged in the complaint in the Kramer action.[3]

---

[3] Moreover, the California Opt-In Plaintiffs' FLSA claims could have been brought in the Kramer litigation, as state courts have concurrent jurisdiction over FLSA claims.   See 29 U.S.C. § 216(b) (action "may be maintained" in either federal or state court); Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 691 (2003); Barnhill v. Fred Stark Estate, No. 15 Civ. 3360(BMC), 2015 WL 5680145, at *2 n.1 (E.D.N.Y. Sept. 24, 2015).

See Rangel, 899 F.3d at 1111 ("FLSA claims, which were direct federal law counterparts to the state law claims settled [in the state class action], easily qualify" as claims that "could have been pled based on the factual allegations" in that prior case); Lesnik v. Eisenmann SE, 374 F.Supp.3d 923, 955-57 (N.D. Cal. 2019) (finding that federal and state human trafficking claims were precluded by settlement of state court action in which such claims could have been brought); Villacres, 189 Cal.App.4th at 586-88 (finding release of "all claims" in class action precluded subsequent wage-and-hour action).   Moreover, the Kramer release makes clear that "[c]lass members agree not to sue or otherwise make a claim against any of the Released Parties for the Released Claims."   Kramer Settlement Agreement ¶ 3.6.   In approving the Kramer Settlement Agreement, the Final Approval Order states that the entry of judgment "shall constitute a full and complete bar against the Class as to all Released Claims, and shall constitute res judicata and collateral estoppel with respect to the Released Claims, except to those who properly opted out of the Settlement pursuant to the terms of the Settlement Agreement."   Final Approval Order ¶ 9.

Viewing the Agreement as a whole, the broad language of the release is unambiguous and identifies no exclusions.   The California Opt-In Plaintiffs were represented by the same counsel as in the instant action and this Court granted conditional certification three months before the Kramer settlement was reached.   While the Settlement Agreement does not explicitly mention FLSA claims, "the term 'all claims' includes 'claims that are not expressly enumerated in the release.'"   Villacres, 189 Cal.App.4th at 587; see Rangel, 899 F.3d at 1109 (FLSA claims were precluded by state class settlement even though "[t]he [state]

16

complaint did not bring any federal claims and made no mention of the FLSA"). Such a general release "is not uncommon in class action settlements." Villacres, 189 Cal.App.4th at 588; see Carter v. City of Los Angeles, 224 Cal.App.4th 808, 820 (2014).

Rather than addressing how a reasonable person would interpret the words of the Kramer release, plaintiffs instead focus on their subjective intent, which they concede conflicted with defendant's expectation. Relying on emails exchanged between counsel, as well as plaintiffs' counsel's declaration filed in support of the motion for preliminary approval of the Kramer Settlement, plaintiffs argue that they "never intended to release their FLSA claims in the *Kramer* action." See Pl. Opp. at 8. According to plaintiffs, in negotiating the Kramer Settlement Agreement, the parties "knew the issue of the release in the Settlement Agreement on the [California Opt-In] Plaintiffs' FLSA claims would ultimately be before this Court." Marino Decl. ¶ 16, DE #202-1. Defendant replies that in determining the scope of the release in the Kramer action, the Court may not look beyond "the four corners" of the Kramer Settlement Agreement. See Reply Memorandum in Support of Defendant's Motion (Aug. 13, 2020) ("Def. Reply") at 5, 6, DE #203.

Where the words of a written instrument lack a clear meaning, courts applying California law "may preliminarily consider any extrinsic evidence offered by the parties." Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1015 (9th Cir. 2012) (quoting Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 989-90 (9th Cir. 2006)); see Wolf v. Walt Disney Pictures & Television, 162 Cal.App.4th 1107, 1126 (2008). "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to

17

the court to be plain and unambiguous on its face, but whether the offered evidence is *relevant* to prove a meaning to which the language of the instrument is reasonably susceptible." SLPR, L.L.C. v. San Diego Unified Port Dist., 49 Cal.App.5th 284, 299 (2020) (internal quotation marks and citation omitted); see Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., Inc., 69 Cal.2d 33, 39–40 (1968). "If the court decides, after consideration of this evidence, that the language of a contract, in the light of all the circumstances, is fairly susceptible of either one of the two interpretations contended for, extrinsic evidence relevant to prove either of such meanings is admissible." Skilstaf, 669 F.3d at 1015 (quoting Miller, 454 F.3d at 990). "If, however, the court decides that the contract is not reasonably susceptible to more than one interpretation, the court can reject the assertion of ambiguity." Skilstaf, 669 F.3d at 1015; see A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., 852 F.2d 493, 496 n.2 (9th Cir. 1988).

Having reviewed and "preliminarily" considered the extrinsic evidence submitted by plaintiffs, this Court concludes that the broad, unlimited release language is not ambiguous and is reasonably susceptible to only one interpretation. See Hervey v. Mercury Cas. Co., 185 Cal.App.4th 954, 961 (2010) ("Although parol evidence may be admissible to determine whether the terms of a contract are ambiguous, it is not admissible if it contradicts a clear and explicit [contractual] provision.") (internal citations omitted)). In their motion for preliminary approval of the Kramer Settlement, the plaintiffs noted in passing that they were not releasing

18

their FLSA claims.[4]   However, one party's subjective intent does not control.   See In re Marriage of Simundza, 121 Cal.App.4th at 1518.   The parties' submissions make clear their intent that the language of the Settlement Agreement have its ordinary meaning, leaving for judicial resolution the enforceability of the release as applied to the California Opt-In Plaintiff's' FLSA claims.   Plaintiffs' counsel admits as much in his declaration in connection with the instant motion: "Defendant believed the Settlement Agreement released FLSA claims, whereas *our office believed public policy* based on the lack of consideration for FLSA liquidated damages *and the lack of a fairness review of FLSA claims render any purported FLSA release invalid."*   Marino Decl. ¶ 16, DE #202-1 (emphasis added); see Pl. Opp. at 1-2 n.1 ("[T]he effect of the Settlement Agreement on the Kramer Plaintiffs' FLSA claims was an open issue of contention between the Parties at the time the Settlement Agreement was finalized.   Ultimately, counsel for both parties accepted the Settlement Agreement, on its terms, with counsel for the *Kramer* Plaintiffs believing it to be insufficient to release FLSA claims, whereas Defendant took a contrary position.   At all times, the Parties knew this legal issue would be adjudicated in this Court."), id. at 7 ("Counsel for both parties ultimately agreed to disagree[.]").   The parties' intent is best expressed by the provisions of the Settlement Agreement itself: "It is the intent of the Parties that the Final Approval Order entered by the Court shall have full *res judicata* effect and be final and binding upon Class

---

[4] This reference was contained in a supporting declaration to the motion for preliminary approval in Kramer.   See Marino Kramer Decl.¶ 19, DE #212-3.   That document was not docketed in this case, or relied upon by plaintiffs, until after the instant motion had been fully briefed and this Court directed the parties to supply information as to whether the Kramer court was advised of the case at bar.   See 11/4/20 Order; Letter (Nov. 10, 2020), DE #212.

Members as to the Released Claims." Settlement Agreement ¶ 3.6.

Plaintiffs now argue that defendant was aware that they did not intend to release their FLSA claims. See Pl. Opp. at 7 n.6. But plaintiffs' counsel was well aware of, and agreed to, contractual language — thereafter embodied in the Class Notice sent to members of the class — whereby the plaintiffs and class members would release "all claims," with plaintiffs thereby assuming the risk of a judicial ruling that the release encompassed FLSA claims. See Marino Decl. ¶ 16, DE #202-1. "If [the Kramer plaintiffs] thought the release was too broad, [they] could have sought to remedy the problem through objection or intervention, and, if not satisfied with the result, [they] could have appealed. Alternatively, [they] could have simply opted out of the class and rendered the scope of the release irrelevant in this action." Villacres, 189 Cal.App.4th at 590. While plaintiffs hoped for a ruling that declined to enforce a release of FLSA claims arising out of a state class-action settlement, plaintiffs have submitted no evidence to demonstrate that the parties' mutual intent was to carve out FLSA claims from the release of "all claims." In language that is particularly apt here, one court explained: "[T]he objectors felt entitled to the bird in the hand while pursuing the flock in the bush, . . . but in so doing, they accepted the risk that they would be precluded here." In re Corrugated Container Antitrust Litig., 643 F.2d 195, 222-23 (5th Cir. 1981) (holding that settlement of federal class action released state law claims in pending state class action based on the same facts and theories). Simply put, despite the parties' disagreement as to the enforceability of the release language as applied to FLSA claims, there can be no real dispute as to the plain meaning of the release language.

Moreover, the Kramer Settlement Agreement contains an integration clause, "which would preclude consideration of extrinsic evidence to alter or vary its terms."   Cook Inc. v. Medtronic, Inc., No. C 06 00333 JSW, 2006 WL 1806159, at *5 n.6 (N.D. Cal. June 29, 2006); see R.W.L. Enterprises v. Oldcastle, Inc., 17 Cal.App.5th 1019, 1031 (2017) ("The purpose of an integration clause is to preclude the introduction of evidence which varies or contradicts the terms of the written instruments."); Brinton, 76 Cal.App.4th at 560; Cal. Civ. Proc. Code § 1856.   Here, even taking into account all of plaintiffs' extrinsic evidence, the language of the release is susceptible to only one interpretation, pursuant to which the California Opt-In Plaintiffs, who participated in the class settlement, released their FLSA claims.

## IV.   Enforceability of Waiver of FLSA Claims

Plaintiffs further argue that despite the general principles of claim preclusion discussed above, a court should not enforce the "silent, unexamined release of FLSA claims[,]" Pl. Opp. at 14, and, in particular, a waiver of FLSA's liquidated damages, which are not available under the California Labor Code, see id. at 9.   Dismissing Rangel as poorly reasoned, see Pl. Opp. at 13-14, and overlooking Richardson entirely, plaintiffs principally rely on the Supreme Court's decisions in Brooklyn Savings Bank v. O'Neil, 324 U.S. 697 (1945), and D.A. Schulte, Inc. v. Gangi, 328 U.S. 108 (1946), as well as the Second Circuit's decision in Cheeks, 796 F.3d 199, see Pl. Opp. at 1-2, 9-14.

As an initial matter, it bears noting that the Ninth Circuit in Rangel and the Fifth Circuit in Richardson rejected similar arguments that, because of the FLSA's opt-in

21

mechanism, FLSA claims cannot be released through the settlement of wage-and-hour claims on behalf of an opt-out class.   According to the Rangel court, that distinction "has no impact on the California primary rights analysis.   The same injuries to the same rights are at issue in both cases."   Rangel, 899 F.3d at 1111.   The court in Richardson similarly concluded that "the FLSA does not create a special exception that prohibits the enforcement of settlement agreements that release FLSA claims as part of an opt out class action."   Richardson, 839 F.3d at 452; see also Gardner v. W. Beef Props., Inc., No. 07-CV-2345, 2008 WL 2446681, at *3 (E.D.N.Y. June 17, 2008) ("Absent controlling Second Circuit authority, therefore, the Court declines defendant's invitation to read [29 U.S.C. § 216(b)] as exempting overtime wage litigants from the ordinary operation of res judicata principles or the important policies they advance, such as the finality of judgments and avoidance of repetitive litigation."); Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 163 (S.D.N.Y. 2008) (Lynch, J.) ("It is true that potential class members who do not opt out of the class action could have 'all claims that could have been brought in that action, including any FLSA claim, resolved by *res judicata* without opting in to the FLSA action.'").   Although the California Labor Code does not provide for liquidated damages for unpaid overtime, the penalties provided by the California Labor Code, and liquidated damages under the FLSA, are simply different forms of relief for the same violation of plaintiffs' "primary right" -- to be paid overtime compensation.   See Tran v. Le French Baker, Inc., C-94-0482 VRW, 1995 WL 374342, at *3 (N.D. Cal. June 14, 1995) (plaintiff's FLSA claim was barred by the *res judicata* effect of a prior state administrative proceeding seeking unpaid wages); accord Damassia, 250 F.R.D. at 162 (failing to opt out of

hybrid overtime action "will waive [plaintiffs'] rights to liquidated damages").   As the California Opt-In Plaintiffs did not opt out of the Kramer Settlement and thereby obtained relief for violation of the same "primary" right as that at issue here, their claim for liquidated damages under the FLSA is precluded on account of the release in Kramer and principles of res judicata.[5]

The Supreme Court's decisions in Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, and D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, which "held that private contractual waivers of worker's FLSA rights were against public policy[,]" Me Xing Yu v. Hasaki Rest., Inc., 944 F.3d 395, 407 (2d Cir. 2019), do not compel a conclusion at variance with the decisions in Rangel and Richardson.   Neither of the two Supreme Court cases involved an agreement between employer and employees to settle wage-and-hour claims being litigated in court. Indeed, the Supreme Court in Gangi expressly limited its holding to private settlements not involving any judicial oversight: "[W]e think the requirements of pleading the issues and

_____

[5] Like their counterparts in Rangel and Richardson, plaintiffs rely on district court decisions from California, wherein courts denied approval of hybrid class/collective action settlements with releases encompassing FLSA claims.   See Pl. Opp. at 15-16 (citing, inter alia, Tijero v. Aaron Bros., Inc., No. C 10-01089 SBA, 2013 WL 60464, at *7-8 (N.D. Cal. Jan. 2, 2013)).   Plaintiffs' argument misses the mark.   As the Ninth Circuit observed in Rangel, the issue before it was "not the wisdom of the state court proceeding as it did."   Rangel, 899 F.3d at 1112. After noting that the scope of the release and the sufficiency of the class notice were "issues courts have addressed with varying results[,]" id. at 1112 & n.5, the Ninth Circuit concluded:

> The way to raise such issues was by objecting to the settlement.   Here we are asked only whether a settlement to which Rangel did not object, and to which we are obligated to give effect, 28 U.S.C. § 1738, extends to her current claims.   It plainly does.

Id. (footnote omitted); see Richardson 839 F.3d at 452 (rebuffing plaintiffs' reliance on "unpublished district court cases that reject the release of FLSA claims as part of an opt out class action settlement[,]" the Fifth Circuit opined that those courts "may well have taken the wise approach in exercising their discretion to determine the proper scope of the settlements in those particular cases, but such decisions do little to help with the problem here: how to apply a broad release in an opt-out class that a court has already approved . . . ?") (quoting Lipnicki v. Meritage Homes Corp., Civil Action No. 3:10-CV-605, 2014 WL 923524, at *16 (S.D. Tex. Feb. 13, 2014)).

submitting the judgment to judicial scrutiny may differentiate stipulated judgments from compromises by the parties."   <u>Gangi</u>, 328 U.S. at 113 n.8; <u>see</u> <u>Yu</u>, 944 F.3d at 410 ("there is a critical distinction between purely private settlements between parties and stipulated judgments between parties, the latter of which occur in the context of publicly-filed, ongoing litigation subject to judicial scrutiny").

Plaintiffs similarly overstate the ramifications of the Second Circuit's decision in <u>Cheeks</u>, which held that stipulated dismissals settling FLSA claims with prejudice under Rule 41(a)(1)(A)(ii) of the FRCP require approval of either the district court or the U.S. Department of Labor to be effective.   <u>See</u> <u>Cheeks</u>, 796 F.3d at 206.   In its 2019 decision in <u>Yu</u>, the Second Circuit vastly circumscribed the rationale and scope of its opinion in <u>Cheeks</u>, in holding that, despite FLSA's policy underpinnings, district court review and approval were neither required nor appropriate for an accepted offer of judgment that settled a FLSA action under Rule 68 of the FRCP.   <u>See</u> <u>Yu</u>, 944 F.3d 411-14.

Plaintiffs' reliance on <u>Cheeks</u> is thus misplaced.[6]   Furthermore, as defendant persuasively argues, the concerns expressed by the Second Circuit in <u>Cheeks</u> are absent here:

> In reviewing the same basic factors as required by *Cheeks,* the Sacramento County Superior Court determined that the settlement in *Kramer* was public, fair, reasonable, and a product of arms-length [negotiation] by parties ably represented by counsel.   The Court scrutinized the Settlement Agreement, conducted hearings for both preliminary and final approval, and thereafter,

---

[6] Furthermore, as plaintiffs note, <u>see</u> Pl. Opp. at 11, the Ninth Circuit has issued its own version of <u>Cheeks</u>, a 2015 opinion holding that "FLSA claims may not be settled without approval of either the Secretary of Labor or a district court."   <u>Seminiano v. Xyris Enter., Inc.</u>, 602 F.App'x 682, 683 (9th Cir. 2015).   Nevertheless, three years later, the Ninth Circuit concluded in <u>Rangel</u> that a state class-action settlement had released all claims arising from the allegations on which the plaintiff's FLSA claim was predicated.   899 F.3d at 1110-12.   <u>Cheeks</u>, like <u>Seminiano</u>, is no impediment to the enforceability of a release of FLSA claims pursuant to a class-action settlement.

entered judgment.   Class members were given the opportunity to opt out.
None did.

Def. Mem. at 17 (citing Final Order).

Accordingly, the remedial policy goals of the FLSA have been served and do

not warrant creating a FLSA carve-out to California's principles of *res judicata* and

waiver by release.   There is a strong presumption in favor of the finality of judgments.

See Gonzalez v. Crosby, 545 U.S. 524, 535 (2005).   Absent the preclusive effect of

class settlement agreements, defendants "would otherwise face nearly limitless liability

from related lawsuits in jurisdictions throughout the country."   Wal-Mart Stores, Inc.

v. Visa U.S.A, Inc., 396 F.3d 96, 106 (2d Cir. 2005).   Having failed to opt out of the

Kramer Settlement, the California Opt-In Plaintiff are barred from pursuing their pre-

9/19/19 FLSA claims.

25

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that defendant's motion to dismiss the pre-9/19/19 claims of the California Opt-in Plaintiffs be granted.

Any objections to the recommendations contained herein must be filed with Judge Brodie on or before January 20, 2021.   Failure to file objections in a timely manner may waive a right to appeal the District Court order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*).

**SO ORDERED.**

**Dated: Brooklyn, New York**
**January 6, 2021**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**

26