UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ASHLEIGH MASON, DAN MORSE, RYAN CARROLL, OSAGIE EHIGIE, NEREDA BODNAR, and TRAVIS STREETER, on behalf of themselves and all others similarly-situated,<br><br>Plaintiffs,<br><br>-against-<br><br>LUMBER LIQUIDATORS, INC.<br><br>Defendant. | Civil Action No.:17-CV-4780(MKB)(RLM)<br><br><br>**SECOND AMENDED COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiffs Ashleigh Mason ("Mason"), Dan Morse ("Morse"), Ryan Carroll ("Carroll"), Osagie Ehigie ("Ehigie"), Travis Streeter ("Streeter"), and Nereda Bodnar ("Bodnar") (collectively, the "Plaintiffs"), individually and on behalf of all other persons similarly situated, by and through their attorneys, Stevenson Marino LLP, file this Complaint against the Defendant Lumber Liquidators, Inc., (the "Defendant" or "Lumber Liquidators"), seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, et. seq., and New York Labor Law ("NYLL") NYLL Article 19, §§ 190 *et seq*., 650 et seq. The following allegations are based upon knowledge as to themselves and upon information and belief as to all other matters as follows:

## INTRODUCTION

1.      Plaintiffs allege on behalf of themselves and other current and former store managers and similarly situated current and former employees holding comparable positions but different titles (hereinafter, "SMs"), employed by Defendant in the United States, who elect to opt into this action pursuant to the FLSA (hereinafter, the "Collective Action Members"), that

1

they are entitled to, *inter alia:* (i) unpaid overtime wages for hours worked above forty (40) in a workweek, as required by law, and (ii) liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*

2.      Plaintiff Bodnar and Streeter alleges on behalf of themselves and other current and former store managers in training and similarly situated current and former employees holding comparable positions but different titles (hereinafter, "SMITs"), employed by Defendant in the United States, who elect to opt into this action pursuant to the FLSA (hereinafter, the "SMIT Collective Action Members"), that they are entitled to, *inter alia:* (i) unpaid overtime wages for hours worked above forty (40) in a workweek, as required by law, and (ii) liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*

3.      Plaintiffs Mason, Morse, Carroll, and Ehigie (collectively, the "NY Plaintiffs") bring NYLL claims as a Class Action on behalf of themselves and all current and former employees of the Defendant who from six (6) years and 115 days preceding August 15, 2017 through the disposition of this action were SMs in New York that: (1) were/are classified as exempt from overtime and have not received overtime pay when they worked more than forty (40) hours in a workweek in violation of the NYLL; (2) did not receive the required Notice and Acknowledgment of Pay form in violation of NYLL §195; and/or (3) did not receive accurate wage statements in violation of NYLL § 195 both because it did not set forth their accurate wages and/or failed to be paid on a weekly basis (as required for manual workers) (collectively, the "NY SM Class").

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C § 216(b).

5.     This Court has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the FLSA claims that they form part of the same case or controversy.

6.     Defendant operates numerous stores in and is subject to personal jurisdiction in this District.

7.     The claims of Plaintiffs, the Collective Action Members, the SMIT Collective Action Members, and the NY SM Class involve matters of national and/or interstate interest.

8.     Venue is proper pursuant to 28 U.S.C. § 1392 because a substantial part of the events or omissions giving rise to the claims occurred in this District, as Plaintiffs Morse, Ehigie, and Carroll all worked at Defendant's stores located in Brooklyn, New York.

9.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

*Defendant*

10.     Defendant Lumber Liquidators, Inc. is a specialty chain retailer of hardwood flooring with hundreds of store locations through the United States and the State of New York.

11.     Defendant Lumber Liquidators, Inc. was and still is a foreign business corporation organized and existing by virtue of the laws of the State of Delaware, and authorized to do business in the state of New York.

12.     Defendant has a principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

13.     Defendant had annual gross revenues in excess of $500,000 per year for all relevant periods herein.

14.     At all relevant times, Defendant has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§ 206(a) and 207(a).

15.     At all relevant times, Defendant was and still is the owner and/or operator of the retail chain known as "Lumber Liquidators".

16.     At all relevant times, Defendant was and still is operating as and/or doing business as "Lumber Liquidators".

17.     At all relevant times, Defendant was and still is the owner and/or operator of all the Lumber Liquidators stores operated in New York, including the stores where Plaintiffs worked.

18.     Defendant is a covered employer within the meaning of the FLSA and the NYLL and, at all relevant times, employed the Plaintiffs.

*Plaintiffs*

19.     At all relevant times herein, Plaintiffs are each considered a "person" and an "employee" entitled to protection as defined by the FLSA and NYLL.

20.     Plaintiff Mason is an adult individual over the age of 18, residing in East Windsor, New Jersey.

21.     Plaintiff Mason began working for Defendant from on or about May 2016 through the present at the Staten Island, New York store. At all relevant times, Plaintiff Mason was a SM for Defendant, who and presently is classified as exempt from overtime.

22.     Plaintiff Mason is paid a salary of approximately $50,000 per year plus commissions. Plaintiff Mason's salary compensates her for forty hours of work per workweek. She has not received overtime compensation for hours worked in excess of forty in a workweek.

4

The consent to join this action of Plaintiff Mason is attached to the Complaint. At all relevant times, Plaintiff Mason's total earnings were primarily derived from her salary.

23.     Plaintiff Morse is an adult individual over the age of 18, residing in Merrick, New York.

24.     Defendant employed Plaintiff Morse from on or about October 2013 through on or about April 8, 2017. During Plaintiff Morse's employment, he was the SM at Defendant's store in Brooklyn from on or about August 2016 through April 8, 2017, and was a Store Manager in Training and then a SM of the Long Island City store during the period from on or about October 2013 through roughly August 2016. At all relevant times, Plaintiff Morse's total earnings were primarily derived from his salary.

25.     Plaintiff Morse received a salary of approximately $60,000 per year plus commissions. Plaintiff Morse's salary compensated him for forty (40) hours of work per workweek, and he did not receive overtime compensation for hours worked in excess of forty (40) in a workweek. The consent to join this action of Plaintiff Morse is attached to the Complaint. At all relevant times, Plaintiff Morse's commissions were less than his annual salary.

26.     Plaintiff Carroll is an adult individual over the age of 18, residing in East Brunswick, New Jersey.

27.     Defendant employed Plaintiff Carroll from on or about March 2015 through November 2015 in the Staten Island, New York store, then from December 2015 through August 2016 in the Brooklyn, New York store (located at 64 12th Street, Brooklyn). At all relevant times, Plaintiff Carroll was a SM for Defendant, who was classified as exempt from overtime.

28.     Plaintiff Carroll received a salary of approximately $35,000 per year plus commissions. Plaintiff Morse's salary compensated him for forty (40) hours of work per

workweek, and he did not receive overtime compensation for hours worked in excess of forty (40) in a workweek. The consent to join this action of Plaintiff Carroll is attached to the Complaint. At all relevant times, Plaintiff Carroll's total earnings were primarily derived from his salary.

29.     Plaintiff Ehigie is an adult individual over the age of 18, residing in Mount Vernon, New York.

30.     Defendant employed Plaintiff Ehigie from on or about November 2008 through February 2009 in the Brooklyn store, then from February 2009 through March 2016 in a Yonkers, New York store. At all relevant times, Plaintiff Ehigie was a SM for Defendant, who was classified as exempt from overtime.

31.     Plaintiff Ehigie was paid a salary of approximately $35,000 per year plus commissions. Plaintiff Ehigie's salary compensated him for forty (40) hours of work per workweek. He has not received overtime compensation for hours worked in excess of (40) forty in a workweek. The consent to join this action of Plaintiff Ehigie is attached to the Complaint. At all relevant times, Plaintiff Ehigie's total earnings were primarily derived from his salary.

32.     Plaintiff Streeter (now deceased) was an adult individual over the age of 18, residing in Aurora, Colorado.

33.     Defendant employed Plaintiff Streeter from on or about April 2014 through February 2016 as a Store Manager in Training, then from February 2016 through May 2016 as an Assistant Store Manager, then from May 2016 through October 2016 as an Installation Sales Manager, then from October 1, 2016 through on or about April 29, 2017 as a Store Manager.

34.     In the capacity of a Store Manager in Training ("SMIT"), Defendant employed Plaintiff Streeter at numerous locations, including stores located in: Salt Lake, Colorado; Linden,

Utah, Colorado Springs, Colorado; Fort Collins, Colorado; Little Town, Colorado; Aurora, Colorado; and Longmont, Colorado.

35.     In the capacity of a Store Manager, Defendant employed Plaintiff Streeter at the store located in Loan Tree, Colorado.

36.     In the capacity of an Installation Sales Manager, Defendant employed Plaintiff Streeter at the store located in Denver, Colorado.

37.     During Plaintiff Streeter's tenure as a SMIT, he received a salary of approximately $35,000 per year plus a stipend. Plaintiff Streeter's salary compensated him for forty (40) hours of work per workweek, and he did not receive overtime compensation for hours worked in excess of forty (40) in a workweek. The consent to join this action of Plaintiff Streeter was filed on November 20, 2017. *See* Travis Streeter Consent (Dkt. 13; pg. 9). At all relevant times, Plaintiff Streeter's stipend were less than his annual salary.

38.     During Plaintiff Streeter's tenure as an Installation Sales Manager, he received a salary of approximately $35,000 per year plus commissions. Plaintiff Streeter's salary compensated him for forty (40) hours of work per workweek, and he did not receive overtime compensation for hours worked in excess of forty (40) in a workweek. At all relevant times, Plaintiff Streeter's commissions were less than his annual salary.

39.     During Plaintiff Streeter's tenure as a Store Manager, he received a salary of approximately $55,000 per year plus commissions. Plaintiff Streeter's salary compensated him for forty (40) hours of work per workweek, and he did not receive overtime compensation for hours worked in excess of forty (40) in a workweek. At all relevant times, Plaintiff Streeter's commissions were less than his annual salary.

40.     Plaintiff Bodnar is an adult individual over the age of 18, residing in Aurora, Colorado.

41.     Defendant employed Plaintiff Bodnar from on or about April 2016 through October 18, 2017. Plaintiff Bodnar was employed as a Store Manager in Training from on or about August 1, 2017 through October 18, 2017, as an Assistant Store Manager from on or about December 2016 through August 2017, and as a Sales and Product Specialist from on or about April 2016 through December 2016.

42.     In the capacity of a Store Manager in Training ("SMIT"), Defendant employed Plaintiff Bodnar at the Lone Tree, Colorado store (Store # 1149).

43.     During Plaintiff Bodnar's tenure as a SMIT, she received a salary of approximately $50,000 per year. Plaintiff Bodnar's salary compensated her for forty (40) hours of work per workweek, and she did not receive overtime compensation for hours worked in excess of forty (40) in a workweek. The consent to join this action of Plaintiff Bodnar was filed on November 20, 2017. *See* Nereda Bodnar Consent (Dkt. 13; pg. 1).

44.     Plaintiff Bodnar's "promotion" from ASM1 to SMIT was only in title, as she believes she would have earned more money had kept her ASM1 hourly rate plus eligibility for overtime, but worked the number of hours she performed when she was a SMIT

45.     Defendant is aware of the type and quantity of the work Plaintiffs, the Collective Action members, the SMIT Collective Action Members, and the NY SM Class Members have performed.

46.     This work required little skill and no capital investment. Nor did it include managerial responsibilities, or the exercise of meaningful independent judgment and discretion.

47.     Throughout any work week in the three years and 115 days from August 15, 2017 to the entry of judgment in this case (the "FLSA Claims Period") and in the six years and 115 days prior to the date of filing this Complaint to the entry of judgment in this case (the "NYLL Claims Period"), Plaintiffs, the Collective Action members, the SMIT Collective Action Members and the NY SM Class Members performed the same primary job duties (hereinafter, "Associate-Level Tasks"), which include but are not limited to:

- Cleaning the store

- Working the cash registers

- Stocking displays, tables, racks and shelves

- Building displays

- Unpacking boxes

- Unloading freight

- Operating the cash registers

- Cleaning displays, tables racks and shelves

- Changing prices

- Organizing the store according to detailed corporate directives called planograms

- Providing customer service

- Putting up and taking down signs

- Creating signs

- Collecting garbage

- Making cold-calls in an effort to obtain additional sales

48.     Throughout the FLSA Claims Period and the NYLL Claims Period, the primary job duties of Plaintiffs, the Collective Action members, the SMIT Collective Action Members,

and the NY SM Class Members did not include or the following occurred so rarely it was inconsequential:

- Independently hiring other employees

- Independently terminating other employees

- Independently disciplining other employees

- Exercising meaningful independent judgment and discretion

- Deviating from Defendant's policies and procedures, which constrain them from managing or exercising discretion

- Increasing or decreasing the compensation of other employees

- Controlling the labor budget

- Deciding what products are sold in Defendant's Stores

- Deciding what prices to charge for the products sold in Defendant's stores.

49.     Throughout the FLSA Claims Period, the primary job duties of Plaintiffs Bodnar and Streeter, in their capacity as a SMIT, involved routine customer service and making customer phone calls at Defendant's stores. Indeed, Plaintiff Bodnar and Streeter worked exclusively in Defendant's store performing the same functions as a non-exempt associate.

50.     Throughout the FLSA and NYLL Claims Period, Plaintiffs, the Collective Action members, the SMIT Collective Action Members, and the NY SM Class Members usually and regularly only had themselves or a minimal number of associates in the store at most times (if more than one associate at all).

51.     The primary job duties of Plaintiffs, the Collective Action members, the SMIT Collective Action Members, and the NY SM Class Members did not materially differ from the duties of non-exempt hourly paid employees. Their primary duties were manual in nature. The

performance of manual labor and non-exempt duties occupied the majority of Plaintiffs', the

Collective Action members', the SMIT Collective Action Members', and the NY SM Class

Members' working hours.

52.     Pursuant to a centralized, company-wide policy, pattern and/or practice,

Defendant classified all SMs, SMITs, and other similarly situated current and former employees

holding comparable positions but different titles, as exempt from coverage of the overtime

provisions of the FLSA.

53.     Pursuant to a centralized, company-wide policy, pattern and/or practice,

Defendant classified all SMs and other similarly situated current and former employees holding

comparable positions but different titles, as exempt from coverage of the overtime provisions of

the NYLL.

54.     Upon information and belief, Defendant did not perform a person-by-person

analysis of the job duties of SMs, and SMITs when making the decision to classify all of them

uniformly as exempt from the overtime protections of the FLSA and the NYLL.

55.     Defendant established labor budgets to cover labor costs for the stores in which

Plaintiffs and similarly situated SMs, and SMITs worked. Defendant did not provide sufficient

money in the labor budgets to cover all the wages necessary to have non-exempt employees

complete all of the non-exempt tasks in each store.

56.     Defendant knew or recklessly disregarded the fact that underfunding store labor

budgets resulted in Plaintiffs and other similarly situated SMs, and SMITS (all of whom were not

paid overtime) primarily performing manual and non-exempt duties.

57.     By underfunding the store labor budget, Defendant avoided paying any overtime

compensation to SMs, and SMITs for performing non-exempt activities over forty (40) hours a

workweek, which allowed Defendant to avoid paying additional wages (including overtime) to the non-exempt store-level employees.

58.     Defendant acted willfully and knew, by virtue of the fact that its Regional Managers (as its authorized agents) actually saw Plaintiffs and other similarly situated SMs, and SMITS perform primarily manual labor and non-exempt duties, that a result of the underfunded labor budgets was to limit the amount of money available to pay non-exempt employees to perform such work.

59.     Defendant also knew by virtue of its policies concerning scheduling and labor budgets that Plaintiffs and other similarly situated SMs, and SMITS regularly and customarily did not direct two or more employees, there being usually only a SM and an associate, SMIT or ISM scheduled to work most shifts.

60.     As an experienced and practical retailer operating hundreds of stores throughout the country, Defendant was aware or recklessly disregarded the fact that by underfunding the labor budgets for store locations, Plaintiffs and other similarly situated SMs and SMITs (a) did not customarily and regularly direct two or more employees and/or (b) were primarily performing non-exempt duties and not performing activities that would suffice to make their actual job duties comply with any FLSA or NYLL exemption. Inasmuch as Defendant is a substantial corporate entity aware of its obligations under the FLSA and NYLL, it, accordingly, acted willfully or recklessly in failing to classify Plaintiffs and other similarly situated SMs, and SMITs as non-exempt employees.

61.     Defendant's unlawful conduct as described above, was willful and/or in reckless disregard of the applicable wage and hour laws pursuant to Defendant's centralized, company-

wide policy, pattern, and/or practice of attempting to minimize labor costs by violating the FLSA and the NYLL.

62.     As part of its regular business practice, Defendant has intentionally, willfully and repeatedly engaged in a policy, pattern and/or practice of violating the FLSA and the NYLL with respect to Plaintiffs, the Collective Action members, the SMIT Collective Action Members, and the NY SM Class members. This policy, pattern and/or practice includes, but it is not limited to the foregoing knowledge of its obligations and the kind of work that Plaintiffs, the Collective Action members, the SMIT Collective Action Members, and the NY SM Class Members were and have been performing, and that, as a result, Defendant has been:

- willfully misclassifying Plaintiffs and other similarly situated SMs, and SMITs as exempt from the overtime requirements of the FLSA;

- willfully misclassifying NY Plaintiffs and other similarly situated SMs as exempt from the overtime requirements of the NYLL

- willfully failing to pay Plaintiffs and other similarly situated SMs and SMITs overtime wages for hours they worked in excess of 40 hours per week; and

- willfully failing to provide enough money in their store-level labor budgets for their non-exempt employees to perform their duties and responsibilities, forcing their exempt SMs and SMITs to perform such non-exempt tasks.

63.     Defendant's willful violations of the FLSA and the NYLL are further demonstrated by the fact that during the course of the FLSA Claims Period and NYLL Claims Period and continuing to the present, Defendant failed to maintain accurate and sufficient time records for Plaintiffs, the Collective Action Members, the SMIT Collective Action Members, and the NY SM Class Members. Defendant acted recklessly or in willful disregard of the FLSA

13

by instituting a policy and/or practice that did not allow Plaintiffs, the Collective Action

Members, the SMIT Collective Action Members, and the NY SM Class Members to record all

hours worked.

64.     Due to the foregoing, Defendant's failure to pay overtime wages for work

performed by Plaintiffs, the Collective Action Members, the SMIT Collective Action Members,

and the NY SM Class Members in excess of forty (40) hours per workweek was willful and has

been widespread, repeated and consistent.

65.      At all relevant times, Plaintiff Morse spent at least 75% or more of his time

performing the Associate-Level Tasks.

66.     At all relevant times at the Brooklyn store, Plaintiff Carroll spent at least 85-90%

or more of his time performing the Associate-Level Tasks.

67.     At all relevant times, Plaintiff Mason spent at least 90-95% or more of her time

performing the Associate-Level Tasks.

68.     At all relevant times, Plaintiff Ehigie spent at least 90-95% or more of his time

performing the Associate-Level Tasks.

69.     At all relevant times, during his tenure as a SMIT, Installation Sales Manager, and

Store Manager, Plaintiff Streeter spent at approximately 90-95% or more of his time performing

the Associate-Level Tasks.

70.     At all relevant times, during her tenure as a SMIT, Plaintiff Bodnar spent

approximately all of her time performing the Associate-Level Tasks.

71.     Absent holidays, sick days or vacation days, which Defendant's records can

confirm, each Plaintiff always worked more than 40 hours per week without receiving overtime.

14

72.     Defendant maintained a policy requiring all SMs to work at least 50 hours per week, absent holidays, sick days, vacations days or other unusual circumstances (e.g., protected leave, etc.).

73.     Defendant maintained a policy requiring all SMITs to work at least 50 hours per week, absent holidays, sick days, vacations days or other unusual circumstances (e.g., protected leave, etc.).

74.     Absent a holidays, sick days or vacation days, Plaintiff Morse always worked 55-60 hours per week. For example, Plaintiff Morse worked at least 68 hours during the workweek beginning December 4 through December 10 of 2016 (i.e., 8 hours (10:30am – 5:30pm) on Sunday December 4th; 12 hours (7:30am – 7:30pm) on Monday December 5th; 12 hours (7:30am – 7:30pm) on Tuesday December 6th ; 12 hours (7:30am – 7:30pm) on Thursday December 8th; 12 hours (7:30am – 7:30pm) on Friday December 9th; and 10 hours (8:00am – 6:00pm) on Saturday December 10th). Despite working in excess of forty (40) hours, Plaintiff Morse received no overtime, but only his salary, which was intended to compensate him for forty (40) hours of work.

75.     Absent a holidays, sick days or vacation days, Plaintiff Carroll always worked between 50 and 65 hours per week. He would work at least five days a week (but often 6 days), and would work all hours the store was open for a particular day plus 15-20 minutes before opening and 10-20 minutes after close. For example, at the Staten Island store where Plaintiff Carroll worked, the store would be open from: Monday 9am - 7pm; Tuesday 9am - 7pm; Wednesday 9am - 7pm; Thursday 9am - 7pm; Friday 9am - 7pm; Saturday 9am - 6pm; and Sunday 11am - 5pm. Despite working in excess of forty (40) hours, Plaintiff Carroll received no

overtime, but only his salary, which was intended to compensate him for forty (40) hours of work.

76.     Absent a holidays, sick days or vacation days, Plaintiff Mason always worked between 50 and 60 hours per week until on or before June 2017 when she, as a result of her health, insisted upon a reduced schedule. As a result, on or after June 2017, Plaintiff Mason regularly works 45 hours per week. For example, she worked the following schedule: (8/7/17, 8:30am – 8:15 pm; 8/8/17, 10:30am – 8:15 pm; 8/11/17, 8:30am – 7:00pm; 8/12/17, 9:00am – 6:00pm). Despite working in excess of forty (40) hours, Plaintiff Mason received no overtime, but only her salary, which was intended to compensate her for forty (40) hours of work.

77.     Absent a holidays, sick days or vacation days, Plaintiff Ehigie always worked on average approximately 60 hours per week. He would work at least five (5) days a week, but often six (6) days (and sometimes seven (7) days). Plaintiff Ehigie's typical schedule was from 7:00am or 7:30 am to 8:00pm at least five days per week. Despite working in excess of forty (40) hours, Plaintiff Ehigie received no overtime, but only his salary, which was intended to compensate him for forty (40) hours of work.

78.     Absent holidays, sick days or vacation days, Plaintiff Streeter always worked over 50 hours per week, but typically averaged 61 hours per week during his tenure as a SMIT. For example, a typical workweek for Plaintiff Streeter would involve the following: Tuesday (i.e., 12 hours (8:00 a.m. – 8:00 p.m.); Wednesday (i.e., 12 hours (8:00 a.m. – 8:00 p.m.); Thursday (i.e., 12 hours (8:00 a.m. – 8:00 p.m.); Friday (i.e., 12 hours (8:00 a.m. – 8:00 p.m.); Saturday (i.e., 13+ hours (8:30 or 8:45 a.m. – between 10:00 p.m. – 12:00 a.m.). Despite working in excess of forty (40) hours, Plaintiff Streeter received no overtime, but only his salary, which was intended to compensate him for forty (40) hours of work.

16

79.     Absent holidays, sick days or vacation days, Plaintiff Streeter always worked over 50 hours per week, but typically averaged 51.5 hours per week during his tenure as an Installation Sales Manager. For example, a typical workweek for Plaintiff Streeter would involve the following: Tuesday (i.e., 10 hours (9:00 a.m. - 7:00 p.m.); Wednesday (i.e., 10 hours (9:00 a.m. - 7:00 p.m.); Thursday (i.e., 10 hours (9:00 a.m. - 7:00 p.m.); Friday (i.e., 10 hours (9:00 a.m. - 7:00 p.m.); Saturday (i.e., 11.5 hours (8:30 a.m. –10:00 p.m.). Despite working in excess of forty (40) hours, Plaintiff Streeter received no overtime, but only his salary, which was intended to compensate him for forty (40) hours of work.

80.     Absent holidays, sick days or vacation days, Plaintiff Streeter always worked over 50 hours per week, but typically averaged 61 hours per week during his tenure as a SM. For example, a typical workweek for Plaintiff Streeter would involve the following: Tuesday (i.e., 12 hours (8:00 a.m. – 8:00 p.m.); Wednesday (i.e., 12 hours (8:00 a.m. – 8:00 p.m.); Thursday (i.e., 12 hours (8:00 a.m. – 8:00 p.m.); Friday (i.e., 12 hours (8:00 a.m. – 8:00 p.m.); Saturday (i.e., 13+ hours (8:30 or 8:45 a.m. – between 10:00 p.m. – 12:00 a.m.). Despite working in excess of forty (40) hours, Plaintiff Streeter received no overtime, but only his salary, which was intended to compensate him for forty (40) hours of work.

81.     Absent holidays, sick days or vacation days, Plaintiff Bodnar always worked over 50 hours per week, but typically averaged 60-64 hours per week during her tenure as a SMIT. There was one workweek during her tenure as a SMIT from on or about August 1, 2017 through October 18, 2017, where Plaintiff Bodnar worked open to close (i.e., 12 hours or more) for seven consecutive days. During this week, despite working no less than 84+ hours, Plaintiff Bodnar received no overtime, but only her salary, which was intended to compensate her for forty (40) hours of work.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

82.    Plaintiffs, on behalf of themselves, and the Collective Action Members, reallege and incorporate by reference paragraphs 1 through 49 as if they were set forth again herein.

83.    Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiffs seeks to prosecute their FLSA claims as a Collective Action on behalf of all current and former employees of the Defendant who from three years and 115 days from August 15, 2017 through the disposition of this action were SMs classified as exempt from overtime and have not received overtime pay when they worked more than forty (40) hours in a workweek

84.    Defendant is liable under the FLSA for, *inter alia*, failing to pay proper overtime wages to Plaintiffs and the Collective Action Members.

85.    There are many current and former Collective Action Members who have not been paid proper overtime wages in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to the Collective Action Members pursuant to 29 U.S.C. § 216(b).

86.    Thus, notice should be sent to the Collective Action Members pursuant to 29 U.S.C. § 216(b).

87.    These employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

## **FLSA SMIT COLLECTIVE ACTION ALLEGATIONS**

88.    Plaintiff Bodnar and Streeter, on behalf of themselves, and the SMIT Collective Action Members, realleges and incorporates by reference paragraphs 1 through 78 as if they were set forth again herein.

18

89.     Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiff Bodnar and Streeter seek to prosecute their FLSA claims as a Collective Action on behalf of all current and former employees of the Defendant who from three years and 115 days from August 15, 2017 through the disposition of this action were SMITs classified as exempt from overtime and have not received overtime pay when they worked more than forty (40) hours in a workweek

90.     Defendant is liable under the FLSA for, *inter alia*, failing to pay proper overtime wages to Plaintiff Bodnar and Streeter and the SMIT Collective Action Members.

91.     There are many current and former SMIT Collective Action Members who have not been paid proper overtime wages in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to the SMIT Collective Action Members pursuant to 29 U.S.C. § 216(b).

92.     Thus, notice should be sent to the SMIT Collective Action Members pursuant to 29 U.S.C. § 216(b).

93.     These employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

## NY CLASS ACTION ALLEGATIONS

94.     NY Plaintiffs reallege and incorporate by reference paragraphs 1 through 86as if they were set forth again herein.

95.     NY Plaintiffs bring NYLL claims as a Class Action on behalf of themselves and all current and former employees of the Defendant who from six (6) years and 115 days from August 15, 2017 through the disposition of this action were SMs in New York that (1) were/are classified as exempt from overtime and have not received overtime pay when they worked more than forty (40) hours in a workweek in violation of the NYLL; (2) did not receive the required

Notice and Acknowledgment of Pay form in violation of NYLL §195; and/or (3) did not receive accurate wage statements in violation of NYLL § 195 both because it did not set forth their accurate wages and/or failed to be paid on a weekly basis (as required for manual workers) (collectively, the "NY SM Class").

96.     The persons in the NY SM Class are so numerous that joinder of them all is impracticable. The precise number of such persons are known to Defendant, are readily ascertainable, and can be easily determined from its records.

97.     Defendant has acted or has refused to act on grounds generally applicable to the NY SM Class, thereby making appropriate final injunctive relief or declaratory relief with respect to such classes as a whole.

98.     There are questions of law and fact common to the NY SM Class that predominate over any questions solely affecting individual members of the NY SM Class, including but not limited to:

- whether Defendant has failed and/or refused to pay the NY SM Class an overtime premium for the hours worked in excess of 40 hours per workweek within the meaning of NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

- whether Defendant willfully failed to comply with the notice and recordkeeping requirements of NYLL §§ 198(1)(b) and 198(1)(d);

- whether Defendant was required to pay the NY SM Class members on a weekly basis;

- the nature and extent of Class-wide injury;

- whether the Defendant has a policy of misclassifying NY SM Class as exempt from coverage of the overtime provisions of the NYLL;

- whether Defendant's policy of misclassifying NY SM Class was done willfully;

- whether Defendant can prove that its unlawful policies were implemented in good faith.

- whether Defendant provided accurate and timely wage statements, as required by the NYLL §§ 191, 195.

99.   The claims of NY Plaintiffs as class representatives for the NY SM Class are typical of the claims of the members of their class.

100.   Class adjudication of the NY SM Class are appropriate because prosecution of separate actions by class members could result in inconsistent adjudications establishing incompatible pay practices and judgments.

101.   Class adjudication is superior to all other methods to resolve the disputes for the NY SM Class over whether Defendant has violated the overtime wage requirements, notice requirements, and wage statement requirements set forth by the NYLL and is necessary in order to fairly and completely litigate the dispute.

102.   NY Plaintiffs, as class representatives, and the undersigned counsel will fairly and adequately protect the interests of the NY SM Class.

**FIRST CAUSE OF ACTION**
**(FLSA: UNPAID OVERTIME WAGES)**

103.   Plaintiffs, on behalf of themselves, the Collective Action Members, and the SMIT Collective Action Members reallege and incorporate by reference paragraphs 1 through 102 as if they were set forth again herein.

21

104.    Defendant employed Plaintiffs and employed or continues to employ, each member of the Collective Action Members and the SMIT Collective Action Members within the meaning of the FLSA.

105.    Defendant has engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

106.    Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b). *See* attached.

107.    The overtime wage provisions set forth in 29 U.S.C. §§ 201, *et seq*., apply to Defendant.

108.    Defendant had a policy and practice of refusing to pay overtime compensation to their SMs and SMITs for hours worked in excess of forty (40) hours per workweek.

109.    Defendant had a policy and practice of refusing to pay overtime compensation to Plaintiff Streeter, during his tenure as an Installation Sales Manager, when he worked in excess of forty (40) hours per workweek.

110.    As a result of Defendant's willful failure to compensate Plaintiffs, the members of the Collective Action Members, and the SMIT Collective Action Members at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant has violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

111.    As a result of Defendant's willful failure to record, report, credit and/or compensate Plaintiffs, the Collective Action Members, and the SMIT Collective Action Members, Defendant has failed to make, keep, and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of

22

employment, in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

112.   As a result of Defendant's policy and practice of minimizing labor costs by underfunding the labor budgets for their stores, Defendant knew or recklessly disregarded the fact that Plaintiffs, the Collective Action Members, and the SMIT Collective Action Members were primarily performing manual labor and non-exempt tasks.

113.   Defendant knew and/or showed reckless disregard, that its conduct was prohibited by 29 U.S.C. § 255(a), as demonstrated by Defendant's: (1) failure to provide sufficient labor budget funds; (2) failure to take into account the impact of the underfunded labor budgets on the job duties of Plaintiffs, the Collective Action Members, and the SMIT Collective Action Members; (3) actual knowledge, through the Regional Directors/Managers that the primary duties of Plaintiffs, the Collective Action Members, and the SMIT Collective Action Members was manual labor and other non-exempt tasks; (4) failure to perform a person-by-person analysis of Plaintiffs', the Collective Action Members', and the SMIT Collective Action Members' job duties to ensure that they were performing exempt job duties; (5) instituting a policy and practice that did not allow Plaintiffs, the Collective Action Members, and the SMIT Collective Action Members to record all hours worked; and (6) failure to post or keep posted a notice explaining the minimum wage and overtime wage requirements.

114.   As a result of Defendant's FLSA violations, Plaintiffs, the Collective Action Members, and the SMIT Collective Action Members are entitled to recover from Defendant (a) overtime compensation; (b) an additional, equal amount as liquidated damages for Defendant's willful violations of the FLSA; and, (c) reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

115.    Because Defendant's violations of the FLSA lacked good faith, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

116.    Because Defendant entered into a tolling agreement, any statutory period involved in this matter for the Collective Action Members must be extended by 155 days to account for the period of time the tolling agreement was in effect (i.e., April 14, 2017 through and including August 7, 2017).

117.    Because Defendant entered into a tolling agreement, any statutory period involved in this matter for the SMIT Collective Members must be extended pursuant to such tolling agreement and any amendments thereto, which are hereby incorporated by reference.

### SECOND CAUSE OF ACTION
### (NYLL: UNPAID OVERTIME WAGES)

118.    NY Plaintiffs, on behalf of themselves and the NY SM Class Members, reallege and incorporate by reference paragraphs 1 through 117 as if they were set forth again herein.

119.    Defendant employed NY Plaintiffs and employed or continues to employ all employees within New York, including the NY SM Class, within the meaning of the NYLL.

120.    Defendant has engaged in a widespread pattern and practice of violating the overtime wage provisions of Article 19 of the NYLL and its supporting regulations, as detailed in this Complaint.

121.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant.

122.    Defendant has failed to pay NY Plaintiffs and the NY SM Class the overtime wages to which they are entitled under the NYLL.

123.    By virtue of Defendant's failure to pay NY Plaintiffs and the NY SM Class overtime wages for all hours worked in excess of forty (40) hours per week, Defendant has

willfully violated NYLL Article 19, §§ 650 *et seq*., and the supporting New York State
Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R.,
Part 142.

124.   As a result of Defendant's policy and/or practice to minimize labor costs by
providing their stores with an underfunded labor budget, Defendant willfully caused NY
Plaintiffs, the NY SM Class to perform primarily manual labor and non-exempt tasks.

125.   Defendant knew and/or showed reckless disregard whether their conduct was
prohibited by the NYLL, as demonstrated by Defendant's: (1) failure to provide enough labor
budget funds; (2) failure to take into account the impact of the limited labor budgets on the job
duties of NY Plaintiffs and the NY SM Class; (3) Defendant's actual knowledge, through the
SM's supervisors that the primary duties of NY Plaintiffs and the NY SM Class were manual
labor and other non-exempt tasks; (4) Defendant's failure to perform a person-by-person analysis
of NY Plaintiffs and the NY SM Class members' job duties to ensure that they were primarily
performing exempt job duties; (5) Defendant's failure to conduct an investigation and/or task
study to determine whether NY Plaintiffs' and the NY SM Class members' primarily performed
exempt job duties; and (6) Defendant's failure to post or keep posted a notice explaining the
minimum wage and overtime wage requirements,

126.   As a result of Defendant's' willful violations of the NYLL, NY Plaintiffs and the
NY SM Class members are entitled to recover from Defendant their unpaid overtime wages,
reasonable attorneys' fees and costs of the action, liquidated damages, and prejudgment and
post-judgment interest.

127.   Defendant's NYLL violations have caused NY Plaintiffs and the NY SM Class
Members irreparable harm for which there is no adequate remedy at law.

## THIRD CAUSE OF ACTION
## (NYLL: NON-COMPLIANCE WITH NOTICE/ RECORDKEEPING REQUIREMENTS)

128.   NY Plaintiffs, on behalf of themselves, and the NY SM Class realleges and incorporates by reference paragraphs 1 through 127 as if they were set forth again herein.

129.   NYLL § 195(1)(a) requires, among other things, that Defendant provide each employee with a relevant information concerning their compensation, Defendant's contact information, and an affirmation that the notice is in the employee's primary language.

130.   NYLL § 195(4) requires, among other things, that Defendant establish and maintain, for at least six years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

131.   NYLL § 661 requires that Defendant establish and maintain, *inter alia,* true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

132.   12 N.Y.C.R.R. § 142-2.6 requires Defendant to establish, maintain and preserve, for six years, weekly payroll records showing, *inter alia*, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

133.   NYLL § 195(3) requires that Defendant furnish each of its employees with a statement with each payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

134.   N.Y.C.R.R. § 142-2.7 requires Defendant to furnish each employee with a statement with each payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

135.   Defendant did not provide NY Plaintiffs and the NY SM Class Members with the requisite notices and statements described above in the foregoing paragraphs.

136.   In particular, NY Plaintiffs and NY SM Class Members received incorrect wage statements in violation of the NYLL.

137.   NY Plaintiffs and NY SM Class Members did not receive the correct New York Labor Law Notice and Acknowledgment of Pay Form indicating that they would receive overtime for hours worked over forty in a workweek.  As a result, Defendant failed to comply with New York Labor Law § 195.

138.   As a result of Defendant's failure to comply with the notice and record keeping requirements of NYLL §§ 195(1)(a) and 195(3), Defendant's New York employees, including NY Plaintiffs and the NY SM Class Members, are entitled to recover from Defendant all penalties as provided by NYLL § 198(1)b and 198(1)d.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the Collective Action Members, the SMIT Collective Action Members, and NY SM Class Members are entitled to and pray for the following relief:

- Designation of this action as a FLSA collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to members of such collectives, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling the statute of limitations;

- A declaratory judgment that Defendant's practices complained of herein are unlawful under the FLSA and the New York Labor Law;

- An award of unpaid wages for all hours worked in excess of forty (40) in a workweek at a rate of one and one-half times the regular rate of pay under the FLSA and/or the NYLL;

- An award of liquidated damages as a result of Defendant's willful failure to compensate Plaintiffs and the Collective Action Members for one and one-half the regular rate of pay for hours worked in excess of forty in a work week pursuant to the FLSA;

- An award of liquidated damages as a result of Defendant's willful failure to compensate NY Plaintiffs and the NY SM Class for one and one-half the regular rate of pay for hours worked in excess of forty (40) in a work week pursuant to the NYLL;

- Certification of the claims brought against the Defendant in this case under the NYLL, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

- Designation of NY Plaintiffs as class representatives of the NY SM Class and counsel of record as Class Counsel;

- Designation of Plaintiffs as representative of the Collective Action members, and counsel of record as Class Counsel;

- Designation of Plaintiff Bodnar and Streeter as representative of the SMIT Collective Action members, and counsel of record as Class Counsel;

- Penalties under NYLL §§ 198(1)(b) and 198(1)(d) for the Defendant's failure to comply with the notice and record keeping requirements of NYLL §§ 195(1) and 195(3);

- Injunctive relief, pursuant to the NYLL, enjoining Defendant from engaging in the practices alleged herein.

- An award of pre-judgment and post-judgment interest;

- An award of costs and expenses of this action together with reasonable attorneys' and expert fees and an award of service payments to Plaintiffs; and

- Such other and further relief as this Court deems just and proper.

Dated:  New York, New York

      July 16, 2021

                        Stevenson Marino LLP
                        Attorneys for Plaintiffs


                        By:  */s/ Justin R. Marino*
                        Justin R. Marino
                        75 Maiden Lane, Suite 402
                        New York, New York 10038
                        Tel: (212) 939-7228
                        Fax: (212) 531-6129
                        Email: jmarino@stevensonmarino.com