UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ASHLEIGH MASON, DAN MORSE, RYAN
CARROLL, OSAGIE EHIGIE, NEREDA
BODNAR, and TRAVIS STREETER, on behalf of
themselves and all others similarly situated,

                Plaintiffs,

          -against-

LUMBER LIQUIDATORS, INC.,

                Defendant.

Civ. No.: 17-cv-04780 (MKB)(RLM)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, SERVICE AWARDS,
AND ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

I.  FACTUAL AND PROCEDURAL BACKGROUND .................................................... 2

    A.  FACTUAL ALLEGATIONS ............................................................................ 2

    B.  OVERVIEW OF INVESTIGATION, LITIGATION, AND SETTLEMENT NEGOTIATIONS ........ 2

II.  SUMMARY OF THE SETTLEMENT TERMS ......................................................... 5

    A.  THE SETTLEMENT FUND AND ELIGIBLE EMPLOYEES .................................. 5

    B.  NOTICE AND DISTRIBUTION PROCESS ...................................................... 6

    C.  ALLOCATION FORMULA .......................................................................... 7

        1.  *KRAMER* PLAINTIFFS .................................................................... 7

        2.  ELIGIBLE SETTLEMENT PARTICIPANTS ........................................... 8

    D.  RELEASES ............................................................................................. 9

    E.  SERVICE AWARDS .................................................................................. 9

    F.  SETTLEMENT ADMINISTRATION ............................................................. 10

    G.  ATTORNEYS' FEES AND COSTS .............................................................. 10

III.  ARGUMENT .............................................................................................. 10

    A.  A ONE-STEP APPROVAL PROCESS IS STANDARD FOR FLSA SETTLEMENTS ............. 10

    B.  THE SETTLEMENT IS FAIR AND SHOULD BE APPROVED ............................. 11

    C.  THE SERVICE AWARDS SHOULD BE APPROVED AS FAIR AND REASONABLE ........... 15

IV.  THE COURT SHOULD APPROVE PLAINTIFFS' ATTORNEYS' FEES AND COSTS AS FAIR AND REASONABLE ........................................................................ 20

    A.  THE COURT SHOULD AWARD ATTORNEYS' FEES AS A PERCENTAGE OF THE FUND. ........................................................................................ 20

    B.  FEES SHOULD "BE AWARDED ON THE BASIS OF THE TOTAL FUNDS MADE AVAILABLE WHETHER CLAIMED OR NOT." ................................... 22

    C.    ANALYSIS OF THE MARKET FOR LEGAL SERVICES SUPPORTS PLAINTIFFS'
          REQUEST ................................................................................................................ 25

    D.    PLAINTIFFS' REQUESTED FEE AWARD IS REASONABLE ........................................... 26

    E.    PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF COSTS ...................................... 28

CONCLUSION ........................................................................................................................ 28

## TABLE OF AUTHORITIES

CASES                                                              PAGE(S)

*Alleyne v. Time Moving & Storage Inc.*,
   264 F.R.D. 41, 59 (E.D.N.Y. 2010) ...........................................................................23, 24, 26

*Alli v. Bos. Mkt. Corp.*,
   No. 10 Civ. 4, 2011 WL 6156938 (D. Conn. Dec. 9, 2011) ...................................14

*Aros v. United Rentals, Inc.*,
   No. 10 Civ. 73, 2012 WL 3060470 (D. Conn. July 26, 2012)..............................10, 11, 15, 23

*Awan v. Durrani*,
   No. 14 Civ. 4562, 2015 WL 4000139 (E.D.N.Y. July 1, 2015) .............................14

*Banford v. Entergy Nuclear Operations, Inc.*,
   649 F. App'x 89 (2d Cir. 2016) ...............................................................................13

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 293 F.R.D. 467 (S.D.N.Y. 2013) ...........................................................11, 26, 28

*Bodon v. Domino's Pizza, LLC*,
   No. 09 Civ. 2941, 2015 WL 3889577 (E.D.N.Y. June 4, 2015)............................24

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)............................................................................................20, 22, 24

*Bozak v. FedEx Ground Package Sys., Inc.*,
   No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014).........................10, 15

*Briggs v. PNC Fin. Servs. Grp., Inc.*,
   No. 15 Civ. 10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016)....................10, 25

*Campos v. Goode*,
   No. 10 Civ. 224, 2011 WL 9530385 (S.D.N.Y. Mar. 4, 2011) .............................12

*Capilupi v. People's United Fin., Inc.*,
   No. 15 Civ. 5247, 2018 WL 4693588 (E.D.N.Y. Sept. 27, 2018)........................24

*Capsolas v. Pasta Res., Inc.*,
   No. 10 Civ. 5595, 2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ............................11

*Castillo v. Noodles & Co.*,
   No. 16 Civ. 3036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) ...........................25

*Ceka v. PBM/CMSI Inc.*,
   No. 12 Civ. 1711, 2014 WL 6812127 (S.D.N.Y. Dec. 2, 2014)............................18

*Chavarria v. N.Y. Airport Serv., LLC*,
   875 F. Supp. 2d 164 (E.D.N.Y. 2012) ...................................................................................26

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199 (2d Cir. 2015)..........................................................................................11, 12

*Cohan v. Columbia Sussex Mgmt., LLC*,
   No. 12 Civ. 3203, 2018 WL 4861391 (E.D.N.Y. Sept. 28, 2018)..................................23, 26

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014)...................................................................................20

*DeHoll v. Eckerd Corp.*,
   No. 18 Civ. 280, 2019 WL 3337121 (M.D.N.C. July 25, 2019) ..........................................10

*DeLeon v. Wells Fargo Bank, N.A.*,
   No. 12 Civ. 4494, 2015 WL 2255394 (S.D.N.Y. May 7, 2015)............................................18

*Diaz v. E. Locating Serv. Inc.*,
   10 Civ. 4082, 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010) ......................................28

*Espenscheid v. DirectSat USA, LLC*,
   688 F.3d 872 (7th Cir. 2012) ...............................................................................................17

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
   104 F. Supp. 3d 290 (E.D.N.Y. 2015) .................................................................................11

*Florin v. Nationsbank of Ga., N.A.*,
   34 F.3d 560 (7th Cir. 1994) .................................................................................................20

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005).................................................................................. *passim*

*Fujiwara v. Sushi Yasuda Ltd.*,
   58 F. Supp. 3d 424 (S.D.N.Y. 2014)....................................................................................15

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013)...............................................................................................................11

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)............................................................................................22, 27

*Guippone v. BH S & B Holdings, LLC*,
   No. 09 Civ. 1029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ...................................16, 17

*Henry v. Little Mint, Inc.*,
   No. 12 Civ. 3996, 2014 WL 2199427 (S.D.N.Y. May 23, 2014)..........................................14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003)....................................................................28

*Kirchoff v. Flynn*,
   786 F. 2d 320 (7th Cir. 1986) ...............................................................................25

*Knox v. Jones Grp.*,
   No. 15 Civ. 1738, 2017 WL 3834929 (S.D. Ind. Aug. 31, 2017)...........................10

*Kramer v. Lumber Liquidators, Inc.*,
   No. 34-2017-00222434 (Sacramento County Superior Court)..................................4

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
   No. 17 Civ. 10219, 2017 WL 6460244 (D. Mass. June 8, 2017) ...........................10

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................21

*Lovaglio v. W & E Hosp. Inc.*,
   No. 10 Civ. 7351, 2012 WL 2775019 (S.D.N.Y. July 6, 2012) .............................19

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ............................................................................11

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007)..................................................................................22

*McEarchen v. Urban Outfitters, Inc.*,
   No. 13 Civ. 3569, 2017 WL 3912345 (E.D.N.Y. Sept. 6, 2017)...........................13

*McKenna v. Champion Int'l Corp.*,
   747 F.2d 1211 (8th Cir. 1984) ..............................................................................11

*Medley v. Am. Cancer Soc'y*,
   No. 10 Civ. 3214, 2010 WL 3000028 (S.D.N.Y. July 23, 2010) ...........................11

*Morano v. Intercontinental Capital Grp., Inc.*,
   No. 10 Civ. 2192, 2012 WL 2952893 (S.D.N.Y July 17, 2012) ...........................13

*Park v. FDM Grp., Inc.*,
   No. 16 Civ. 1520, 2021 WL 227339 (S.D.N.Y. Jan. 22, 2021)..............................23

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
   No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ...................16, 17, 19

*In re Penthouse Exec. Club Comp. Litig.*,
   No. 10 Civ. 1145, 2014 WL 185628 (S.D.N.Y. Jan. 14, 2014)..............................28

*Puglisi v. TD Bank, N.A.*,
   No. 13 Civ. 637, 2015 WL 4608655 (E.D.N.Y. July 30, 2015) ............................................19

*Reyes v. Altamarea Grp., LLC*,
   No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ..............................11, 16, 19

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3rd Cir. 2005) ..............................................................................................20

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997).................................................................................16, 17

*Sewell v. Bovis Lend Lease, Inc.*,
   No. 09 Civ 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)..................................... *passim*

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
   659 F.3d 234 (2d Cir. 2011)...............................................................................................17

*Skelton v. Gen. Motors Corp.*,
   860 F.2d 250 (7th Cir. 1988) ..............................................................................................20

*Solis v. Orthonet LLC*,
   No. 19 Civ. 4678, 2021 WL 2678651 (S.D.N.Y. June 30, 2021)..........................................26

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................................25

*Sukhnandan v. Royal Health Care of Long Island, LLC*,
   No. 12 Civ. 4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) ................................... 19, 20

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999)....................................................................................25

*In re Thirteen Appeals*,
   56 F.3d at 307 ...................................................................................................................21

*Torres v. Gristede's Operating Corp.*,
   No. 04 Civ. 3316, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010)..........................................12

*Toure v. Amerigroup Corp.*,
   No. 10 Civ. 5391 RLM, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) ..................................18

*Wal-Mart Stores v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...............................................................................20, 21, 22, 27

*Weston v. TechSol, LLC*,
   No. 17 Civ. 141, 2018 WL 4693527 (E.D.N.Y. Sept. 26, 2018)................................10, 15, 24

vii

*Zink v. First Niagara Bank,*
    No. 13 Civ. 1076, 2016 WL 7473278 (W.D.N.Y. Dec. 29, 2016) .........................................23

*In re Zyprexa Prods. Liab. Litig.,*
    594 F.3d 113 (2d Cir. 2010)..................................................................................................20

**STATUTES**

Fair Labor Standards Act ...................................................................................... *passim*

New York Labor Law ............................................................................................................2

**OTHER AUTHORITIES**

Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive*
    *Payments to Named Plaintiffs in Employment Discrimination Class Actions*,
    10 Emp. Rts. & Emp. Pol'y J. 395 (2006) ...............................................................16

Federal Rule of Civil Produced 30(b)(6) ........................................................................4

## INTRODUCTION

Plaintiffs Ashleigh Mason, Dan Morse, Ryan Carroll, Osagie Ehigie, and Nereda Bodnar (individually and as substitute for the deceased Travis Streeter) (collectively, the "Plaintiffs") and Defendant Lumber Liquidators, Inc. have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis for $7,000,000.  The settlement, which followed a thorough investigation and years of contested litigation, including robust formal discovery and significant motion practice, satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona fide dispute, was reached after contested litigation, was the result of arm's-length settlement negotiations assisted by a private mediator, and provides good value to the workers whom it will benefit.

Accordingly, Plaintiffs respectfully request that the Court issue an order: (1) approving the $7,000,000 settlement set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement") attached as Exhibit 1 to the Declaration of Justin M. Swartz ("Swartz Decl.")[1]; (2) approving the proposed Notices of Settlement ("Settlement Notices") and directing their distribution; (3) approving Service Awards to Plaintiffs; (4) approving Plaintiffs' request for one-third of the settlement for attorneys' fees plus reimbursement of costs and expenses; (5) approving the Settlement Administrator's fees and costs; (6) incorporating the terms of the Settlement Agreement; (7) dismissing this case without prejudice, with leave to reinstate on or before 180 days after the first Settlement Notices are sent, and in the event a motion to reinstate is not filed within that period, deeming the case dismissed with prejudice without further order of the Court; and (8) retaining jurisdiction to enforce the Settlement Agreement.

---

[1]     Unless otherwise indicated, all exhibits are attached to the Swartz Declaration, and all capitalized terms have the definitions set forth in the Settlement Agreement.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

A.     **Factual Allegations.**

Lumber Liquidators, a specialty chain retailer of hardwood flooring, operates over 400 stores throughout the United States.  *See* ECF No. 232 (Second Amended Complaint ("Am. Compl.")) ¶ 10; ECF No. 70 (Memorandum and Order Granting § 216(b) Notice ("§ 216(b) Order")), at 2.  Plaintiffs Ashleigh Mason, Dan Morse, Ryan Carroll, Osagie Ehigie, and Nereda Bodnar, as well as the deceased Travis Streeter, worked as exempt-classified Store Managers ("SMs") and/or Store Managers in Training ("SMITs") at Lumber Liquidators.  *See* Am. Compl. ¶¶ 20-44; ECF No. 42-20 (Declaration of Nereda Bodnar) ¶ 1.

Plaintiffs allege that Lumber Liquidators violated the Fair Labor Standards Act ("FLSA") by improperly classifying them and other SMs and SMITs as exempt from federal overtime requirements and failing to pay them overtime wages.  *See* Am. Compl. ¶ 62.  Plaintiffs Mason, Morse, Carroll, and Ehigie also allege parallel and derivative claims on behalf of New York SMs under the New York Labor Law ("NYLL").  *See id.* ¶¶ 118-138.  Lumber Liquidators denies these allegations.  *See generally* ECF No. 18 (Answer).

B.     **Overview of Investigation, Litigation, and Settlement Negotiations.**

Before initiating this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses and conducted in-depth interviews of multiple SMs and SMITs.  Swartz Decl. ¶ 13.  Plaintiffs' Counsel focused their investigation and legal research on the merits of potential class and collective action members' claims, their damages, and the propriety of class and collective action.  *Id.*

On April 6, 2017, Plaintiffs contacted Lumber Liquidators to invite them to explore pre-litigation resolution of the claims of SMs and SMITs.  *Id.* ¶ 14.  Lumber Liquidators agreed to enter into a tolling agreement for the claims of SMs but was unable to commit to mediation.  *Id.*

2

As a result, on August 15, 2017, Plaintiffs filed a class and collective action complaint on behalf of themselves and other SMs.  ECF No. 1; Swartz Decl. ¶ 15.  On December 4, 2017, Plaintiffs amended the complaint to add claims on behalf of a collective of SMITs.[2]  ECF No. 16. Following an initial conference hearing, the parties participated in a mediation before Jonathan Trafimow on August 6, 2018 but were unable to resolve the case.  ECF No. 35; Swartz Decl. ¶ 15.

On November 2, 2018, Plaintiffs moved for Court-authorized notice to issue to SMs and SMITs across the country, ECF No. 41, which Defendant opposed, ECF No. 57.  At that time, nearly two dozen Plaintiffs and opt-ins had joined the Action.  Swartz Decl. ¶ 18.  The Magistrate Judge granted the motion on May 13, 2019, conditionally certifying two nationwide collectives: (1) SMs who worked for Lumber Liquidators from June 11, 2014 to present in a store that generated less than $5 million in annual revenue during that period; and (2) SMITs who worked for Lumber Liquidators between November 22, 2014 and September 24, 2018. ECF No. 70, at 34, 40-41.  The Court affirmed the order.  ECF No. 150.  Of the approximately 269 SMs and SMITs who submitted consent forms to join this action, Lumber Liquidators asserts that: (1) the claims of 57 of them who were class members in a now-settled California lawsuit (hereinafter, "*Kramer* Plaintiffs"), *Kramer v. Lumber Liquidators, Inc.*, No. 34-2017-00222434 (Sacramento County Superior Court), are barred through September 19, 2019 because

---

[2]     The original tolling agreements for SMs and SMITs were extended by supplemental agreement.  Under those and subsequent tolling agreements, the claims of the SM collective were extended by an additional 582 days (i.e., for the periods between April 14, 2017 to November 20, 2017; January 16, 2018 to October 27, 2018; and October 28, 2018 to January 14, 2019), and the SMIT collective claims were tolled for 418 days (i.e., for the periods between September 25, 2017 to November 20, 2017; January 16, 2018 to October 27, 2018; and October 28, 2018 to January 14, 2019).  Swartz Decl. ¶ 16.

of the *Kramer* release; and (2) the claims of 23 of them are subject to arbitration.[3]  ECF No. 220-1, at 2.

     In addition to motion practice, the parties have engaged in extensive formal discovery. Swartz Decl. ¶ 19.  Plaintiffs, for example, served 14 sets of requests for production of documents, 3 sets of interrogatories, and 5 sets of requests for admissions.[4]  *Id.*  In response to these discovery requests, Lumber Liquidators produced hundreds of thousands of pages of documents, including the opt-ins' pay and store data, job descriptions, corporate guidelines and policies, training materials, budget reports, and personnel files.[5]  *Id.* ¶ 20.  The parties also agreed upon a detailed discovery plan, ECF No. 182, and began discussing Rule 30(b)(6) deposition dates after Plaintiffs served and amended a Rule 30(b)(6) deposition notice, *id.*

     In October 2020, while additional written discovery and depositions were looming, the parties agreed to mediate before Martin Scheinman, a highly regarded and experienced wage-and-hour mediator.  *Id.* ¶ 22; *see* ECF No. 220.  The parties therefore jointly requested a stay of the litigation on December 28, 2020.  ECF No. 220.  Originally scheduled for January 13, 2021, the mediation was continued to April 5, 2021.  ECF No. 223.  In advance of mediation,

---

[3]    On July 2, 2020, Lumber Liquidators moved to dismiss the claims of the *Kramer* Plaintiffs through September 19, 2019.  ECF No. 201.  Plaintiffs opposed on the basis that the *Kramer* Plaintiffs had released only California state law claims.  ECF No. 202.  The Magistrate Judge issued a Report and Recommendation recommending that Defendant's motion be granted, and Plaintiffs intended to file objections to the R&R.  ECF No. 221; *see also* ECF No. 223, at 2. In light of the parties' settlement discussions, Defendant's motion to dismiss was removed from the motion calendar without prejudice.  February 15, 2021 Order.

[4]    Plaintiffs also issued subpoenas for third-parties and obtained declarations from former managers of Lumber Liquidators, which they intended to use in support of their motion for class certification.  Swartz Decl. ¶ 19.

[5]    Plaintiffs' Counsel also separately obtained documents, including job descriptions and job openings, by searching job listings and Defendant's website.  Swartz Decl. ¶ 21.  It was through these efforts that Plaintiffs first learned that Defendant reclassified the SMIT position and, at least at some locations, the SM position by calling it a Sales Manager.  *Id.*

Defendant produced data to allow Plaintiffs to calculate damages, including data showing weeks worked and detailed pay data for collective members and putative class members.  Swartz Decl. ¶ 23.  Plaintiffs' Counsel analyzed this data and constructed a damages model.  *Id.*  The parties submitted mediation briefs setting forth their respective positions as to liability and damages.  *Id.*

Following two full-day mediation sessions on April 5 and April 16, 2021, the parties reached an agreement in principle on the material terms of a settlement and executed a term sheet.  *Id.* ¶ 24; *see also* ECF No. 226.  The parties then spent over two months negotiating and finalizing the terms of the full Settlement Agreement, which they executed in July 2021.  Swartz Decl. ¶ 24; *see also* Ex. 1 (Settlement Agreement).

## II.    SUMMARY OF THE SETTLEMENT TERMS

### A.    The Settlement Fund and Eligible Employees.

The Settlement Agreement establishes a Gross Settlement Amount of $7,000,000.00 to settle claims against Lumber Liquidators.  Ex. 1 (Settlement Agreement) §§ 1.12, 3.1(A).  The Gross Settlement Amount covers individual Settlement Amounts to Eligible Settlement Participants, the costs of settlement administration, any Court-approved Service Awards, any Court-approved attorneys' fees and costs, and Plaintiffs' share of all applicable employment taxes.  *See id.* §§ 3.1(A), 3.4(D)(3).

Eligible Settlement Participants are the: (1) approximately 269 current and former SMs and SMITs who have already filed a Consent to Join form in this action; and (2) approximately 53 individuals who worked for Lumber Liquidators in New York State as SMs and SMITs at any time between from April 22, 2011 through the present and who have not previously filed a Consent to Join form in this action ("New York Non Opt-Ins").  *Id.* § 1.10.

### B.    Notice and Distribution Process.

Within 14 days of the Court's approval, Lumber Liquidators will provide the Settlement Administrator and Plaintiffs' Counsel with a list containing all Eligible Settlement Participants' names, last known addresses, last known telephone numbers, Social Security numbers, and dates of employment during the Relevant Period. *Id.* § 2.7. (Plaintiffs' Counsel will update this contact information if applicable based on their existing records. *Id.* § 2.8.) In addition, Defendant will provide the Settlement Administrator with the average annual SM or SMIT salary and weeks worked during the Relevant Periods for each year in which the Eligible Settlement Participant worked as a SM or SMIT. *Id.*

The parties negotiated a distribution process with *no* barriers to participation. The Settlement Administrator will mail Settlement Notices enclosing Settlement Checks to all Eligible Settlement Participants no later than 21 days after the Effective Date. *Id.* §§ 2.9; *see id.* at Exs. B and C (Settlement Notices). The proposed Settlement Notice for New York Non Opt-Ins will inform them of the nature of the dispute, the terms of the settlement, the amount of their Settlement Check, the scope of the release, and their right to participate or not. *Id.* Ex. B (Notice of Settlement and Opportunity to Join Collective Action (for New York Non Opt-Ins)). The proposed Settlement Notice for collective members who have already filed a Consent to Join form will inform them of the nature of the dispute, the terms of the settlement, the amount of their Settlement Check, and the scope of the release. *Id.* Ex. C (Notice of Settlement (for Opt-Ins)). There is no claims process. The Settlement Administrator will take all reasonable steps to obtain the correct address of any Eligible Settlement Participant for whom the Settlement Notice is returned as undeliverable and will attempt re-mailings in the event better address information is obtained. *Id.* § 2.10.

Plaintiffs will have 180 days after the initial mailing or subsequent re-mailing of their Settlement Check to sign and cash the Settlement Check.  *Id.* § 1.1.  If any Eligible Settlement Participant has not cashed their checks within 90 days after it was mailed, the Settlement Administrator will mail a postcard to those individuals that inquires whether they received their Settlement Check and reminds them of the check cashing deadline.  *Id.* § 2.9.  For a 30-day period after the close of the check negotiation period, an Eligible Settlement Participant may seek reissuance of a Settlement Check, which Defendant shall approve for good cause shown. *Id.* § 2.11.  Unclaimed funds will be returned to Defendant 75 days after the Acceptance Period. *Id.* § 3.1(D)

### C.    Allocation Formula.

Eligible Settlement Participants will receive a Settlement Amount pursuant to an allocation formula based on their job title, the number of weeks they worked as a SM or SMIT during the Relevant Period, and whether they were a class member in the *Kramer* litigation, as set forth in the Settlement Agreement.  *Id*. § 3.4.  For tax purposes, 25% of each Eligible Settlement Participant's Settlement Amount will be treated as back wages and 75% will be treated as non-wage relief to compensate for liquidated damages.  *Id.* § 3.4(D)(i).  The components of the Settlement Amounts are described below:

### 1.    *Kramer* Plaintiffs.

A portion of the Net Settlement Fund[6] in the amount of $14,250 ("*Kramer* Fund"), will be allocated to the *Kramer* Plaintiffs in exchange for their release of their wage-related claims, including, but not limited to, unpaid wages, statutory penalties, liquidated damages, attorneys'

---

[6]    The Net Settlement Fund is the remainder of the Gross Settlement Amount after deductions for Court-approved: (i) Settlement Administration fees and costs; (ii) Plaintiffs' Counsel's attorneys' fees and costs; (iii) Service Awards to Plaintiffs; and (iv) any other Court-approved fees and costs.  *Id.* § 1.18.

fees and costs, and interest, under federal, state, and local laws, that accrued during their employment as SMs and/or SMITs before September 17, 2019.

The Settlement Administrator will determine the *Kramer* Settlement Amount for each individual *Kramer* Plaintiff by assigning one point for each full week and pro rata points for any partial workweek during the Relevant Period. *Id.* § 3.4(A). The Settlement Administrator will add all points for all *Kramer* Plaintiffs together to obtain the "Denominator" and divide the number of points for each *Kramer* Plaintiff by the Denominator to obtain each *Kramer* Plaintiff's "Portion of the *Kramer* Fund." *Id.* To determine each *Kramer* Plaintiff's *Kramer* Settlement Amount, the Settlement Administrator will multiply each *Kramer* Plaintiff's Portion of the *Kramer* Fund by the *Kramer* Fund. *Id.*

**2.    Eligible Settlement Participants.**

The remainder of the Net Settlement Fund after subtracting the *Kramer* Fund ("*Mason* Fund") will be allocated to Eligible Settlement Participants based on their job title and the number of weeks they worked as SM or SMIT: (1) from April 22, 2014 through the Approval Date for the collective members who already filed Consent to Join forms who were *not* also class members in the *Kramer* litigation; (2) from April 22, 2011 through the Approval Date for the approximately 75 individuals who worked in New York State as SMs and SMITs; and (3) from September 17, 2019 through the Approval Date for the 57 *Kramer* Plaintiffs. *Id.* §§ 1.28, 3.4(B).

The Settlement Administrator will determine the *Mason* Settlement Amount for each individual Eligible Settlement Participant by assigning one point for each full week and pro rata points for any partial workweek as a SM and 1.5 points for each full week and pro rata points for any partial workweek as a SMIT during the Relevant Period. *Id.* § 3.4(B). The Settlement Administrator will add all points for all Eligible Settlement Participant together to obtain the

"Denominator" and divide the number of points for each Eligible Settlement Participant by the Denominator to obtain each Eligible Settlement Participant's "Portion of the *Mason* Fund." *Id.* To determine each Eligible Settlement Participant's *Mason* Settlement Amount, the Settlement Administrator will multiply each Eligible Settlement Participant's Portion of the *Mason* Fund by the *Mason* Fund. *Id.*

### D. Releases.

Only those individuals who cash their Settlement Checks will release any claims. Participating Settlement Members will release "federal, state, or local claims for unpaid wages, remuneration, notice and recordkeeping claims, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses" relating back to the full extent of the applicable statute of limitations through the date of settlement approval. *Id.* § 4.1. A description of the release of claims will be included in the Settlement Notices and on the back of each Settlement Check. *Id.*; *see id.* at Exs. B and C (Settlement Notices). In exchange for receiving any Court-approved Service Award, Plaintiffs will also agree to a general release of claims. *See id.* § 4.3.

### E. Service Awards

Under the Settlement Agreement, subject to Court approval, Plaintiffs request service awards in recognition of the services they rendered to the collective and putative class in obtaining the benefits of the Settlement, as well as the risks they took in doing so. *Id.* § 3.3. Specifically, Ashleigh Mason, Dan Morse, Ryan Carroll, Osagie Ehigie, and Nereda Bodnar

(individually and also as substitute for the deceased Travis Streeter[7]) seek $10,000 each as service awards, totaling $60,000.  *Id.*

### F.   Settlement Administration.

The Settlement Administrator's costs and expenses shall be paid from the Gross Settlement Fund.  *Id.* §§ 1.12, 3.1(A).  Plaintiffs' Counsel has solicited bids from multiple wage and hour settlement administrators.  Swartz Decl. ¶ 25.

### G.   Attorneys' Fees and Costs.

Subject to Court approval, the Settlement Agreement provides for one-third of the Gross Settlement Amount as attorneys' fees, or $2,333.333, plus reimbursement of actual out-of-pocket costs.  Ex. 1 (Settlement Agreement) § 3.2.

## III.   ARGUMENT

### A.   A One-Step Approval Process Is Standard for FLSA Settlements.

Courts routinely approve a one-step approval process for settlement approval of wage and hour settlements that do not include classes under Rule 23.  *See, e.g.*, *Weston v. TechSol, LLC*, No. 17 Civ. 141, 2018 WL 4693527, at *1 (E.D.N.Y. Sept. 26, 2018) (granting a motion for settlement approval and the plaintiffs' motion for attorneys' fees, as well as simultaneously "approv[ing] the proposed Notice and Claim Form, and authoriz[ing] distribution to the settlement collective").[8]  Opt-in settlements do not implicate the same due process concerns as

---

[7]     Plaintiff Bodnar was a SMIT and was Plaintiff Streeter's husband (who was deceased at the time of the mediation).  Swartz Decl. ¶ 29.  Plaintiff Bodnar made herself available throughout the litigation, as well as during the mediation.  *Id.*

[8]     *See also DeHoll v. Eckerd Corp.*, No. 18 Civ. 280, 2019 WL 3337121, at *2-3 (M.D.N.C. July 25, 2019); *Knox v. Jones Grp.*, No. 15 Civ. 1738, 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017); *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17 Civ. 10219, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017); *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15 Civ. 10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014); *Aros v. United Rentals, Inc.*, Nos.

Rule 23 class actions. *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 304

(E.D.N.Y. 2015). Unlike in Rule 23 class actions, "under the FLSA, parties may elect to opt in

but a failure to do so does not prevent them from bringing their own suits at a later date." *Id.*

(quoting *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452, 2014 WL 1777438, at *8 (S.D.N.Y. May 1,

2014)); *accord McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984),

*abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989); *see*

*also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are

fundamentally different from collective actions under the FLSA . . . .").

    **B.**    **The Settlement Is Fair and Should Be Approved.**

    Courts approve FLSA settlements when they are reached as a result of contested

litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d

1350, 1353-54 (11th Cir. 1982). Courts regard the adversarial nature of a litigated FLSA case to

be an adequate indicator of the fairness of the settlement. *See id.*; *Capsolas v. Pasta Res., Inc.*,

No. 10 Civ. 5595, 2012 WL 4760910, at *6 (S.D.N.Y. Oct. 5, 2012). If the proposed settlement

reflects a reasonable compromise over contested issues, it should be approved. *See Lynn's Food*

*Stores*, 679 F.2d at 1354. In general, "FLSA settlements . . . [that] are reached as a result of

contested litigation to resolve bona fide disputes" should be approved. *Beckman v. KeyBank,*

*N.A.*, 293 F.R.D. 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *see also Reyes v. Altamarea Grp., LLC*,

No. 10 Civ. 6451, 2011 WL 4599822, at *6 (S.D.N.Y. Aug. 16, 2011).

    The Settlement in this case meets the standard for approval.[9] First, the settlement is the

result of contested litigation, reached after significant motion practice and extensive discovery,

---

10 Civ. 73, 2012 WL 3060470, at *2 (D. Conn. July 26, 2012); *Medley v. Am. Cancer Soc'y*, No.
10 Civ. 3214, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010).

[9]    In addition to the reasons for approval articulated *infra*, the settlement complies with the
Second Circuit's guidance in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir.

and was resolved through arm's-length negotiations facilitated by an experienced mediator.  *See* Swartz Decl. ¶ 26; *see also, e.g.*, *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010) (settlement is result of "contested litigation and arm's length negotiation . . . [after] the parties engaged in a 19-hour mediation session with an experienced mediator"); *Campos v. Goode*, No. 10 Civ. 224, 2011 WL 9530385, at *6 (S.D.N.Y. Mar. 4, 2011) (FLSA settlement approved after "the parties engaged in mediation with an experienced mediator in an effort to reach a resolution").  Recognizing the uncertain legal and factual issues involved, the parties reached the Settlement pending before the Court after attending two mediation sessions conducted by experienced mediator Martin Scheinman.  *See* Swartz Decl. ¶¶ 22, 24.

Second, the Gross Settlement Amount of $7,000,000.00 is substantial, especially in light of the considerable risks that Plaintiffs faced.  *Id.* ¶ 28.  In comparison, Plaintiffs' Counsel estimates that the Eligible Settlement Members' lost wages are $12,872,400 calculated at time and a half assuming they worked 10 overtime hours per week in 85% of workweeks (to account for weeks in which overtime may not have been worked due to holidays, sick days, paid time off, etc.).  *Id.*  Calculated using the fluctuating workweek method, Plaintiffs' Counsel estimates that the lost wages amount to $3,432,682.  *Id.*

Third, Plaintiffs faced both risks as to maintaining a Section 216(b) collective through trial, and, at trial, establishing liability and damages.[10]  Lumber Liquidators would likely

---

2015).  The settlement has been subject to this Court's judicial review and approval, and it does not contain any of the types of provisions that the Second Circuit found objectionable in *Cheeks*, such as overly restrictive confidentiality provisions, overbroad releases, or excessive attorneys' fees.  *See id.* at 206-07.

[10]     Notably, collecting damages for the New York Non Opt-Ins would require certification of a class under Rule 23 of the Federal Rules of Civil Procedure.  Also, the Settlement allocates a portion of the Gross Settlement Amount to the *Kramer* Plaintiffs for their claims preceding

12

continue to argue that differences among various store locations and other individualized questions would warrant decertification of the collective.  *See* ECF No. 70 (216(b) Order), at 26 (summarizing Defendant's argument in opposition to conditional certification).  Although Plaintiffs disagree, defendants have prevailed on such arguments.  *See, e.g.*, *McEarchen v. Urban Outfitters, Inc.*, No. 13 Civ. 3569, 2017 WL 3912345, at *2 (E.D.N.Y. Sept. 6, 2017) (adopting report and recommendation decertifying collective of retail managers on the basis of variation "as to both the amount of exempt work they performed and the level of managerial authority they exercised"); *Morano v. Intercontinental Capital Grp., Inc*., No. 10 Civ. 2192, 2012 WL 2952893, at *1 (S.D.N.Y July 17, 2012) (decertifying a FLSA collective where "plaintiffs worked in no fewer than seven branch locations, each with its own branch manager who independently hired his team's loan officers and instructed them on their work hours").  Defendant would also likely press the arguments that the claims of certain collective members should be dismissed because either they are barred by the release in the *Kramer* litigation or subject to arbitration.  *See supra* Section I.B.

Even if Plaintiffs could maintain collective treatment throughout trial, Plaintiffs would have to defeat Lumber Liquidators' argument that the fluctuating workweek applies to any damages calculations, *see Banford v. Entergy Nuclear Operations, Inc.*, 649 F. App'x 89, 90-93 (2d Cir. 2016), and that members of the collective were subject to the executive exemption to the FLSA and the corresponding exemptions under applicable state laws.  While Plaintiffs maintain that the primary duties of SMs and SMITs are non-exempt and overtime-eligible duties like performing customer service, moving products, and cleaning, Lumber Liquidators has argued

---

September 17, 2019, which this Court might otherwise conclude are barred by operation of the release in the *Kramer* litigation.

that SMs and SMITs perform sufficient managerial duties to justify their exempt status.

Defendant may also argue that the two full-time employee requirement need not be satisfied in

all workweeks for the exemption to be satisfied.  Determining the legal status of manager

positions under the FLSA is highly contextual and fact-dependent, and some cases support

Lumber Liquidators' position.  *See, e.g.*, *Awan v. Durrani*, No. 14 Civ. 4562, 2015 WL 4000139,

at *6 (E.D.N.Y. July 1, 2015) (describing the phrase "customarily and regularly" in the context

of the full-time employee requirement).  While Plaintiffs believe that they could ultimately

establish Defendant's liability, this would require significant factual development.

Fourth, the proposed allocation of the settlement is also reasonable.  It reflects a

proportion of damages owed to Eligible Settlement Participants largely based on the number of

weeks they worked for Defendant, which is a reasonable approximation of each Eligible

Settlement Participant's damages, that is weighted for additional risks specific to the claims for

their position as a SM or SMIT.  Ex. 1 (Settlement Agreement) § 3.4 (allocation plan); *see, e.g.*,

*Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 WL 2199427, at *3, *17 (S.D.N.Y. May 23,

2014) (approving an allocation formula based in part on number of workweeks class members

were employed during the class period); *Alli v. Bos. Mkt. Corp.*, No. 10 Civ. 4, 2011 WL

6156938, at *3 (D. Conn. Dec. 9, 2011) ("The Parties have agreed to a settlement that

compensates individuals based on weeks worked during the relevant time periods.  This is a fair

and reasonable provision . . . .").

The Court should also approve the proposed Settlement Notices.  *See* Exs. B and C

(Settlement Notices) to Ex. 1 (Settlement Agreement).  The proposed Settlement Notices

sufficiently inform Eligible Settlement Participants of the allocation formula, the monetary

amount to which they are entitled under the Settlement, the scope and mechanism of the release

14

of claims, the time they have to cash their Settlement Checks, the request for attorneys' fees and

costs, and other terms of the Settlement Agreement.  *See, e.g.*, *Weston*, 2018 WL 4693527, at *9

(approving FLSA notice that informed recipients of the FLSA allegations; the total settlement

amount, including "the amount being paid for attorneys' fees and expenses, the cost of

administration, and the service awards to the named plaintiffs"; the allocation fee; and other

relevant terms); *Bozak*, 2014 WL 3778211, at *3 (approving FLSA notice providing notice of

settlement terms and options facing collective).  The Settlement Notice for New York Non Opt-

Ins further informs New York Non Opt-Ins of their right to participate or not in this action.  Ex.

B to Ex. 1 (Settlement Agreement).

## C.      The Service Awards Should Be Approved as Fair and Reasonable.

Plaintiffs request approval of Service Awards of $10,000.00 each.  The Service Awards

that Plaintiffs request are reasonable given the significant contributions they made to advance the

prosecution and resolution of the lawsuit.[11]

Service awards are appropriate because "plaintiffs in class and collective actions play a

crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny."

*Aros*, 2012 WL 3060470, at *3.  This is especially true in employment litigation.  *See Frank v.*

*Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("In employment litigation, the

plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the

---

[11]     This case is distinguishable from *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424
(S.D.N.Y. 2014).  In *Fujiwara*, the Court acknowledged the named plaintiffs' efforts and risks on
behalf of the class but denied their application for service awards because the settlement
allocation formula favored the named plaintiffs over other class members, providing them with a
"backdoor service award."  *Id.* at 434.  Here, the settlement allocation formula gives no
preference to Plaintiffs and treats them the same as other class members.  Therefore, the
concerns raised in *Fujiwara* about paying named plaintiffs a "backdoor service award" do not
apply here.

benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."); *see generally* Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).

Service awards serve the important purpose of compensating plaintiffs for the "time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Reyes*, 2011 WL 4599822, at *9; *see also Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."). Service awards are commonly awarded to those who serve a class's and/or collective's interests. *See Reyes*, 2011 WL 4599822, at *9; *Frank*, 228 F.R.D. at 187. In examining the reasonableness of a requested incentive award, courts consider: (1) the "existence of special circumstances," including any personal risk incurred by the plaintiffs; (2) the "time and effort expended by [the plaintiffs] in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise)"; (3) any other burdens carried by the plaintiffs; and (4) the ultimate recovery in vindicating statutory rights. *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997). A consideration of these factors under the circumstances of this case supports approval of the requested service awards.

First, Plaintiffs undertook substantial direct and indirect risk. In the workplace context, plaintiffs who sue their employers are particularly vulnerable to retaliation in that they face "potential risks of being blacklisted as 'problem' employees." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012); *see also Guippone v. BH*

*S & B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011); *cf.*

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) ("[A]n

employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to

assert his or her FLSA rights.").

   Even where, as here, there has been no threat or indication of retaliation, plaintiffs merit

recognition for assuming potential risk of negative consequences or even financial liability in

filing the suit.  *See Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876 (7th Cir. 2012) ("[A]

class action plaintiff assumes a risk; should the suit fail, he may find himself liable for the

defendant's costs or even, if the suit is held to have been frivolous, for the defendant's attorneys'

fees."); *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that

[defendant] has or will take retaliatory action towards . . . any of the plaintiffs in this case, the

fear of adverse consequences or lost opportunities cannot be dismissed as insincere or

unfounded.").  Even former employees assume the risk of adverse consequences for their future

employment.  *See Roberts*, 979 F. Supp. at 201 (recognizing that where the named plaintiff is a

"past employee whose . . . recommendation may be at risk by reason of having prosecuted the

suit," the individual "lends his or her name and efforts to the prosecution of litigation at some

personal peril").  Service awards "provide an incentive to seek enforcement of the law despite

these dangers."  *Parker*, 2010 WL 532960, at *1.

   Second, Plaintiffs spent a significant amount of time and effort in pursuing this litigation

on behalf of the Eligible Settlement Participants.  They expended time and effort not only in pre-

litigation assistance to Plaintiffs' Counsel in investigating the claims brought, but also during the

litigation by responding to discovery, making themselves available for depositions if scheduled,

and reviewing the terms of the Settlement reached following the mediation.  Swartz Decl. ¶ 29;

*see DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 WL 2255394, at *7 (S.D.N.Y. May 7, 2015) (approving a service award in light of the "efforts [the plaintiff] made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in the mediation"); *Frank*, 228 F.R.D. at 187 (recognizing the important role that the plaintiff played in "serv[ing] as plaintiff counsel's primary source of information concerning the claims," reviewing documents, and "respond[ing] to his counsel's questions").

Third, and similarly, Plaintiffs took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit. *See* Swartz Decl. ¶ 31. Plaintiffs participated in an extensive pre-suit investigation and provided information and documents crucial to establishing their claims and the claims of the putative collective. *See id.*

Fourth, Plaintiffs' actions have resulted in substantial benefit to the class, leading to an overall gross recovery of $7,000,000.00, which represents a substantial recovery compared to their estimated lost wages. *Id.* ¶¶ 28, 31.

Courts in this circuit have approved service awards for similar activities in employment cases. *See, e.g.*, *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391 RLM, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (granting service awards in recognition of "the risks that the named Plaintiffs and opt-ins faced by participating in a lawsuit . . . and the efforts they made on behalf of the class, including producing documents, responding to interrogatories, and preparing for and having their depositions taken"); *DeLeon*, 2015 WL 2255394, at *7; *Ceka v. PBM/CMSI Inc.*, No. 12 Civ. 1711, 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) (approving service award of $10,000 to class representative who assisted investigation and prosecution of claims by providing detailed factual information regarding the class members' job duties, the hours that they worked, the wages paid, and other information relevant to their claims, and who was closely

18

involved in settlement negotiations); *Sukhnandan v. Royal Health Care of Long Island, LLC*, No. 12 Civ. 4216, 2014 WL 3778173, at *16 (S.D.N.Y. July 31, 2014) (approving $10,000 service awards to four named plaintiffs based on their time spent and risks taken in bringing, litigating and settling the lawsuit).

Moreover, the $10,000.00 payment is reasonable and within the range of additional payments that courts in this circuit routinely approve.  *See, e.g., Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (granting service awards of $15,000 to two named plaintiffs and awards of $7,000 to $12,000 each to three named plaintiffs and seven opt-in plaintiffs in a nationwide wage and hour class action); *Lovaglio v. W & E Hosp. Inc.*, No. 10 Civ. 7351, 2012 WL 2775019, at *1, *4 (S.D.N.Y. July 6, 2012) (approving service awards of $10,000 to class representatives in wage and hour action); *Sewell*, 2012 WL 1320124, at *15 (granting service awards of $10,000 and $15,000 to named plaintiffs where they "provided detailed factual information to class counsel for the prosecution of their claims and made themselves available regularly for any necessary communications with counsel").

The requested Service Awards amount to 0.9% of the total recovery, which is a reasonable percentage.  *See Reyes*, 2011 WL 4599822, at *9 (approving awards of $15,000 to three class representatives and $5,000 to a fourth class representative, totaling approximately 16.67% of the total recovery); *Parker*, 2010 WL 532960 at *2 (finding that awarding 11% of recovery as service awards is reasonable "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards"); *Frank*, 228 F.R.D. at 187 (awarding service award of 8.4% of the total recovery).

IV.     **THE COURT SHOULD APPROVE PLAINTIFFS' ATTORNEYS' FEES AND COSTS AS FAIR AND REASONABLE.**

A.     **The Court Should Award Attorneys' Fees as a Percentage of the Fund.**

When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Wal-Mart Stores v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sukhnandan*, 2014 WL 3778173, at *9; *Sewell*, 2012 WL 1320124, at *10.

Although there are two ways to compensate attorneys in common fund cases for successful prosecution of statutory claims – the lodestar method and the percentage-of-the-fund method – the trend in the Second Circuit is to use the percentage of the fund method in common fund cases.[12] *Wal-Mart Stores, Inc.*, 396 F.3d at 121; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3rd Cir. 2005) ("The percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'"). The common fund approach is especially appropriate in cases based on fee shifting statutes when, as is true here, the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 256 (7th Cir. 1988); *accord Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 564 (7th Cir. 1994); *see* Ex. 1 (Settlement Agreement) §§ 4.1, 4.2 (releasing statutory claims to fees).

---

[12]     Recovery of fees based on the percentage of the fund method "permits litigants or lawyers who recover a common fund for the benefit of persons other than themselves to obtain reasonable attorney's fees out of the fund, thus spreading the cost of the litigation to its beneficiaries." *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128 (2d Cir. 2010); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) ("Under the percentage method, the fee is a reasonable percentage of the total value of the settlement fund created for the class.").

The percentage-of-the-fund method in common-fund cases is preferred as a matter of policy because it promotes judicial economy.  Specifically, the percentage-of-the-fund method promotes early resolution of cases and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation to increase their billable hours.  *See Wal-Mart Stores, Inc.*, 396 F.3d at 121 (explaining that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation" (quoting *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002)); *accord In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) ("[U]sing the [percentage of the fund] method in a common fund case enhances efficiency . . . .").  Where attorneys' fees are limited to a percentage of the total, there is a strong disincentive for attorneys to "run up their hours."  *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (quoting *Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*, No. 96 Civ. 583, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002)).

Moreover, the percentage method preserves judicial resources because it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents.  *See In re Thirteen Appeals*, 56 F.3d at 307 ("[T]he [percentage of the fund] method permits the judge to focus on 'a showing that the fund conferring a benefit on the class resulted from' the lawyers' efforts." (quoting *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991))); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *25 (noting that the "percentage method . . . benefits both litigants and the judicial system" in that it "avoids the wasteful and burdensome process-to both counsel and the courts-of preparing and evaluating fee petitions").

21

**B.**   **Fees Should "Be Awarded on the Basis of the Total Funds Made Available Whether Claimed or Not."**

The Court should award Plaintiffs' Counsel a percentage of the total settlement fund made available to Eligible Settlement Participants.  The Second Circuit reached this conclusion in *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-38 (2d Cir. 2007).  In *Masters*, a class action challenging underpayment of modeling commissions, the district court awarded the plaintiffs' counsel fees by "calculat[ing] the percentage of the Fund on the basis of claims made against the Fund, rather than on the entire Fund created by the efforts of counsel."  *Id.* at 436-37. The Second Circuit reversed, holding that:

> [t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.  We side with the circuits that take this approach.  Our own cases refer to "percentage of the fund," and "percentage of the recovery."  We take these references to be to the whole of the Fund.  Use of the entire Fund as a basis for the computation does not necessarily result in a 'windfall' because the court may always adjust the percentage awarded in order to come up with a fee it deems reasonable in light of the *Goldberger* factors.

*Id.* at 437 (emphasis in original) (citations omitted) (first quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 121; then quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)). Though *Masters* involved claims brought under antitrust law rather than employment law, and a certified class rather than a collective, these factors were not determinative – or even discussed – in the court's fees analysis.  Most significant to the court, and relevant here, was that the plaintiffs' counsel's efforts result in the entirety of the fund made available to the collective.  *Id.* The Second Circuit's holding is consistent with the Supreme Court's instruction that when counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing*, 444 U.S. at 478.

Several district courts have therefore concluded that *Masters* is directly applicable to FLSA settlements like this one.  In *Zink v. First Niagara Bank, N.A.*, the court initially believed that "the settlement should be valued on the basis of the number of claims that were made against it," but upon further research and analysis determined "that the weight of authority is to the contrary."  No. 13 Civ. 1076, 2016 WL 7473278, at *7 (W.D.N.Y. Dec. 29, 2016).  The court held that *Masters* applies equally to claims-made settlements and common fund settlements.  *Id.* at *8.  The presence of a reversion for unclaimed funds did not impact *Masters*'s holding because the cases it relied on also involved reversions.  *Id.*  In *Aros v. United Rentals, Inc.*, the district court noted that "the Supreme Court, the Second Circuit, and other Circuit Courts[] have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants."  2012 WL 3060470, at *5.  Similarly, in *Alleyne v. Time Moving & Storage Inc.*, the court determined that *Masters* controlled, and the argument by a class objector that *Masters* involved a cy pres award for unclaimed funds instead of a reversion was "irrelevant to the basic holding regarding the assessment of the value of the legal services rendered" and "our Circuit case law directs courts to focus on fairly compensating counsel for work actually performed."  264 F.R.D. 41, 59 (E.D.N.Y. 2010).

This Court should follow the Second Circuit's clear guidance in *Masters* by awarding fees based on a percentage of the total fund, as most other courts in this circuit have done in employment law class and collective actions.  *See, e.g.*, *Park v. FDM Grp., Inc.*, No. 16 Civ. 1520, 2021 WL 227339, at *1 (S.D.N.Y. Jan. 22, 2021); *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 Civ. 3203, 2018 WL 4861391, at *4 (E.D.N.Y. Sept. 28, 2018) (approving 30% of total settlement in fees where "'percentage-of-recovery here is based on the entire settlement fund,

23

including the amount that will revert' to defendant, 'rather than on the portion of the fund equal

to the claims actually made'" (quoting *Diaz v. E. Locating Serv. Inc.*, 10 Civ. 4082, 2010 WL

5507912, at *8 (S.D.N.Y. Nov. 29, 2010))); *Capilupi v. People's United Fin., Inc.*, No. 15 Civ.

5247, 2018 WL 4693588, at *2 (E.D.N.Y. Sept. 27, 2018) (approving "one-third of the Gross

Settlement Amount" in fees without analysis of number of claims made); *Weston*, 2018 WL

4693527, at *6-9 (substantively same); *Alleyne*, 264 F.R.D. at 59-60 (applying *Masters* over

objectors and deciding that fees should be percentage of total fund, not portion claimed).

Here, like in *Boeing*, Plaintiffs' Counsel have provided a significant, *ascertainable*

$7,000,000 settlement fund that allows Eligible Settlement Participants to easily obtain

settlement payments *without a claims process*.[13]  *See supra* Section II.B (describing distribution

process, including reminder postcard and check reissue window).  Plaintiffs' Counsel created

that benefit for the Eligible Settlement Participants, and the reversion present in this case does

not alter the value that Plaintiffs' Counsel achieved.  This is because "[t]he members of the class,

whether or not they assert their rights, are at least the equitable owners of their respective shares

in the recovery." *Boeing*, 444 U.S. at 481-82.  "Any right that [Defendant] may establish to the

return of money eventually unclaimed is contingent on the failure of absentee [collective]

members to exercise their present rights of possession." *Id.* at 482.  Despite the potential

reversion, therefore, it is proper to impose a burden on Participating Settlement Members for that

benefit. *See id.* ("Although [Defendant] . . . cannot be obliged to pay fees awarded to the class

lawyers, [Defendant's] latent claim against unclaimed money in the judgment fund may not

---

[13]     This Settlement is therefore unlike that in *Bodon v. Domino's Pizza, LLC*, No. 09 Civ.
2941, 2015 WL 3889577, at *2 (E.D.N.Y. June 4, 2015) (Mann, J.), *report and recommendation
adopted*, No. 09 Civ. 2941, 2015 WL 3902405 (E.D.N.Y. June 24, 2015).  In *Bodon*, not only did
the settlement "not include a fixed total sum to be allocated," but it also did not "provide for the
payment of plaintiffs' counsel's fees and costs." *Id.*

defeat each class member's equitable obligation to share the expenses of litigation."); *see also Masters*, 473 F.3d at 437.

### C.     Analysis of the Market for Legal Services Supports Plaintiffs' Request.

The percentage-of-the fund method is consistent with market practice because it mirrors the practice of contingent fee attorneys who "typically negotiate percentage fee arrangements with their clients." *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003); *see Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded"); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (characterizing the percentage approach as "uniquely the formula that mimics the compensation system actually used by individual clients to compensate their attorneys"); *see also Kirchoff v. Flynn*, 786 F. 2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'").

Here, Plaintiffs' Counsel undertook the representation on a purely contingent basis. Swartz Decl. ¶ 33.  Plaintiffs' Counsel executed a fee arrangement with the Plaintiffs that entitled Plaintiffs' Counsel to one-third of any recovery. *Id.* ¶ 34. "Thus, the Court knows what private plaintiffs 'would have negotiated with their lawyers, had bargaining occurred at the outset of the case' . . . because the Named Plaintiffs contracted for Plaintiffs' Counsel to be compensated with the amount Plaintiffs' Counsel now seek." *Castillo v. Noodles & Co.*, No. 16 Civ. 3036, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016) (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)).  Because the Plaintiffs negotiated an attorneys' fees arrangement at the start of the litigation, the presumption of market-rate reasonableness applies. *See Briggs*, 2016 WL 7018566, at *4.

25

### D.      Plaintiffs' Requested Fee Award Is Reasonable.

Plaintiffs' request for one-third of the common fund settlement as attorneys' fees plus

reasonable costs and expenses is reasonable.  Courts in the Second Circuit regularly find fee

requests of one-third of the common fund or settlement amount to be reasonable.  *See, e.g.*, *Solis*

*v. Orthonet LLC*, No. 19 Civ. 4678, 2021 WL 2678651, at *2 (S.D.N.Y. June 30, 2021) ("Here,

the percentage requested, 33%, is in line with what other judges have awarded in this

district . . . ."); *Cohan*, 2018 WL 4861391, at *4 ("[C]ourts in this Circuit have routinely granted

requests for one-third of the fund in cases with settlement funds substantially larger than this

one." (alteration added) (quoting *Johnson*, 2011 WL 4357376, at *19)); *Chavarria v. N.Y.*

*Airport Serv., LLC*, 875 F. Supp. 2d 164, 179 (E.D.N.Y. 2012) (finding plaintiffs' counsel's

request for one-third of the fund "well within the range accepted by courts in this Circuit"

(quoting *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002))); *Alleyne*,

264 F.R.D. at 60 ("[T]he Court finds that attorney's fees of one third of the settlement fund . . .

are reasonable."); *Beckman*, 293 F.R.D. at 477 (stating that plaintiffs' counsel's request for one-

third of the fund was "consistent with the norms of class litigation in this circuit" (quoting

*Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y.

March 24, 2008))).

Moreover, Plaintiffs' Counsel's request for one-third of the settlement fund as attorneys'

fees and additional costs and litigation expenses is reasonable in light of the significant benefit

their efforts conferred on the collective.  The Settlement Agreement provides that Defendant will

pay a Gross Settlement Amount of $7,000,000.  Ex. 1 (Settlement Agreement) §§ 1.12, 3.1(A).

By Plaintiffs' Counsel's estimation, the $7,000,000 guaranteed settlement amount represents a

substantial percentage of the collective's lost wages.  Swartz Decl. ¶ 26.  This recovery is

significant in light of the risk that litigation may have yielded little or no recovery at all.

The lodestar "cross-check" further supports an award of one-third of the settlement fund. *See Wal-Mart Stores, Inc.*, 396 F.3d at 123 ("As a 'cross-check' to a percentage award, courts in this Circuit use the lodestar method." (quoting *Goldberger*, 209 F.3d at 50); *Goldberger*, 209 F.3d at 50 (2d Cir. 2000) ("[W]e encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995))). As part of the cross-check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Wal-Mart Stores, Inc.*, 396 F.3d at 121. In calculating the lodestar for cross-check purposes, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Id.*

Plaintiffs' request for one-third of the settlement fund, or $2,333,333.33, is a multiplier of 1.85 of their $1,264,122.50 lodestar. Swartz Decl. ¶ 32. Plaintiffs' Counsel spent over 2,569.6 hours over nearly four years litigating and settling this matter. Swartz Decl. ¶ 35; Declaration of Justin R. Marino ("Marino Decl.") ¶ 27. The time spent by Plaintiffs' Counsel is described in declarations and summaries of time records, and Plaintiffs' Counsel have also provided detailed time records. *See* Swartz Decl. ¶ 35, Exhibit 2; Marino Decl. ¶ 12-30, Exhibit 2. Courts regularly grant awards and lodestar multipliers far exceeding what they seek in this matter. *See, e.g., Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six."). Furthermore, the lodestar is "even more reasonable than it appears at first glance" because it does not fully capture additional time that Plaintiffs' Counsel incurred in preparing the settlement papers and that will be incurred on the approval process. Swartz Decl. ¶¶ 36, 38. Moreover, Plaintiffs' Counsel will be "called upon to perform work" after settlement

27

approval, such as assisting with settlement administration and talking to collective members, which will further reduce the lodestar multiplier. *Beckman*, 293 F.R.D. at 482.

    **E.**    **Plaintiffs Are Entitled to Reimbursement of Costs.**

Plaintiffs request reimbursement of $44,411.21 in out-of-pocket litigation expenses from the Gross Settlement Amount. Swartz Decl. ¶ 41 ($12,693.35), Exh. 2; Marino Decl. ¶ 30 ($31,717.86), Exh. 1.  Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (quoting *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)); *see also In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145, 2014 WL 185628, at *11 (S.D.N.Y. Jan. 14, 2014) (approving reimbursement of $57,729.06 in litigation expenses); *Diaz*, 2010 WL 5507912, at *8 ("Courts typically allow counsel to recover their reasonable out-of-pocket expenses.").  Here, Plaintiffs' expenses were incidental and necessary to counsel's representation.  Swartz Decl. ¶ 43.  These include the filing fee, *pro hac vice* admission fees, postage, document hosting, Plaintiffs' share of the mediator's fees, and electronic research.  *Id.* ¶ 42.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) approving the $7,000,000 Settlement as fair, adequate, and reasonable, as set forth in the Settlement Agreement; (2) approving the proposed Settlement Notices and directing their distribution; (3) approving Service Awards to Plaintiffs; (4) approving Plaintiffs' request for one-third of the settlement fund for attorneys' fees and plus reimbursement of $44,411.21 in reasonable costs and litigation expenses; (5) approving the fees and costs of the third-party Settlement Administrator; (6) incorporating the terms of the Settlement Agreement; (7)

dismissing this case without prejudice, with leave to reinstate on or before 180 days after the first

Settlement Notices are sent, and in the event a motion to reinstate is not filed within that period,

deeming the case dismissed with prejudice without further order of the Court; and (8) retaining

jurisdiction to enforce the Settlement Agreement.

Dated: July 16, 2021                              Respectfully submitted,

                                                  */s/ Justin R. Marino*
                                                  Justin R. Marino
                                                  J.R. Stevenson
                                                  Jeffrey R. Maguire
                                                  STEVENSON MARINO LLP
                                                  75 Maiden Lane, Suite 402
                                                  New York, New York 10038
                                                  Telephone: (212) 939-7228
                                                  Facsimile: (212) 531-6129
                                                  Email: jmarino@stevensonmarino.com
                                                  Email: jrs@stevensonmarino.com
                                                  Email: jmaguire@stevensonmarino.com

                                                  Justin M. Swartz
                                                  OUTTEN & GOLDEN LLP
                                                  685 Third Ave 25th Floor
                                                  New York, NY 10017
                                                  Telephone: (212) 245-1000
                                                  Facsimile: (646) 509-2060
                                                  Email: jms@outtengolden.com

                                                  Pooja Shethji (*pro hac vice*)
                                                  OUTTEN & GOLDEN LLP
                                                  601 Massachusetts Ave. NW
                                                  Suite 200W
                                                  Washington, DC 20001
                                                  Telephone: (202) 847-4400
                                                  Facsimile: (646) 952-9114
                                                  Email: pshethji@outtengolden.com

                                                  *Attorneys for Plaintiffs*