**Exhibit 1**

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Nereda Bodnar (individually and as substitute for the deceased Travis Streeter), Ashleigh Mason, Dan Morse, Ryan Carroll, and Osagie Ehigie (collectively, "Named Plaintiffs"), individually and on behalf of the collective of individuals that they seek to represent (collectively, "Plaintiffs"), in the matter of *Mason v. Lumber Liquidators, Inc.*, Case No. 17 Civ. 4780 (E.D.N.Y.), and Defendant Lumber Liquidators, Inc. ("Defendant") (together with Named Plaintiffs, the "Parties").

### RECITALS

**WHEREAS**, Named Plaintiffs filed a complaint in *Mason v. Lumber Liquidators, Inc.*, Case No. 17 Civ. 4780 (E.D.N.Y.), against Defendant asserting claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") (collectively, the "Claims"); and

**WHEREAS**, on April 5, 2021 and April 16, 2021, the Parties engaged in full-day mediation sessions before Mediator Martin F. Scheinman (the "Mediator") and reached an accord resulting in this Agreement; and

**WHEREAS**, without admitting or conceding any liability or damages, Defendant has agreed to settle the Claims on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of litigation; and

**WHEREAS**, Plaintiffs' Counsel has analyzed and evaluated the merits of the Claims, and the impact of this Agreement on Plaintiffs, and based upon Plaintiffs' Counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Claims, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interest of the Plaintiffs.

**NOW THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Claims on the following terms and conditions:

## 1.   DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1**   "Acceptance Period" means the one hundred eighty (180)-day period that an Eligible Settlement Participant has to sign and negotiate a Settlement Check after it is postmarked.

1

1.2    "Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

1.3    "Approval Date" means the date on which the Approval Motion is granted.

1.4    "Approval Motion" means a motion for Court approval of the collective action settlement, service awards to the Named Plaintiffs, and attorneys' fees and costs.

1.5    "Complaint" means the First Amended Class and Collective Action Complaint that was filed in the Lawsuit, *Mason v. Lumber Liquidators, Inc.*, Case No. 17 Civ. 4780 (E.D.N.Y.), ECF No. 16.

1.6    "Court" means the U.S. District Court for the Eastern District of New York.

1.7    "Defendant" means Lumber Liquidators, Inc.

1.8    "Defendant's Counsel" means Littler Mendelson, P.C.

1.9    "Effective Date" means the date on which this Agreement becomes effective, which shall mean the later of (i) thirty-one (31) days following the Court's Order Granting Approval of the Settlement if no appeal is taken of such Order, or (ii) the Court's entry of a final order and judgment after any and all appeals are resolved.

1.10   "Eligible Settlement Participant" means the approximately 269 collective members in the nationwide collective for the time period from April 22, 2014 through the present, as well as the individuals who worked for Defendant in New York State as Store Managers ("SMs") and/or Store Managers in Training ("SMITs") for the time period from April 22, 2011 through the present who worked at least one workweek as an exempt-classified SM or SMIT and choose to opt in to this Action. Approximately 22 of those individuals who worked in New York already opted in to this Action as of the date of this Agreement.

1.11   "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.12   "Gross Settlement Amount" means Seven Million Dollars and Zero Cents ($7,000,000.00), which is the maximum amount that Defendant has agreed to pay to fully resolve and settle this Litigation, including any claim for attorneys' fees and costs approved by the Court; any and all amounts to be paid to Settlement Participants; the cost of settlement administration; any Court- approved Service Awards; and any other costs, fees, or purported damages associated with the Litigation. The Gross Settlement Amount is based on 30,000 exempt workweeks as of December 1, 2020 (excluding the weeks worked before September 17, 2019 by the *Kramer* Plaintiffs), as identified by the Defendant for the April 16, 2021 mediation, plus any workweeks added between December 2, 2020 and preliminary approval of the settlement. Should the number of

2

workweeks increase by more than 2.5% (the 2.5% does not include the time from December 2, 2020 through preliminary approval of the settlement), the Gross Settlement Amount will increase by a proportionate additional amount. Defendant shall provide supplemental documentation to substantiate the final number of workweeks for purposes of the Settlement.

1.13    "*Kramer* Plaintiffs" means the 57 Plaintiffs who were also class members of the class action settlement in *Kramer, et al. v. Lumber Liquidators, Inc.* in Sacramento County Superior Court, No. 34-2017-00222434.

1.14    "Last Known Address" or "Last Known Addresses" means the most recently recorded personal mailing address for an Eligible Settlement Participant as shown in Defendant's records.

1.15    "Last Known Telephone Number" or "Last Known Telephone Numbers" means the most recently recorded personal mobile and/or home telephone number for an Eligible Settlement Participant contained in Defendant's records and readily available to Defendant.

1.16    "Litigation" or the "Lawsuit" or the "Action" means *Mason v. Lumber Liquidators, Inc.*, Case No. 17 Civ. 4780 (E.D.N.Y.).

1.17    "Named Plaintiffs" means Nereda Bodnar (individually and as substitute for the deceased Travis Streeter), Ashleigh Mason, Dan Morse, Ryan Carroll, and Osagie Ehigie.

1.18    "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions/payments for Court-approved: (i) Settlement Administration fees and costs; (ii) Plaintiffs' Counsel's attorneys' fees and costs; (iii) Service Awards to Named Plaintiffs; and (iv) any other Court-approved fees and costs.

1.19    "Order Granting Approval of Settlement" or "Approval Order" means an order entered by the Court, which gives final approval to the Settlement and this Agreement and enters final judgment.

1.20    "Parties" collectively means the Named Plaintiffs and Defendant.

1.21    "Participating Settlement Members" means each Eligible Settlement Participant, including any Named Plaintiff, who timely signs and cashes a Settlement Check.

1.22    "Plaintiffs" means the Named Plaintiffs and the individuals that they seek to represent.

1.23    "Plaintiffs' Counsel" means Stevenson Marino LLP and Outten & Golden LLP.

1.24    "Plaintiffs' List" means a list, in electronic form, of all Eligible Settlement Participants' names, Last Known Addresses, Last Known Telephone Numbers, Social Security Numbers, and dates of employment.

3

**1.25**   "Plaintiffs' Data" means a list, in electronic form, with the following information for all Eligible Settlement Participants: (i) weeks worked as an exempt-classified SM during the Relevant Period; (ii) weeks worked as an exempt-classified SMIT during the Relevant Period; and (iii) weeks worked as a non-exempt classified SMIT during the Relevant Period.

**1.26**   "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Administrator from the Gross Settlement Amount paid by Defendant. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's order(s). Interest, if any, earned on any monies in the QSF will become part of the Net Settlement Fund.

**1.27**   "Releasee" means Defendant and its respective current and former affiliates, subsidiaries and other related entities, as well as their current and former employees, members, partners, principals, shareholders, officers, directors, attorneys, agents, insurers, reinsurers, predecessors, successors, and assigns.

**1.28**   "Relevant Period" means the time period of each Eligible Settlement Participant's employment with Defendant that is eligible for payment pursuant to this Agreement. The Relevant Period covers the time period: (1) from April 22, 2014 through the earlier of December 31, 2021 or the Approval Date for the approximately 212 collective members in the nationwide collective who were *not* also class members of the class action settlement in *Kramer, et al. v. Lumber Liquidators, Inc.* in Sacramento County Superior Court, No. 34-2017-00222434; (2) from April 22, 2011 through the earlier of December 31, 2021 or the Approval Date for the individuals who worked for at least one work week as an exempt-classified SM or SMIT in New York State and choose to opt in to this Action; and (3) from September 17, 2019 through the Approval Date for the 57 *Kramer* Plaintiffs.

**1.29**   "Reminder Postcard" means the agreed-to postcard, which provides the information stated in Section 2.9, sent to all Eligible Settlement Participants who have not cashed their checks within ninety (90) days after the Settlement Notices and Settlement Checks are mailed.

**1.30**   "Settlement" means the settlement between the Parties embodied and contained in this Agreement.

**1.31**   "Settlement Administrator" means the entity selected by Plaintiffs' Counsel through a competitive bidding process and with Defendant's Counsel's consent to administer the Settlement.

**1.32**   "Settlement Amount" or "Settlement Amounts" means each Eligible Settlement Participant's proportionate share of the Net Settlement Fund calculated in accordance with this Agreement, including for the *Kramer* Plaintiffs the *Kramer* Settlement Amount.

4

**1.33**   "Settlement Check" means the check issued to each Eligible Settlement Participant for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.34**   "Settlement Notice" means the documents entitled Notice of Settlement to be approved by the Court in a form substantially similar to **Exhibit B**, attached hereto.

**2.**   **APPROVAL AND NOTICE TO ELIGIBLE SETTLEMENT PARTICIPANTS**

**2.1**   This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2**   Plaintiffs' Counsel shall engage the Settlement Administrator to administer the settlement.

**2.3**   The Settlement Administrator will be responsible for establishing a QSF account; preparing and mailing the Settlement Notice and reminder postcards to Eligible Settlement Participants; creating and maintaining a website containing information about the Settlement; preparing and mailing Settlement Checks; distributing approved Service Awards and attorneys' fees and expenses; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; calculating all Settlement Amounts to be paid to Eligible Settlement Participants; copying Plaintiffs' Counsel and Defendant's Counsel on material correspondence and promptly notifying Plaintiffs' Counsel and Defendant's Counsel of any material requests or communications made by any Party and referring any privileged and/or confidential communications to Plaintiffs' Counsel; ascertaining current address and addressee information for each Settlement Notice returned as undeliverable and the mailing of the Settlement Notice; responding to inquiries of Plaintiffs, Plaintiffs' Counsel, and Defendant's Counsel consistent with the Administrator's duties specified herein; maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications, and attempted written or electronic communications with Plaintiffs; timely responding to communications from the Parties, Plaintiffs' Counsel or Defendant's Counsel; retaining and providing a copy of Settlement Checks signed by the Participating Settlement Members to Plaintiffs' Counsel and Defendant's Counsel; and such other tasks the Parties mutually agree or as specified herein.

**2.4**   The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement, except to the extent necessary to protect against disclosure of confidential attorney-client communications. The Settlement Administrator shall provide such information to either Party upon request. The Settlement Administrator will provide weekly reports to counsel for the Parties regarding the status of the mailing of the Settlement Notice, the claims administration process, and distribution of the Settlement Checks.

**2.5**   Defendant agrees to cooperate with the Settlement Administrator, provide accurate information, to the extent reasonably available and necessary to calculate the

Settlement Amounts, and assist the Settlement Administrator in locating Eligible
Settlement Participants.

2.6      Plaintiffs' Counsel shall use their best efforts to file a Supplemental Motion for
         Approval of Collective Action Settlement, Service Awards, and Attorneys' Fees and
         Costs ("Approval Motion") within fourteen (14) days after the execution of this
         Agreement.  The Supplemental Approval Motion shall include: (i) a revised proposed
         Approval Order; (ii) the proposed Settlement Notice; and (iii) an executed version of
         this Agreement.  The revised proposed Approval Order and Settlement Notice are
         attached hereto as **Exhibits A and B**, respectively.  Among other things, the
         Supplemental Approval Motion will ask the Court to: (i) issue and enter the revised
         proposed Approval Order approving the Settlement as fair, adequate, and reasonable;
         (ii) approve the proposed Settlement Notice to be sent to the Eligible Settlement
         Participants; (iii) incorporate the terms of the Settlement; (iv) enter judgment
         dismissing the case without prejudice, with leave to reinstate on or before one hundred
         eighty (180) days after the first Settlement Notices are sent pursuant to the terms of the
         Settlement, and deemed with prejudice without further order of the Court if no such
         motion to reinstate is filed within that time; and (vi) retain jurisdiction to enforce this
         Agreement.  Defendant may review the terms of the Supplemental Approval Motion
         and suggest changes to ensure it is consistent with this Agreement.  Plaintiffs shall
         consider Defendant's proposed revisions in good faith.

2.7      Within fourteen (14) days of the Approval Date, Defendant shall give the Settlement
         Administrator and Plaintiffs' Counsel a list, in electronic form, containing all Eligible
         Settlement Participants' names, Last Known Addresses, Social Security numbers, and
         the dates of employment during the Relevant Period (collectively "Plaintiffs' List").  In
         addition, for each year during which the individual was employed as a SM or SMIT,
         Defendant shall give the Settlement Administrator a list, in electronic form, with the
         following information for all Eligible Settlement Participants: (i) weeks worked as an
         exempt-classified SM during the Relevant Period; (ii) weeks worked as an exempt-
         classified SMIT during the Relevant Period; and (iii) weeks worked as a non-exempt
         classified SMIT during the Relevant Period ("Plaintiffs' Data").

2.8      Upon receipt of the Plaintiffs' List from Defendant, Plaintiffs' Counsel shall update the
         contact information in the Plaintiffs' List to reflect any more recent contact information
         for collective members in the nationwide collective based on Plaintiffs' Counsel's
         existing records.  Plaintiffs' Counsel shall provide this updated list to the Settlement
         Administrator within twenty-one (21) days of the Approval Date.

2.9      Settlement Notices, along with Settlement Checks, will be mailed via First Class U.S.
         Mail to Eligible Settlement Participants by the Settlement Administrator within twenty-
         one (21) days of the Effective Date.  Ninety (90) days after the Settlement Checks are
         mailed, the Settlement Administrator shall send a reminder by First Class U.S. Mail to
         the Eligible Settlement Participants who have not cashed their checks that inquires
         whether they received their Settlement Check and reminds them of the expiration of the
         Acceptance Period.  In the event an Eligible Settlement Participant reports a lost or
         destroyed Settlement Check within the Acceptance Period, the Settlement

Administrator shall issue a stop payment order on the original check and issue a new check.

2.10   The Settlement Administrator will take all reasonable steps to obtain the correct address of any Eligible Settlement Participant for whom a Settlement Notice and Settlement Check is returned by the U.S. Postal Service as undeliverable, including two skip traces, and shall attempt a re-mailing to any Eligible Settlement Participant for whom it obtains a more recent address.  The Settlement Administrator will notify Plaintiffs' Counsel and Defendant's Counsel of any Settlement Notice and Settlement Check sent to a Plaintiff that is returned as undeliverable after the first mailing, as well as any such Settlement Notice and Settlement Check returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

2.11   If within thirty (30) days after the close of the Acceptance Period an Eligible Settlement Participant reports a lost or destroyed check, and informs the Settlement Administrator that she or he did not receive a check or otherwise requests reissuance of her or his Settlement Check, Defendant shall approve the reissuance of a Settlement Check to such Eligible Settlement Participant on a case-by-case basis for good cause shown. Reissuance to a given Eligible Settlement Participant will not require reissuance to any other Eligible Settlement Participant. Defendant will not unreasonably withhold approval to reissue a Settlement Check.

2.12   In the event that the Court fails to approve this Agreement, except as to the provisions on attorneys' fees and Service Awards in Sections 3.2 and 3.3, the Parties jointly agree to: (a) attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated settlement and agreement and/or (b) seek reconsideration or appellate review of the decision denying approval of the Agreement.  The Parties agree to work in good faith to amend the settlement agreement if necessary in order to obtain settlement approval.  In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties cannot adequately renegotiate the settlement, the Litigation will proceed as if no settlement had been attempted.  In that event, nothing in the Settlement or Agreement may be used by or against any Party under Rule 408 of the Federal Rules of Evidence.

3.     **SETTLEMENT TERMS**

3.1    **Settlement Payments.**

(A)   Defendant agrees to pay Seven Million Dollars and Zero Cents ($7,000,000.00), which shall fully resolve and satisfy any and all amounts to be paid to Eligible Settlement Participants, any Court-approved Service Awards as more fully set forth herein, the Settlement Administrator's fees and costs, and any claim for Plaintiffs' Counsel's fees and costs.

(B)   Defendant shall transmit the Gross Settlement Amount to the Settlement Administrator, who will deposit such funds into the QSF, within thirty (30) days of the issuance of an Approval Order.

7

(C)    Within twenty-one (21) days of the Effective Date, the Settlement Administrator will distribute the money in the QSF by making the following payments:

    i.    Paying Plaintiffs' Counsel's Court-approved attorneys' fees and costs as described in Section 3.2.

    ii.    Paying the Court-approved Service Awards as described in Section 3.3.

    iii.    Paying the costs of the Settlement Administrator as awarded or approved by the Court.

    iv.    Issuing checks to Eligible Settlement Participants for their Settlement Amounts, as described in Section 3.4.

(D)    Any portion of the Net Settlement Fund that is unclaimed more than seventy-five (75) days after the close of the Acceptance Period shall revert to Defendant.

**3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)    In their Approval Motion, Plaintiffs' Counsel have asked the Court to approve payment of up to one-third (1/3) of the Gross Settlement Amount as an award of attorneys' fees. In addition, Plaintiffs' Counsel have sought reimbursement of reasonable out-of-pocket costs and expenses from the Gross Settlement Amount. These amounts shall constitute full satisfaction of any claim for attorneys' fees or costs, and Plaintiffs' Counsel agree that they shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source, incurred in relation to this case other than for any fees and costs incurred related to any efforts to enforce the terms of this Agreement. Defendant will not oppose such request.

(B)    The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder. Any money requested for attorneys' fees or costs that are not approved by the Court shall become part of the Net Settlement Fund.

**3.3    Service Awards to Named Plaintiffs.**

(A)    In their Approval Motion, Named Plaintiffs have applied to the Court to receive

Ten Thousand Dollars and Zero Cents ($10,000.00) each from the Gross Settlement Amount for the services they rendered to Plaintiffs and the collective. Defendant will not oppose such request.

(B)     These Service Awards and any requirements for obtaining any such payment are separate and apart from, and in addition to, Named Plaintiffs' recovery from the Net Settlement Fund as an Eligible Settlement Participant. The substance of the Named Plaintiffs' application for a Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement. The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. Any Service Award money not approved by the Court shall become part of the Net Settlement Fund.

### 3.4     Distribution of Payments to *Kramer* Plaintiffs and Eligible Settlement Participants from the Net Settlement Fund.

(A)     *Kramer* Plaintiffs.  Fourteen Thousand Two Hundred Fifty Dollars and Zero Cents ($14,250.00) of the Net Settlement Fund shall be reserved for payments to the *Kramer* Plaintiffs ("*Kramer* Fund"). The estimated *Kramer* Settlement Amount for each *Kramer* Plaintiff will be determined by the Settlement Administrator pursuant to the following formula:

   i.      Each *Kramer* Plaintiff will receive 1 point for each full workweek and pro rata point(s) for any partial workweek worked as a SM or SMIT during the period of April 22, 2014 through September 16, 2019 in settlement of their wage-related claims, under federal, state, and local laws, that accrued during their employment as SMs and/or SMITs during that period.

   ii.     To calculate the proportionate share of the *Kramer* Fund for each *Kramer* Plaintiff, the Settlement Administrator shall:

      a)      Add all points for all *Kramer* Plaintiffs together to obtain the "Denominator";

      b)      Divide the number of points for each *Kramer* Plaintiff by the Denominator to obtain each *Kramer* Plaintiff's "Portion of the *Kramer* Fund"; and

      c)      Multiply each *Kramer* Plaintiff's Portion of the *Kramer* Fund by the amount of the *Kramer* Fund to determine each *Kramer* Plaintiff's *Kramer* Settlement Amount.

(B)     Eligible Settlement Participants.  Payments to Eligible Settlement Participants will be made from the remainder of the Net Settlement Fund after subtracting the *Kramer* Fund ("*Mason* Fund"). The estimated Settlement Amount for each Eligible Settlement Participant will be determined by the Settlement Administrator pursuant to the following formula:

   i.      Each Eligible Settlement Participant will receive 5 points for

each full workweek and pro rata point(s) for any partial workweek worked as an exempt-classified SM during the Relevant Period, but no workweek will be double counted.

ii.     Each Eligible Settlement Participant will receive 7.5 points for each full workweek and pro rata point(s) for any partial workweek worked as an exempt-classified SMIT during the Relevant Period, but no workweek will be double counted.

iii.     Each Eligible Settlement Participant will receive 1.5 points for each full workweek and pro rata point(s) for any partial workweek worked as a non-exempt classified SMIT outside of California during the Relevant Period, but no workweek will be double counted.

iv.     To calculate the proportionate share of the *Mason* Fund for each Eligible Settlement Participant, the Settlement Administrator shall:

     a)     Add all points for all Eligible Settlement Participants together to obtain the "Denominator";

     b)     Divide the number of points for each Eligible Settlement Participant by the Denominator to obtain each Eligible Settlement Participant's "Portion of the *Mason* Fund"; and

     c)     Multiply each Eligible Settlement Participant's Portion of the *Mason* Fund by the amount of the *Mason* Fund to determine each Eligible Settlement Participant's *Mason* Settlement Amount.

(C)     The Settlement Administrator's final calculations regarding the Eligible Settlement Participants' Settlement Amounts from the Net Settlement Fund will be final and binding.

(D)     Defendant's Payroll Tax Responsibility and Tax Characterization of Payments.

i.     For tax purposes, 25% of the payment to each Participating Settlement Member pursuant to this Agreement shall be treated as back wages and 75% of such payment shall be treated as interest, liquidated damages and other non-wage relief.

ii.     Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2. The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the

appropriate tax rate, issuing the Settlement Checks and Service Awards, and issuing IRS Forms W-2 and Forms 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and be reported to the IRS and to each of Plaintiffs' Counsel payees under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

iii. The Settlement Administrator shall calculate and Defendant shall pay to the Settlement Administrator the employer's share of any statutory FICA, FUTA, and other payroll taxes arising from any payments to Participating Settlement Members for wages. Defendant shall pay any Employer Payroll Taxes. The Settlement Administrator shall provide the estimated amount of such payroll tax amount to Defendant's Counsel within seven (7) days after it receives a copy of the Approval Order. The Defendant shall be responsible for remitting those taxes to the appropriate state and federal taxing authorities, filing the required tax returns, and issuing the required IRS forms to the Participating Settlement Members.

iv. The employee portion of all applicable taxes will be the sole responsibility of the individual Participating Settlement Member receiving a Settlement Check or Service Award. The Parties make no representations, and it is understood and agreed that the Parties have made no representations, as to the taxability of any portions of the settlement payments to any Participating Settlement Members, the payment of any costs or award of attorneys' fees, or any payments to the Named Plaintiffs. The Settlement Notice will advise Participating Settlement Members to seek their own tax advice. Neither Plaintiffs' Counsel nor Defendant's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

v. With respect to payments received pursuant to this Agreement that are characterized as Attorneys' Fees, Plaintiffs' Counsel assumes responsibility of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind.

## 4. RELEASE OF CLAIMS

**4.1** All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

**CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

11

I understand that I have up to 180 days from the postmark on the envelope containing the Settlement Check to sign and cash it or the check will be null and void.

By signing and cashing this check, I consent to join in the case entitled *Mason v. Lumber Liquidators, Inc.*, No. 17 Civ. 4780, pending in the United States District Court for the Eastern District of New York, and agree to be bound by the Settlement Agreement negotiated by Plaintiffs' Counsel in that case.

I waive, release, and forever discharge any and all wage-related claims I have or may have against Lumber Liquidators, Inc., and its affiliates, parents, subsidiaries, predecessors, successors, employees and agents, under any federal, state, or local laws and regulations, that accrued during the time period that I worked for Lumber Liquidators, Inc. as a Store Manager or Store Manager in Training, relating back to the full extent of the applicable federal, state, or local statute of limitations and continuing through [earlier of December 31, 2021 or the Approval Date], including, without limitations, any and all federal, state, or local claims for unpaid wages, remuneration, notice and recordkeeping claims, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses. Notwithstanding this paragraph, if I worked as a non-exempt classified Store Manager or Store Manager in Training in California, I am only waiving and releasing claims for time worked as an exempt-classified Store Manager or Store Manager in Training and time worked as a non-exempt classified Store Manager in Training outside of California; I retain and do not waive any claims that have been asserted in *Savidis v. Lumber Liquidators, Inc.* in Alameda County Superior Court, No. RG20057480, including but not limited to any claims for overtime hours for which non-exempt classified employees were not paid.

Any modification or amendment of the above language by a Plaintiff, at Defendant's discretion, may not be accepted, and may void the Settlement Check. The Settlement Administrator shall provide Defendant signed copies of each Settlement Check after they have been cashed, and will reissue the checks to any Plaintiff whose check is so voided.

4.2   Except as provided in this Agreement, upon payment of the attorneys' fees, expenses, and costs approved by the Court, Plaintiffs' Counsel and Plaintiffs hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendant for attorneys' fees or costs associated with Plaintiffs' Counsel's representation of Plaintiffs. Plaintiffs' Counsel further understands and agrees that any fee payments approved by the Court will be the full, final, and complete payment of all attorneys' fees, expenses, and costs associated with Plaintiffs' Counsel's representation in the Litigation.

4.3   In addition to the release in Section 4.1, Named Plaintiffs, on behalf of themselves and, if any, their spouses, heirs, executors, testators, assigns, representatives, and agents,

freely relinquish, release, and waive all possible claims, actions, causes of action, complaints, rights, charges, obligations, liabilities, judgments, suits, debts, attorneys' fees, costs, sums of money, wages, bonuses, benefits of any type, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, contracts, promises, executions and demands, whatsoever in law or in equity, of any kind or nature, known or unknown, against the Releasees, which may have arisen from the beginning of time through the date of their signatures on this Agreement.

**4.4**    By signing the Agreement, Named Plaintiffs become parties to the Agreement.

## 5.    PARTIES' AUTHORITY

**5.1**    The Parties hereby represent that the signatory executing this Agreement on behalf of such Party is fully authorized to execute this Agreement on behalf of such Party and to bind such Party hereto to the terms and conditions hereof.

## 6.    MUTUAL COOPERATION

**6.1**    The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, and in accordance with its terms, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 7.    NOTICES

**7.1**    Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by U.S. registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs:

> Justin R. Marino
> J.R. Stevenson
> Stevenson Marino LLP
> 75 Maiden Lane, Suite 402
> New York, NY 10038
> (212) 939-7588
> jmarino@stevensonmarino.com
> jrs@stevensonmarino.com

Justin M. Swartz
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000
jms@outtengolden.com

Pooja Shethji
Outten & Golden LLP
601 Massachusetts Avenue, Suite 200W
Washington, D.C. 20001
(202) 847-4400
pshethji@outtengolden.com

To Defendant:

Eli Z. Freedberg
Kevin K. Yam
Littler Mendelson, P.C.
900 Third Avenue
New York, NY 10022
efreedberg@littler.com
kyam@littler.com

## 8.   INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

**8.1**   Further Acts. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**8.2**   Entire Agreement. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**8.3**   Binding Effect. This Agreement shall be binding upon the Parties and, with respect to Defendant, its affiliates, parents, subsidiaries, predecessors, successors, employees, and agents; and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

**8.4**   Arms' Length Transaction; Materiality of Terms. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

8.5     Captions. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

8.6     Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

8.7     Governing Law. This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

8.8     Continuing Jurisdiction. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

8.9     Waivers and Modifications to Be in Writing. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment, with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

8.10    Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

8.11    Facsimile and Electronic Signatures.  Any party may execute this Agreement by signing, including by electronic means, or by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  An electronic signature transmitted via an electronic signature platform such as DocuSign shall be effective and binding.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

8.12    Signatories. This Agreement is valid and binding if signed by Defendant's authorized representative and any one of the Named Plaintiffs.

15

**WE AGREE TO THESE TERMS.**

DATED: _10/12/21_            **LUMBER LIQUIDATORS, INC.**

By: _Alin J. Green_

_SVP, Chief Legal Officer_

DATED: _____            **NEREDA BODNAR**

*Individually and as Primary Beneficiary of the*
*Intestate Estate of Travis Streeter*

_____

DATED: _____            **ASHLEIGH MASON**

_____

DATED: _____            **DAN MORSE**

_____

DATED: _____            **RYAN CARROLL**

_____

16

DocuSign Envelope ID: 3G432C63-ADB4-413A-890E-57E07F97BC4E

**WE AGREE TO THESE TERMS.**

DATED: _____      **LUMBER LIQUIDATORS, INC.**

By: _____

_____

DATED: __10/12/2021__      **NEREDA BODNAR**

*Individually and as Primary Beneficiary of the*
*Intestate Estate of Travis Streeter*

_____

DATED: _____      **ASHLEIGH MASON**

_____

DATED: _____      **DAN MORSE**

_____

DATED: __10/12/2021__      **RYAN CARROLL**

_____

DocuSign Envelope ID: 3G432C62-ADB4-413A-890E-E7E07F97BC4E

DATED: _10/12/2021_      **OSAGIE EHIGIE**

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHLEIGH MASON, DAN MORSE, RYAN CARROLL, OSAGIE EHIGIE, and NEREDA BODNAR, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>        -against-<br><br>LUMBER LIQUIDATORS, INC.,<br><br>                Defendant. | Civ. No.: 17-cv-04780 (MKB)(RLM) |

**[PROPOSED] ORDER APPROVING SETTLEMENT, SERVICE AWARDS,
AND ATTORNEYS' FEES AND COSTS**

This matter comes before the Court on Plaintiffs' Unopposed Motion for Approval of Settlement, Service Payments, and Attorneys' Fees and Costs ("Motion").  Having considered Plaintiffs' Motion and supporting Memorandum and exhibits, the Court hereby GRANTS Plaintiffs' Motion and ORDERS as follows:

1. The Court finds that the Parties' Settlement in this Fair Labor Standards Act action is a fair, reasonable, and adequate resolution of a bona fide dispute. The Parties' Settlement is approved, and the terms of the Parties' Agreement are incorporated herein.

2. The Parties' agreed form of Settlement Notice, and the plan for its distribution, is approved.

3. The Service Awards of $10,000 each to Plaintiffs Nereda Bodnar (individually), Nereda Bodnar (as substitute for the deceased Travis Streeter), Ashleigh Mason, Dan Morse, Ryan Carroll, and Osagie Ehigie are approved.

1

4.   Plaintiffs' Counsel's request for attorneys' fees of $2,333,333.33 and reasonable out-of-pocket costs and expenses is granted.

5.   This action is dismissed without prejudice, with leave to reinstate on or before 180 days after the first Settlement Notices are sent pursuant to the terms of the Settlement.  In the event a motion to reinstate is not filed on or before 180 days after the first Settlement Notices are sent, the case shall be deemed, without further order of the Court, to be dismissed with prejudice.

6.   The Court will retain jurisdiction to enforce the Agreement.

Dated: _____, 2021

_____
The Honorable Roanne L. Mann
United States Magistrate Judge

2

# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHLEIGH MASON, DAN MORSE, RYAN CARROLL, OSAGIE EHIGIE, and NEREDA BODNAR, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>LUMBER LIQUIDATORS, INC.,<br><br>Defendant. | Civ. No.: 17-cv-04780 (MKB)(RLM) |

## <u>OFFICIAL COURT NOTICE OF SETTLEMENT</u>

**You are receiving this notice because you worked as a Store Manager and/or Store Manager in Training for Lumber Liquidators, Inc., previously submitted a consent form to join this case, and are entitled to a payment from a lawsuit settlement.**

**A settlement check is enclosed.  Read this Notice before signing and cashing the check.**

**The last day to cash the settlement check is [180 days from mailing].  After that date, the check will be void, and you will no longer be eligible for a payment.**

**A federal court authorized this Notice – it is not a solicitation from a lawyer.**

- This Notice is directed to all individuals who were employed by Lumber Liquidators, Inc. ("Lumber Liquidators") as a Store Manager ("SM") and/or Store Manager in Training ("SMIT") and previously opted in to this lawsuit by filing a consent to join the action.

- This lawsuit was brought by former SMs and/or SMITs ("Named Plaintiffs") who claim that Lumber Liquidators failed to pay them and other SMs and SMITs properly for overtime hours they worked.  Named Plaintiffs filed the lawsuit as a collective and class action under the federal Fair Labor Standards Act ("FLSA") and New York state wage and hour laws.

2

- Lumber Liquidators denies these allegations and asserts that SMs and SMITs were paid correctly.  Nevertheless, Named Plaintiffs and Lumber Liquidators have agreed to settle this case to avoid continued litigation.  The Court approved this settlement but has not ruled on Named Plaintiffs' claims or Lumber Liquidators' defenses.

- **A settlement check for $XX, representing your share of the settlement, is enclosed**. This amount is determined by the allocation formula created by the settlement and based primarily on:  (1) the number of weeks worked as a SM and/or SMIT in New York between April 22, 2011 and [earlier of December 31, 2021 or the Approval Date] and as a SM and/or SMIT outside of New York between April 22, 2014 and [earlier of December 31, 2021 or the Approval Date]; (2) status as an exempt-classified or non-exempt classified SM and/or SMIT during the Relevant Period; (3) job title; and (4) whether you previously participated as a class member in a prior lawsuit against Lumber Liquidators (captioned *Kramer v. Lumber Liquidators, Inc.* in Sacramento County Superior Court, No. 34-2017-00222434).  Based on Lumber Liquidators' records, your number of eligible workweeks as a SM and/or SMIT during these periods is [**XX**].

- Lumber Liquidators will not take any adverse action against any eligible SM and/or SMIT whether or not she or he accepts a settlement payment

- This notice contains no tax advice.  You are advised to obtain personal tax advice regarding your settlement payment.

**This notice contains important information that affects your rights.
Please read it carefully.**

**BASIC INFORMATION**

**1.  Why did I receive this notice and what is this case about?**

You are receiving this notice because you previously joined *Mason v. Lumber Liquidators, Inc.*, Case No. 17 Civ. 4780, in the United States District Court for the Eastern District of New York.  This Notice explains the terms of the settlement, your rights, and what claims are being released by people covered by the settlement.

The lawsuit alleges that Lumber Liquidators failed to pay SMs and SMITs properly for overtime.  Lumber Liquidators denies these allegations and maintains that SMs and SMITs were paid correctly.  The parties have entered into this settlement to avoid continued litigation.

**2.  What is a collective action?**

In a "collective action," one or more individuals called "Named Plaintiffs" sue on behalf of other individuals who may have similar claims.  By previously completing and returning a

3

consent to join form, you joined the case and became part of the "Collective."  In a collective action, the Named Plaintiffs asks the court to resolve the issues for everyone in the collective.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

**3.  What does the Settlement provide?**

Lumber Liquidators has agreed to pay the maximum amount of $7,000,000 into a settlement fund, a portion of which has been allocated among current and former SMs and/or SMITs who opt into the lawsuit and qualify for a settlement payment based primarily upon the number of weeks worked: (1) as a SM and/or SMIT in New York during April 22, 2011 and [earlier of December 31, 2021 or the Approval Date]; and (2) as a SM and/or SMIT outside of New York during April 22, 2014 and [earlier of December 31, 2021 or the Approval Date].  The settlement fund will also cover any Court-approved service awards to Named Plaintiffs for their service in obtaining this settlement, any claims for attorneys' fees and costs approved by the Court, and the Settlement Administrator's fees and costs.

**4.  How much is my payment and how was it calculated?**

Based on the allocation formula that has been approved by the Court, you are receiving a gross settlement payment for $_____, 25% of which is subject to deductions for applicable taxes and withholding like any other paycheck, and for which you will receive a W-2, and 75% of which will be reported on IRS Form 1099.  Please consult your tax advisor or accountant regarding the taxability of this settlement payment.

The allocation formula takes into account:  (1) the number of weeks in which you worked as a SM and/or SMIT in New York during the period between April 22, 2011 and [earlier of December 31, 2021 or the Approval Date], and as a SM and/or SMIT outside of New York during the period between April 22, 2014 and [earlier of December 31, 2021 or the Approval Date]; (2) status as an exempt-classified or non-exempt classified SM and/or SMIT during the Relevant Period; (3) job title; and (4) whether you previously participated as a class member in a prior lawsuit against Lumber Liquidators (captioned *Kramer v. Lumber Liquidators, Inc.* in Sacramento County Superior Court, No. 34-2017-00222434).  The Settlement Agreement contains the exact allocation formula.  You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 8 below.

## HOW YOU GET A PAYMENT

**5.  How do I get my payment?**

A check is enclosed.  All you have to do is sign and cash the settlement check.

4

| 6.  What am I giving by accepting the settlement check? |
| --- |

By signing and cashing your settlement check, you waive, release, and forever discharge any claim you have or may have from [April 22, 2014 or April 22, 2011] to [earlier of December 31, 2021 or the Approval Date] against Lumber Liquidators, Inc., and its affiliates, parents, subsidiaries, predecessors, successors, employees and agents, from all demands, claims, and actions that were or could have been asserted in this case under the FLSA and state wage and hour law, based on the allegations in the complaint, that accrued during the time period that you worked for Lumber Liquidators, Inc. as a Store Manager or Store Manager in Training, including without limitation any and all federal, state, or local claims for unpaid wages, remuneration, notice and recordkeeping claims, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

If you worked as a non-exempt classified Store Manager or Store Manager in Training in California, though, you are only waiving and releasing claims for time worked as an exempt-classified Store Manager or Store Manager in Training and time worked as a non-exempt classified Store Manager in Training outside of California; you retain and do not waive any claims that have been asserted in *Savidis v. Lumber Liquidators, Inc.* in Alameda County Superior Court, No. RG20057480, including but not limited to any claims for overtime hours for which non-exempt classified employees were not paid.

## THE LAWYERS REPRESENTING YOU

| 7.  How will the lawyers be paid? |
| --- |

The Court has approved payment to Plaintiffs' Counsel of one-third of the settlement fund for attorneys' fees.  These fees compensate Plaintiffs' Counsel for investigating the facts, litigating the case, and negotiating and finalizing the settlement.  The Court also has approved payment of Plaintiffs' Counsel's out-of-pocket costs.  The costs of the Settlement Administrator are also paid from the settlement fund.

The Court has also approved payments to the Named Plaintiffs to recognize the risks they took and their services to the collective action.  The six Named Plaintiffs who initiated the lawsuit before the settlement was reached will each receive a payment of $10,000 in addition to their settlement payment under the allocation formula.

## FOR MORE INFORMATION

| 8.  Are there more details about the Settlement? |
| --- |

This Notice summarizes the proposed settlement.  More details are in a Settlement Agreement.  You are encouraged to read it.  To the extent there is any inconsistency between this Notice and the Settlement Agreement, the provisions in the Settlement Agreement control.  You may obtain a copy of the Settlement Agreement by accessing it online at www.[site].com or by

sending a request, in writing, to:

[SETTLEMENT ADMINISTRATOR]
Lumber Liquidators SM/SMIT Settlement
[ADDRESS LINE ONE]
[ADDRESS LINE TWO]
Facsimile: (XXX) XXX-XXXX
Email: XXX@XXXX.com

**9.  How do I get more information?**

If you have other questions about the settlement, you can contact the Settlement Administrator, or Plaintiffs' Counsel at the addresses and/or telephone numbers below:

Justin R. Marino
J.R. Stevenson
Jeffrey R. Maguire
Stevenson Marino LLP
75 Maiden Lane, Suite 402
New York, New York 10038
Telephone: (212) 939-7228
Email: jmarino@stevensonmarino.com
Email: jrs@stevensonmarino.com
Email: jmaguire@stevensonmarino.com

Justin M. Swartz
Outten & Golden LLP
685 Third Ave 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Email: LL-overtime@outtengolden.com

Pooja Shethji
Outten & Golden LLP
601 Massachusetts Ave NW, Suite 200W
Washington, DC 20001
Telephone: (202) 847-4400
Email: LL-overtime@outtengolden.com

DATED:              , 2021