UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHLEIGH MASON, DAN MORSE, RYAN CARROLL, OSAGIE EHIGIE, and NEREIDA BODNAR (individually and as Personal Representative of the Estate of Travis Streeter), on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    -against-<br><br>LUMBER LIQUIDATORS, INC.,<br><br>    Defendant. | Civ. No.: 17-cv-04780 (RLM) |

## DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS

I, Justin M. Swartz, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

  1.  I am a partner in the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiffs' Counsel herein, and co-chair of its Class Action Practice Group. O&G is a 50-plus attorney firm based in New York City, with additional offices in San Francisco and Washington, D.C., that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation, which involve wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

  2.  Along with lawyers from Stevenson Marino LLP, I am one of the lawyers responsible for prosecuting Plaintiffs' claims on behalf of the collective and putative class.

  3.  I make these statements based on personal knowledge of the matters set forth herein and would so testify if called as a witness at trial.

**My Background and Experience**

4. I received a Juris Doctor degree from DePaul University School of Law in 1998 with honors. Since then, I have exclusively represented plaintiffs in employment litigation and other employee rights matters.

5. I was admitted to the bar of the State of Illinois in 1998, and the bar of the State of New York in 2002. I am also admitted to the bars of the Second Circuit Court of Appeals, the United States District Courts for the Western, Eastern, and Southern Districts of New York, and the Northern District of Illinois. I am a member in good standing of each of these bars.

6. From September 1998 through February 2002, I was associated with Stowell & Friedman, Ltd. in Chicago, Illinois, where I represented plaintiffs in class and multi-plaintiff employment discrimination cases. From March 2002 through October 2003, I worked for Goodman & Zuchlewski, LLP in New York City where I represented employees in discrimination cases and other employee rights matters.

7. Since joining O&G in December 2003, I have been engaged primarily in prosecuting wage and hour class and collective actions and class action discrimination cases.

8. I am or was co-lead counsel on many wage and hour cases that district courts have certified as class actions and/or collective actions, including *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29. 2006), in which the Court granted summary judgment in favor of Plaintiffs and a class of more than 300 grocery store workers. 628 F. Supp. 2d 447 (S.D.N.Y. Aug. 28, 2008). Others include *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17 Civ. 10219, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) (approving settlement of nationwide FLSA collective action settlement); *Blum v. Merrill Lynch & Co.*, Nos. 15 Civ. 1636, 15 Civ. 2960, slip op. at 2 (S.D.N.Y. May 6, 2016) (same); *Puglisi v.*

*T.D. Bank, N.A.*, No. 13 Civ. 637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (certifying class and approving settlement of nationwide wage and hour class and collective action); *Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712, 2014 WL 5794655, at *2-4 (S.D.N.Y. Nov. 4, 2014) (same); *Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *25 (E.D.N.Y. Sept. 16, 2014) (appointing O&G as class counsel); *Clem v. KeyBank*, No. 13 Civ. 789, 2014 WL 2895918, at *2-4 (S.D.N.Y. June 20, 2014) (certifying class and approving settlement of nationwide wage and hour class and collective action); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *2-4 (S.D.N.Y. Oct. 2, 2013) (certifying class action under New York Labor Law and appointing O&G as class counsel); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 472-76 (S.D.N.Y. 2013) (certifying class and approving settlement of nationwide wage and hour class and collective action).

9. I am a member of the National Employment Lawyers Association ("NELA") and formerly served on the Executive Board of its New York Chapter ("NELA/NY"). I recently served on the Fair Labor Standards Act Protocols Committee formed by the Institute for Advancement of the American Legal System ("IAALS"), which drafted IAALS's Initial Discovery Protocols for Fair Labor Standards Act Cases. I am a former co-chair of NELA's Fair Labor Standards Act Committee. I served on the Civil Rights Committee of the New York City Bar Association of the Bar of the City of New York from 2005 through 2008 and the Committee on Labor and Employment Law from September 2002 until June 2005. I was co-chair of the American Bar Association Labor and Employment Law Section Ethics and Professional Responsibility Committee from 2006 through 2009, and am a member of its Equal Employment Opportunity Committee.

10. I speak frequently on employment law issues, including wage and hour issues and discrimination issues. I have recently been a faculty member for continuing legal education programs focused on employment law and ethics sponsored by the American Bar Association Section of Labor and Employment Law; the New York State Bar Association Labor and Employment Law Section; the New York City Bar Committee on Labor and Employment Law, NELA, and the Practicing Law Institute, among others.

11. In connection with my work, I regularly read the New York Law Journal, advance sheets, and other literature related to employment law and class action law developments. I attend workshops and seminars at least four times per year sponsored by NELA, NELA/NY, the American Bar Association, and other organizations.

**O&G's Expertise**

12. O&G is nationally recognized for its expertise in litigating complex class actions, including wage and hour cases like this one. *See, e.g.*, *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *7 (S.D.N.Y. Dec. 29, 2014) (appointing O&G as class counsel, explaining that "[b]ased on the firm's performance before [the court] in this and other cases and its work in the foregoing and other cases, [the court has] no question that it will prosecute the interests of the class vigorously"); *Beckman*, 293 F.R.D. at 477 (noting that O&G "are experienced employment lawyers with good reputations among the employment law bar"); *Yuzary v. HSBC USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *4 (S.D.N.Y. Apr. 30, 2013) (appointing O&G as class counsel); *Capsolas*, 2012 WL 1656920, at *2 (appointing O&G as class counsel and noting O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 622

(S.D.N.Y. 2012) (O&G attorneys "have substantial experience prosecuting wage and hour and other employment-based class and collective actions"); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010) (O&G "are experienced employment lawyers with good reputations among the employment law bar . . . [and] have prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (2008) (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area").

**Overview of Investigation, Litigation, and Settlement Negotiations**

13. Before initiating this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses and conducted in-depth interviews of multiple SMs and SMITs. Plaintiffs' Counsel focused their investigation and legal research on the merits of potential class and collective action members' claims, their damages, and the propriety of class and collective action.

14. On April 6, 2017, Plaintiffs' Counsel contacted Lumber Liquidators to invite them to explore pre-litigation resolution of the claims of SMs and SMITs. Lumber Liquidators agreed to enter into a tolling agreement for the claims of SMs but was unable to commit to mediation.

15. On August 15, 2017, Plaintiffs filed this action on behalf of themselves and other SMs, and they then amended the complaint on December 4, 2017 to add claims on behalf of a collective of SMITs.

16. The original tolling agreements for SMs and SMITs were extended by supplemental agreement. Under those and subsequent tolling agreements, the claims of the SM collective were extended by an additional 582 days (i.e., for the periods between April 14, 2017 to November 20, 2017; January 16, 2018 to October 27, 2018; and October 28, 2018 to January 14, 2019), and the SMIT collective claims were tolled for 418 days (i.e., for the periods between September 25, 2017 to November 20, 2017; January 16, 2018 to October 27, 2018; and October 28, 2018 to January 14, 2019).

17. Following an initial conference hearing, the parties participated in a mediation before Jonathan Trafimow on August 6, 2018 but were unable to resolve the case.

18. On November 2, 2018, Plaintiffs moved for conditional certification pursuant to 29 U.S.C. § 216(b). At that time, nearly two dozen Plaintiffs and opt-ins had joined this action. The Magistrate Judge granted the motion on May 13, 2019, and the Court affirmed the order.

19. The parties have engaged in extensive formal discovery. The discovery requests included Plaintiffs' 14 sets of requests for production of documents, 3 sets of interrogatories, and 5 sets of requests for admissions. Plaintiffs also issued subpoenas for third-parties and obtained declarations from former managers of Lumber Liquidators, which they intended to use in support of their motion for class certification.

20. In response to these discovery requests, Lumber Liquidators produced hundreds of thousands of pages of documents, including job descriptions, corporate guidelines and policies, training materials, budget reports, and personnel files. The parties also agreed upon a detailed discovery plan and began discussing Rule 30(b)(6) deposition dates after Plaintiffs served and amended a Rule 30(b)(6) deposition notice.

21.     Plaintiffs' Counsel also separately obtained documents, including job descriptions and job openings, by searching job listings and Defendant's website.  It was through these efforts that Plaintiffs first learned that Defendant reclassified the SMIT position and, at least at some locations, the SM position by calling it a Sales Manager.

22.     In October 2020, while additional written discovery and depositions were looming, the parties agreed to mediate before Martin Scheinman, a highly regarded and experienced wage-and-hour mediator.  In December 2020, the parties requested a stay of the litigation.  The mediation was rescheduled from January 13, 2021 to April 5, 2021.

23.     In advance of mediation, Defendant produced data to allow Plaintiffs to calculate damages, including data showing weeks worked and detailed pay data for collective members and putative class members.  Plaintiffs' Counsel analyzed this data and constructed a damages model.  The parties submitted mediation briefs setting forth their respective positions as to liability and damages.

24.     The parties participated in two full-day mediation sessions with Martin Scheinman on April 5 and April 16, 2021.  They then reached an agreement in principle on the material terms of a settlement and executed a term sheet.  The parties spent over two months negotiating and finalizing the terms of the initial settlement agreement, which they executed on July 15, 2021.

25.     Following a status conference before the Court on August 12, 2021, the parties negotiated a revised Joint Stipulation of Settlement and Release ("Settlement Agreement") and agreed on a process to issue § 216(b) notice to individuals who worked as an exempt-classified SM or SMIT in New York State for at least one workweek during the period beginning April 22, 2011.  During this notice process, 37 additional individuals filed consent to join forms.

26. After soliciting and reviewing bids from five wage and hour settlement administrators, Plaintiffs' Counsel had selected Rust Consulting, Inc. as the administrator. Defendant's Counsel consented to the selection. The administration costs for the revised Settlement Agreement will be $32,490.00, after accounting for time required to prepare, reconcile, and correct data for purposes of calculating settlement payments.

**The Settlement Agreement**

27. The Settlement Agreement followed contested litigation, significant motion practice, extensive discovery, and arm's-length negotiations facilitated by an experienced mediator.

28. Throughout the litigation, the parties had – and continue to have – several bona fide disputes, including whether SMs and SMITs perform sufficient managerial duties to justify their exempt status, and whether SMs and SMITs customarily and regularly supervise two full-time employees.

29. The Gross Settlement Amount of $7,000,000.00 is substantial, especially in light of the considerable risks that Plaintiffs faced. In comparison, Plaintiffs' Counsel estimates that the Eligible Settlement Members' lost wages are $12,872,400 calculated at time and a half assuming they worked 10 overtime hours per week in 85% of workweeks (to account for weeks in which overtime may not have been worked due to holidays, sick days, paid time off, etc.). Calculated using the fluctuating workweek method, Plaintiffs' Counsel estimates that the lost wages amount to $3,432,682.

**Service Awards**

30. Plaintiffs expended time and effort not only in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, but also during the litigation by

responding to discovery, making themselves available for depositions if scheduled, and reviewing the terms of two iterations of the settlement agreement. This includes Plaintiff Bodnar, who was a SMIT and was the husband of former Named Plaintiff Travis Streeter (who was deceased at the time of the mediation). Plaintiff Bodnar made herself available throughout the litigation, as well as during the mediation.

31. Plaintiffs also undertook direct and indirect risk to protect the interests of collective members by agreeing to bring the action in their name, to be deposed, and to testify if there was a trial.

32. Plaintiffs took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit.

**Attorneys' Fees and Costs**

33. Pursuant to the Settlement Agreement, Plaintiffs request $2,333,333.33 for attorneys' fees and reimbursement of $47,790.68 in out-of-pocket litigation expenses from the Gross Settlement Amount.

34. Plaintiffs' Counsel took tremendous risks in litigating this matter, under a complete contingency arrangement. If this case had been dismissed on summary judgment, trial, or appeal, for example, Plaintiffs' Counsel would have lost all time, efforts and expenses put into this matter.

35. Plaintiffs' Counsel executed a fee arrangement with the Plaintiffs that entitled Plaintiffs' Counsel to one-third of any recovery

36. O&G has spent more than 693 attorney and paralegal hours pursuing this action with their co-counsel. O&G proactively omitted the time of any attorney or paralegal who worked less than five hours on this case. A breakdown of the time spent by each attorney and

paralegal (which were contemporaneously recorded), as well as their hourly rates and lodestar is summarized below and detailed in **Exhibit 4**.

| Outten & Golden LLP Lodestar Summary | | | | |
|---|---|---|---|---|
| Name | Position | Rate | Hours | Total |
| Justin Swartz | Partner | $990.00 | 93.8 | $92,862.00 |
| Daniel Stromberg | Partner | $750.00 | 16.7 | $12,525.00 |
| Michael N. Litrownik | Counsel | $525.00 | 72.4 | $38,010.00 |
| Maya S. Jumper | Associate | $425.00 | 21.3 | $9,052.50 |
| Pooja Shethji | Associate | $375.00 | 218.8 | $82,050.00 |
| Tara K. Quaglione | Staff Attorney | $425.00 | 154.7 | $65,747.50 |
| Christopher C. Alter | Paralegal | $270.00 | 49.9 | $13,473.00 |
| Christopher Truong | Paralegal | $270.00 | 59.7 | $16,119.00 |
| Konnie Dominguez | Paralegal | $270.00 | 6.2 | $1,674.00 |
| **Total:** | | | **693.5** | **$331,513.00** |

37. O&G's rates are reasonable. O&G regularly charges paying clients their hourly rates. Further, O&G has been awarded attorneys' fees at their current rates by other courts. *See Slaughter v. Sykes Enters., Inc.*, No. 17 Civ. 2038, 2019 WL 529512, at *8-9 (D. Colo. Feb 11, 2019) (granting attorneys' fees request – $670,000 – at rates including $950/hour for Justin Swartz); *Brown v. Frontpoint Security Solutions, LLC*, No. 17 Civ. 14845 (Cir. Court of Fairfax Cnty., Va. Dec. 8, 2017) (approving settlement, including O&G's attorneys' fees); *Williams v. Metro-N. R.R. Co.*, No. 17 Civ. 3847, 2018 WL 3370678, at *5, *8 (S.D.N.Y. June 28, 2018) (awarding O&G attorneys' fees at rates between $275 and $800 and noting, "Plaintiff's counsel are of the highest quality with special expertise in the law of employment discrimination"), report and recommendation adopted, 2018 WL 3368713 (S.D.N.Y. July 10, 2018); *Ansoumana v. Gristede's Operating Corp.*, No. 00 Civ. 253, 2004 WL 504319, at *3 (S.D.N.Y. Jan. 7, 2004) (approving proposed O&G billing rates, with some modification, and noting, "[O&G attorneys] showed themselves to be expert in the subject matters of these cases, zealous in pursuit of their

10

clients' litigation objectives, persuasive and reliable in relation to adversary counsel and the court, and altogether deserving of the rate they request.").

38. Adding together the lodestar for all of Plaintiffs' Counsel, as reflected in this declaration and the Declaration of Justin R. Marino, the total lodestar for this case is approximately $1,353,963.00 which results in a multiplier of 1.72.

39. Plaintiffs' Counsel will continue to accrue fees as they spend additional time on the approval process and then implementing and monitoring the settlement. Among other things, Plaintiffs' Counsel will respond to collective members' questions (including after the fund is distributed) and supervise the settlement administrator and administration process.

40. Plaintiffs' Counsel take on difficult cases like this one because we believe they are important. We take seriously our responsibility to push the law in a direction favorable for employees. We continue to do so despite, unfortunately, having suffered several major (and very expensive) losses in wage and hour cases over the years. Like this case, we believed that each of these cases was meritorious. For example, in *Saleem v. Corporate Transportation Group., Ltd.*, No. 15 Civ. 88, 2017 WL 1337227 (2d Cir. Apr. 12, 2017), the Second Circuit upheld a grant of summary judgment to the employer in an independent contractor misclassification case where O&G invested $1,841,427.75 in lodestar and spent $133,007.80 in out-of-pocket costs. Similarly, in *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460 (2013), we lost at the New York Court of Appeals after investing $2,142,764.75 in lodestar and $70,925.40 in out of pocket expenses. And in *Pippins v. KPMG LLP*, No. 11 Civ. 377, 2012 WL 6968332 (S.D.N.Y. Nov. 30, 2012), a professional exemption case on behalf of junior auditors on which O&G was counsel, we lost on summary judgment and on appeal after O&G spent $2,298,699.45 in lodestar. In *Clarke v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400, 2010 WL 1379778

11

(S.D.N.Y. Mar. 26, 2010), the court granted summary judgment against the plaintiff, holding that IT workers were exempt under the computer professional exemption. O&G, which was one of three co-counsel firms, spent $631,985.00 in lodestar and $15,428.39 in out of pocket expenses. O&G also represented the plaintiffs in *Glatt v. Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784 (S.D.N.Y.) and *Wang v. Hearst Corp.*, No. 12 Civ. 793 (S.D.N.Y.), among the first unpaid intern lawsuits in the Second Circuit. Both cases have been hard fought by the firm, including on an appeal to the Second Circuit that was decided against the interns. Nonetheless, these cases raised awareness among the general public of the issues surrounding unpaid interns, and spawned dozens of similar lawsuits brought by other firms.

41. O&G has also invested substantial resources in other risky cases that resulted in no recovery for reasons unrelated to the merits. In *LaMarca v. Great Atlantic & Pacific Tea Co.*, the defendants filed for bankruptcy after the firm had invested $2,953,808.95 in lodestar.

42. In addition to the fees accrued, Plaintiffs' Counsel have expended reasonable out-of-pocket costs in this case in the amount of $47,790.68 in litigating and settling this matter, including filing fees, mediation expenses, postage, notice distribution, and document hosting. Plaintiffs' Counsel do not seek reimbursement of computerized legal research costs. *See* ECF No. 242, at 2-3.

43. O&G's total out-of-pocket costs and expenses for this case, excluding computerized legal research costs, are approximately $12,676.52. These costs and expenses are summarized below and detailed in **Exhibit 5.**

| Outten & Golden LLP Costs Summary | |
|---|---|
| Categories | Costs |
| Court Filing Fees | $175.00 |
| Mediation Fees | $5,237.50 |
| Document Management/Hosting | $6,891.59 |
| Court Transcripts | $205.92 |
| FedEx/UPS | $146.56 |
| Print Jobs | $19.95 |
| **Grand Total:** | **$12,676.52** |

44. Here, Plaintiffs' Counsel's expenses were incidental and necessary to the representation of collective members and are in line with costs charged to individual clients who pay out of pocket.

**Biographies of Supporting Attorneys and Staff**

45. Daniel S. Stromberg is a Partner and E-Discovery Counsel at O&G. He is head of O&G's eDiscovery Practice Area, where he advises clients and case teams on discovery strategies. Mr. Stromberg teaches electronic discovery at the University of Virginia. Prior to joining O&G in July 2015, Mr. Stromberg worked as Director of Discovery Technology at a boutique discovery firm, and as a Senior E-Discovery Consultant with a leading eDiscovery technology provider. He received his B.A., *cum laude*, from the University of Rochester in 2004 and his J.D. from The George Washington University Law School in 2007.

46. Michael N. Litrownik was Counsel with O&G until December 2020 and a member of the firm's Class Action Practice Group. Prior to joining the firm in 2013, he was an Associate at Bromberg Law Office, P.C. in New York City. Since 2010, Mr. Litrownik has

13

exclusively represented employees and consumers in individual and class action litigation. Mr. Litrownik is a member of the National Employment Lawyers Association – New York, where he serves on the Judiciary Committee, the New York City Bar Association, where he serves on the Civil Rights Committee, and the Federal Bar Council. Mr. Litrownik was admitted to the bar of the Commonwealth of Massachusetts in 2010, and the bar of the State of New York in 2011. Mr. Litrownik is also admitted to the bars of the United States District Courts for the Southern, Eastern, and Western Districts of New York, the District of Massachusetts, the District of Connecticut, and the U.S. Courts of Appeal for the Second and Eleventh Circuits. Mr. Litrownik is a member in good standing of each of these bars. He received his J.D. from Washington University School of Law in 2010.

47. Maya S. Jumper was an Associate at O&G in the firm's Class Action Practice Group from September 2018 to December 2021. Prior to joining O&G, Ms. Jumper served as law clerk to the Hon. Damon J. Keith on the U.S. Court of Appeals for the Sixth Circuit, the Hon. Deborah A. Robinson on the U.S. District Court for the District of Columbia, and the Hon. Eric T. Washington, former chief judge of the District of Columbia Court of Appeals. Prior to serving as a judicial law clerk, Ms. Jumper received her J.D. from American University Washington College of Law in 2015, magna cum laude and Order of the Coif, and her B.A. from the University of North Carolina at Chapel Hill. Ms. Jumper is admitted to practice in the state of New York, the U.S. District Court for the District of Columbia, and the U.S. Court of Appeals for the Sixth Circuit.

48. Pooja Shethji is an Associate at O&G. She represents employees in class and collective action wage and hour and discrimination cases. Before joining the firm in 2018, Ms. Shethji clerked for the Honorable Theodore D. Chuang of the U.S. District Court for the District

14

of Maryland and the Honorable Joseph A. Greenaway, Jr., of the U.S. Court of Appeals for the Third Circuit.  She received her B.A. from Yale College in 2012 and her J.D., *cum laude*, from New York University School of Law, where she was a Root-Tilden-Kern Public Interest Scholar, in 2016.  Ms. Shethji is admitted to the bars of the State of New York, the District of Columbia, the U.S. District Court for the District of Maryland, and the U.S. Courts of Appeals for the Third, Fourth, Seventh, and Ninth Circuits.

49. Tara K. Quaglione is Staff Attorney at O&G and has been practicing law since 2007.  Prior to joining O&G, Ms. Quaglione worked as a litigation associate at The McHattie Law Firm LLC and Caufield & James LLP.  She received her B.S. from Rutgers, The State University of New Jersey in 2002, and her J.D. from California Western School of Law in 2007.  Ms. Quaglione is admitted to the New York, New Jersey, and California Bars.

50. Christopher Alter was an e-Discovery Specialist and paralegal at O&G from September 2016 to August 2020.  Prior to joining O&G, he graduated from Cornell University, Industrial Labor Relations School, with a B.S. in Industrial and Labor Relations, and with a minor in Inequality Studies.  Mr. Alter is currently a 2023 J.D. candidate at Columbia Law School.

51. Christopher Truong is a paralegal at O&G.  Prior to joining O&G in September 2016, he worked at Gibbons P.C. as a products liability paralegal and was promoted to business commercial litigation paralegal.  Mr. Truong graduated from Boston College with a B.A. in History and a minor in International Studies.

52. Konnie Dominguez was a paralegal at O&G until July 2021.  Prior to joining O&G in October 2018, Ms. Dominguez worked at Dechert LLP.  Previously, she was a legal assistant for Weitz & Luxenberg, in NYC, where she worked on drug and medical devices

15

litigation and, prior to that, was a summer office intern in the Office of Councilmember Diana Reyna of the New York City Council, in Brooklyn. Ms. Dominguez graduated from Wesleyan University with a B.A. in Biology. Ms. Dominguez is currently a 2024 J.D. candidate at Cardozo School of Law at Yeshiva University.

**Exhibits**

53. Attached as **Exhibit 1** is a true and correct copy of the Joint Stipulation of Settlement and Release ("Settlement Agreement"). Exhibit A to Settlement Agreement is the proposed Approval Order. Exhibit B to the Settlement Agreement is the proposed Settlement Notice.

54. Attached as **Exhibit 2** is a true and correct copy of the Declaration of Justin R. Marino, dated April 6, 2022.

55. Attached as **Exhibit 3** is a true and correct copy of the Declaration of Jennifer Mills, dated April 6, 2022.

56. Attached as **Exhibit 4** is a true and correct list of O&G's contemporaneously recorded time records in this matter.

57. Attached as **Exhibit 5** is a true and correct list of itemized costs incurred by O&G in this matter.

Dated: April 6, 2022                    */s/ Justin M. Swartz*
       New York, New York               Justin M. Swartz